JEFF D. FRIEDMAN (173886)
SHANA E. SCARLETT (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
E-mail: jefff@hbsslaw.com
E-mail: shanas@hbsslaw.com

*Attorneys for Plaintiffs*
*Ronald Hayak and James Rehberg*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| GERALD CARLIN, JOHN RAHM, PAUL ROZWADOWSKI and BRIAN WOLFE, individually and on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>DAIRY AMERICA, INC. and CALIFORNIA DAIRIES, INC.,<br><br>Defendants. | No. 09-cv-00430-AWI-DLB<br><br>**PLAINTIFFS RONALD HAYAK AND JAMES REHBERG'S RESPONSE TO CBK FIRMS' MOTION FOR CONSOLIDATION OF RELATED ACTIONS AND FOR APPOINTMENT OF INTERIM CLASS AND LIAISON COUNSEL**<br><br>Date: May 22, 2009<br>Time: 9:00 am<br>Ctrm: 9<br>Honorable Magistrate Judge Dennis L. Beck |

010122-11  299397 V1

# I. INTRODUCTION

On April 15, 2009, counsel to two of four actions pending in this judicial district against Defendants DairyAmerica, Inc. and California Dairies, Inc. filed a Motion for Consolidation of Related Actions and for Appointment of Interim Class and Liaison Counsel ("CBK Mem."). Christening themselves the "CBK" firms (Cohen Milstein Sellers & Toll, PLLC, Berman DeValerio, and Keller Rohrback L.L.P.), counsel request that the Court consolidate related actions in this district and appoint a leadership structure consisting of Cohen Milstein as sole Interim Class Counsel, Berman DeValerio and Keller Rohrback as Executive Committee Members to assist Cohen Milstein, and further appoint Berman DeValerio as Interim Liaison Counsel.

While Plaintiffs to the other two actions, Ronald Hayak and James Rehberg (collectively "Plaintiffs"),[1] similarly believe that all actions pending in this district should be consolidated as related cases and that a leadership structure must be appointed to efficiently manage this litigation, Plaintiffs disagree that the leadership structure as proposed, borne of exclusion and segregation, will advance the litigation to its appropriate resolution. Nor do Plaintiffs believe that such exclusion accomplishes the important goal of ensuring this case is efficiently organized through private ordering. Plaintiffs further disagree that the structure, as currently proposed, adequately protects the class given the fact that the CBK firms failed at the outset of this litigation to protect those affected by Defendants' conduct by narrowly drawing a class definition to exclude residents of half the country. And, by focusing their collective rhetoric on primarily one of the four Rule 23(g) factors, the CBK firms fail to address the important strengths that Plaintiffs' counsel, Hagens Berman Sobol Shapiro LLP ("Hagens Berman") can bring to bear in this litigation as Interim Co-Lead Class Counsel. Finally, Hagens Berman proposes a fee structure that will ensure that no windfall to counsel takes place and which will further the interests of the class.

Accordingly, because the CBK firms' exclusive approach does not demonstrate the leadership that an inclusive approach would otherwise bring to this litigation, the appointment of Hagens Berman as Interim Co-Lead Class Counsel is both necessary and appropriate.

---

[1] The relevant cases are *Hayek v. Dairy America, Inc., et al.*, Case No. 09-cv-0556-AWI-DLB and *Rehberg v. Dairy America, Inc., et al.*, Case No. 09-cv-00558-OWW-GSA.

PLS.' RESP. TO MOT. FOR CONSOLIDATION AND
APPT. OF INTERIM COUNSEL – 09-cv-00430-AWI-DLB
010122-11  299397 V1

- 1 -

## II. ARGUMENT

### A. The CBK Firms' Exclusive Leadership Structure Does Not Reflect The Private Ordering Approach Preferred By Courts and Class Action Authorities

As noted above, the CBK firms' exclusive approach does not demonstrate the leadership that an inclusive approach would otherwise bring to this litigation. Relatively few actions are on file in this district, yet at no point did the CBK firms attempt to build a consensus with all firms and they made no effort to contact counsel for Plaintiffs prior to filing their motion.[2] While the CBK firms contend that the majority of firms and plaintiffs support the proposed leadership structure, see CBK Mem. at 14, leadership in class actions cases are not popularity contests, but attempts at ensuring that the litigation is conducted in an efficient and effective matter.[3] *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) (selecting one lead counsel from each of competing leadership groups, including Michael Hausfeld of Cohen Milstein Hausfeld & Toll, and observing that the "number of attorneys supporting a given candidacy is not included among the factors set forth in Rule 23(g)").[4]

---

[2] Counsel for Plaintiffs contacted counsel for the CBK firms after their motion was filed. However, the CBK firms refused to consider adding Hagens Berman as Co-Lead Counsel, and thus the parties were unable to resolve their differences.

[3] Given that two of the three firms were on the same complaint, it is not surprising that Cohen Milstein and Berman DeValerio support the leadership structure that they presently propose. In addition, Keller Rohrback, which filed its complaint subsequent to those filed by Plaintiffs were presumably added to the leadership structure in order to ensure that Cohen Milstein would remain sole co-lead counsel.

[4] In or around November 2008, the practice of proposed Interim Class Counsel, Cohen Milstein Sellers & Toll, PLLC, formerly Cohen Milstein *Hausfeld* & Toll, PLLC, underwent a significant restructuring following the departure of former name partner, Michael Hausfeld. According to news reports, Mr. Hausfeld took seventeen of the firm's attorneys with him to form a new firm, Hausfeld LLP. *See* Jordan Weissmann, *Hausfeld Battles Ex-Partners Over Fees*, Legal Times, Jan. 23, 2009 *available at* http://www.law.com/jsp/ article.jsp?id=1202427664719 (last visited April 23, 2009). The article also reports that Hausfeld LLP " replaced Cohen Milstein as co-lead counsel in a dozen antitrust class actions," and that "Cohen Milstein lost court challenges to keep its lead status" in at least four of those cases. *Id.* Furthermore, a number of the cases cited in the present Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Consolidation of Related Actions and for Appointment of Interim Class and Liaison Counsel, upon which the CBK firms now rely for appointment of Cohen Milstein as Interim Class Counsel, appear to have been led by Mr. Hausfeld. *See, e.g., In re Rubber Chemicals Antitrust Litig.,* No. C 04-1648 MJJ, 2005 WL 2649292, *8 (N.D. Cal. Oct. 6, 2005) (listing Mr. Hausfeld as one of Cohen Milstein's attorneys of record); *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 215 (D.D.C. 2005) ("[C]ounsel for the defendants in the Vitamins litigation uniformly testified that they viewed [Cohen Milstein Hausfeld & Toll], and particularly Michael Hausfeld ('Hausfeld'), as a tough plaintiffs' advocate and able adversary.").

1    By failing to even attempt to arrive at a consensus among counsel of the few actions filed to
2    date, the CBK firms avoided the opportunity to show leadership in the infancy of this litigation and
3    disregarded the efficient approach to counsel selection favored by courts and class action
4    authorities known as "private ordering." The major authorities on class action litigation encourage
5    plaintiffs' counsel to come to a consensus on where class actions should be litigated and which
6    counsel should act as lead counsel. *See, e.g.,* Manual for Complex Litigation (Fourth) § 21.272
7    (2004); A. Conte & H. Newberg, Newberg On Class Actions § 9:35 (4th ed. 2002); Hon. Edward
8    R. Becker, *Third Circuit Task Force Report on Selection of Class Counsel*, 74 Temp. L. Rev. 689,
9    769 (2001). This process is known as "private ordering." The Manual for Complex Litigation
10   (Fourth), explains that appointment of class counsel protects the interests of the class:

> [When] there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities . . . .

14   Manual for Complex Litigation (Fourth) § 21.11 (2004). Moreover, in protecting the class'
15   interests, these authorities further recognize that the "private-ordering" approach is the preferred
16   and recommended approach to selecting counsel:

> There are several methods for selecting among competing applicants. By far the most common is the so-called 'private ordering' approach: The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests. Counsel may agree to designate a particular lead class counsel in exchange for commitments to share the legal work and fees.

21   Manual for Complex Litigation (Fourth) § 21.272 (2004). Newberg On Class Actions, § 9:35
22   ("[C]ourts should always encourage the parties themselves to agree on lead counsel, while
23   imposing its own choice only in extraordinary circumstances."). *See, e.g., TCW Tech. Ltd.*
24   *P'ship. v. Intermedia Commc'ns, Inc*., 2000 Del. Ch. Lexis 147, **7-8 (Del. Ch. Oct. 17, 2000)
25   ("Traditionally, the Court of Chancery has allowed counsel representing individual, class or
26   derivative plaintiffs to engage in a type of private ordering, that is, to coordinate prosecution of the
27   litigation and to propose the most efficient means of consolidation."); *In re Continental Illinois*
28   *Sec. Litig*., 572 F. Supp. 931, 935 (N.D. Ill. 1983) ("In the event a class is certified, I would prefer

PLS.' RESP. TO MOT. FOR CONSOLIDATION AND                - 3 -
APPT. OF INTERIM COUNSEL – 09-cv-00430-AWI-DLB
010122-11 299397 V1

to designate counsel who are nominated by plaintiffs' attorneys. I therefore suggest that plaintiffs' counsel confer together with a view toward submitting a proposed roster that will be no larger than necessary to provide effective representation . . . ."). By undertaking an exclusive approach to organizing this action, the CBK firms chose to disregard the efficiencies that class action authorities and courts recognize as inherent in private ordering. Yet, at the same time, the firms tout their ability to lead the action in an efficient manner. As a result, Plaintiffs request the appointment of Hagens Berman as Interim Co-Lead Class Counsel.

**B.     Appointing Hagens Berman as Interim Co-Lead Class Counsel is Appropriate Under Rule 23(g) and Will Protect the Interests of the Putative Plaintiff Class**

Given the CBK firms' disregard for the efficiencies gained by private ordering, Plaintiffs request this court appoint Hagens Berman as Interim Co-Lead Class Counsel as Hagens Berman is well qualified to lead this action and will fairly and adequately represent the interests of all plaintiffs and the putative class.

Rule 23(g) of the Federal Rules of Civil Procedure provides that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Where, as here, there are multiple actions pending, appointment of interim class counsel is necessary to protect the interests of class members because it "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation (Fourth) ("Manual"), § 21.11.

In considering the appointment of class counsel, the court "must consider" four factors under Rule 23(g)(A), including "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(A)(i)-(iv). Moreover, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(B). A review of

PLS.' RESP. TO MOT. FOR CONSOLIDATION AND                   - 4 -
APPT. OF INTERIM COUNSEL – 09-cv-00430-AWI-DLB
010122-11  299397 V1

all factors reveals that the selection of Hagens Berman as Interim Co-Lead Class Counsel is appropriate.

### C. Hagens Berman Will Fairly and Adequately Represent the Interests of Plaintiffs and the Putative Class

Attorneys appointed to serve as interim class counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In selecting interim class counsel, the Court must consider each of the Rule 23(g) factors; all of the factors must be considered as no single factor is determinative. Advisory Committee Notes (2003 Amendments). For the reasons set forth below, Hagens Berman will fairly and adequately represent the interests of plaintiffs and the putative class.

#### 1. The first firm to protect all individuals affected by Defendants' conduct, Hagens Berman has completed significant work in investigating and identifying potential claims in this action and has taken steps to advance this litigation

First, Hagens Berman is an appropriate selection for co-lead counsel because the firm took the first step for protecting *all* of the putative class members now at issue in this litigation. Instead of protecting the entirety of individuals deleteriously affected by Defendants' conduct, the Cohen Milstein/Berman DeValerio Complaint narrowly defined the class to preclude residents of 25 states from recovery. *See* CBK Mem. at 6 n.1. Recognizing this inadequacy, Plaintiffs filed the first complaints that sought certification of a nationwide class against Defendants, a class that would protect all farmers damaged, not just a subset of those damaged. While the CBK firms presently discount the Complaints filed by Plaintiffs through the use of name calling (*i.e.,* 'copycat'), the CBK firms cannot avoid the fact that Plaintiffs' Complaints were the first complaints on file that protected *all* of the farmers affected by Defendants' conduct. And, apparently recognizing that their Complaint did not adequately protect all individuals, Cohen Milstein/Berman DeValerio subsequently amended their complaint (following the filing of Plaintiffs' Complaints) to include a nationwide class. Thus, while the CBK firms tout their ability to protect the class by lauding their investigatory skills, see CBK Mem. at 4-6, they cannot avoid the fact that they failed to protect the class at the outset of this litigation. As such, Hagens Berman is the appropriate choice for co-lead counsel in this action.

### 2. Hagens Berman has extensive experience in litigating complex class actions and is knowledgeable in the applicable law

Second, Hagens Berman is well suited to serve as co-lead counsel because the firm has extensive experience in litigating complex class actions and is knowledgeable in the applicable law. Indeed, Hagens Berman is among the most experienced class action firms in the country and collectively possesses the background, experience, and requisite legal knowledge to manage and prosecute the litigation and the claims asserted therein. Hagens Berman's qualifications are summarized below, with additional details in the firm resume (attached hereto as Exhibit A).

Hagens Berman is a Seattle-based law firm with seven offices nationwide, including Berkeley, California. Hagens Berman is particularly experienced in litigating class actions and has been repeatedly recognized as one of the nation's leading plaintiffs' law firms by the National Law Journal. Since its founding, Hagens Berman has represented plaintiffs in class actions and other complex, large-scale litigation across the country. For example, since 2001 Hagens Berman is leading the *In re Pharmaceutical Industry Average Wholesale Price Litigation,* MDL 1456 (D. Mass) against 20 pharmaceutical companies. Serving as lead counsel, Hagens Berman has participated in all phases of the case, including a successful eight week trial. To date, approximately $210 million has been recovered and the remainder of the case is still pending. The case is considered at the top of the scale in terms of complexity of discovery and motion practice. Further, Hagens Berman was appointed co-lead counsel by the Court in *In re Visa Check/MasterMoney Antitrust Litig.*, No. CV-96-5238 (E.D.N.Y.). In that case, a number of large and small merchants and three trade associations sued Visa and MasterCard, alleging that defendants have created a tying arrangement in violation of § 1 of the Sherman Antitrust Act by means of their 'honor all cards' policy, which requires stores that accept defendants' credit cards to accept their debit cards as well. Plaintiffs also alleged that defendants attempted and conspired to monopolize the debit card market in violation of § 2 of the Sherman Act. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 129-30 (2d Cir. 2001), *cert. denied*, 536 U.S. 917 (2002). The district court certified a class comprising "all persons and business entities who have accepted Visa and/or MasterCard credit cards and therefore are required to accept Visa Check

1  and/or MasterMoney debit cards under the challenged tying arrangements, during the fullest period
2  permitted by the applicable statutes of limitations." *Id*. at 131. The Second Circuit affirmed class
3  certification, and the Supreme Court denied certiorari. The parties settled the case on the eve of
4  trial, valued at $3 billion. *Id*. Hagens Berman also recently served as co-lead counsel in another
5  action pending in California, namely *In re Dynamic Random Access Memory (DRAM) Antitrust*
6  *Litig*. MDL No. 1486 (N.D. Cal.), recovering settlements in excess of $325 million for the direct
7  purchaser class and winning praise from the Honorable Judge Phyllis Hamilton for its skill,
8  efficiency, and cooperation with other parties and the Court.
9       And, Hagens Berman also played a major role in litigation by State Attorneys General
10 against the tobacco industry, representing 13 states and resulting in the largest state settlement in
11 history. Only two States took their cases against that industry to trial: Washington and
12 Minnesota. As a result, only two private firms tried cases on behalf of the States against the
13 industry. Hagens Berman is one of those firms.
14      In addition, Hagens Berman also has knowledge and experience from the litigation of fraud
15 claims against the dairy industry. Indeed, following the consolidation of seventeen suits by the
16 Judicial Panel on Multidistrict Litigation, Judge E. Richard Webber of the U.S. District Court for
17 the Eastern District of Missouri appointed Hagens Berman (attorneys Steve Berman and Elizabeth
18 Fegan) as co-lead counsel in the *Aurora Dairy Organic Milk Marketing & Sales Practices*
19 *Litigation,* MDL 1907 (E.D. Mo.), charging Hagens Berman with the responsibility for leading the
20 consolidated case against a dairy and major nationwide retailers arising out of the sale and
21 marketing of "organic" milk that was not in fact organic.
22      The attorneys Hagens Berman will staff this matter include (but are not limited to) the
23 following experienced class action attorneys:
24      Steve Berman is Hagens Berman's managing partner and is regarded as one of the
25 country's top civil litigators. Recognized as one of the "Top 100 Influential Lawyers in America"
26 by the National Law Journal, Mr. Berman served as a special assistant attorney general for 13
27 states in the tobacco litigation which resulted in the largest settlement in history. He is an
28 experienced trial lawyer in large scale cases. He was in the eighth week of trial of the Washington

PLS.' RESP. TO MOT. FOR CONSOLIDATION AND      - 7 -
APPT. OF INTERIM COUNSEL – 09-cv-00430-AWI-DLB
010122-11 299397 V1

1    tobacco trial when tobacco settled on a global basis.  He has experience in MDL trials.  He was a
2    part of the trial team in the *WPPS Litigation* (a four-month trial) and is the lead trial lawyer for
3    several classes in claims against twenty-two pharmaceutical companies in *In re Average Wholesale*
4    *Price Litigation,* MDL 1456 (D. Mass).  In recognition of his prominence, Mr. Berman was also
5    retained by Microsoft to be part of the core national team representing the company in antitrust
6    class actions resulting from Judge Jackson's Findings of Fact in the U.S. Department of Justice's
7    antitrust case against the company.

8        Elizabeth Fegan is a partner with Hagens Berman and heads the firm's Chicago office.  Ms.
9    Fegan is an experienced class action attorney and together with Steve Berman, Elizabeth Fegan and
10   Hagens Berman have been selected as co-lead counsel in a series of class actions against Clear
11   Channel Communications Inc. – the nation's largest media and entertainment company for its
12   alleged use of its market dominance to illegally inflate ticket prices to live rock concerts across the
13   country, *In re Live Concerts Antitrust Litigation,* MDL No. 1745 (C.D. Cal.).  In October 2007, the
14   district court granted certification for the first five of twenty-two lawsuits lead by Hagens Berman,
15   in which Plaintiffs have argued in part that Clear Channel used anticompetitive, monopolistic
16   practices to keep ticket prices high for consumers.  *In re Live Concerts Antitrust Litig.,* 247 F.R.D.
17   98 (C.D. Cal. 2007).  In addition, Ms. Fegan also is serving as co-lead counsel in antitrust litigation
18   brought by the firm against Toys 'R' Us and several baby product manufacturers, *McDonough, et*
19   *al. v. Toys 'R' Us, et al.* (E.D. Pa.), where the defendants allegedly violated the Sherman Antitrust
20   Act by conspiring to inflate prices of high-end baby products, including car seats, strollers, high
21   chairs, crib bedding, breast pumps and infant carriers.  Moreover, Elizabeth Fegan was appointed
22   by the United States District Court for the Northern District of Illinois to the Special Master team
23   assisting the Court in the settlement-related confirmatory discovery process and approval process
24   in the *In re Waste Mgmt. Sec. Litig*., as well as by the Circuit Court of Cook County to the Special
25   Master team assisting the Court with certain aspects of the class action fairness hearings in *Wolens*
26   *et al. v. American Airlines*, Nos. 88 CH 7554, 89 CH 119 (Cir. Ct. Cook Cty., Ill.).

27       Jeff Friedman is a partner with Hagens Berman's San Francisco office where he specializes
28   in class actions against large corporations involving securities fraud, consumer protection and

privacy rights violations.  Mr. Friedman has litigated numerous cases on behalf of class members resulting in multi-million dollar settlements, including *In re Sony BMG Audio Compact Disc Litigation* (Southern District of New York) and *Watson v. Dell* (Western District of Washington). Mr. Friedman's legal experience covers wide-ranging areas of corporate fraud and complex commercial transactions.  From 1997-2000, Mr. Friedman was an Assistant United States Attorney ("AUSA") in the Criminal Division of the United States Attorney's Office for the Central District of California (Los Angeles).  As an AUSA, Mr. Friedman tried numerous federal cases and prosecuted matters involving investor, bank and real estate fraud, tax evasion, narcotics trafficking and money laundering. Prior to joining the U.S. Attorney's office, Mr. Friedman clerked for the Honorable Manuel L. Real, United States District Court Judge, Central District of California.

Shana Scarlett is an associate with Hagens Berman's San Francisco office and has over six years experience in prosecuting class actions, including securities fraud, consumer protection and privacy rights violation.  Ms. Scarlett graduated from Stanford Law School in 2001, and was an articles editor on the Stanford Law Review.  Ms. Scarlett has participated in numerous consumer class actions, including representing a nationwide class of uninsured hospital patients in *Tenet Healthcare Cases II* (Los Angeles Superior Court); representing consumers against the major telecommunications carriers for their participation in the Terrorist Surveillance Program (*In re National Security Agency Telecommunications Record Litigation*); representing California home owners against a large subprime lender (*Valdes v. Ameriquest Mortgage Co.*, Alameda Superior Court).  Ms. Scarlett was also a member of the litigation team in *In re Sony BMG Audio Compact Disc Litigation*, where she helped plaintiffs to secure a multi-million dollar settlement for consumers and an agreement from Sony BMG to stop using harmful rootkit software that created a number of serious security, privacy and consumer protection issues on music CDs.

As is clear from this brief recitation, Hagens Berman has extensive experience leading complex class actions and is knowledgeable in the law that will be at issue in this lawsuit.  Given this experience, Hagens Berman is an appropriate selection for Interim Co-Lead Class Counsel.

### 3. Hagens Berman has the resources necessary to effectively prosecute this litigation

Finally, Hagens Berman will be able to protect the class' interests because it can dedicate the human and financial resources necessary to prosecute this case. As demonstrated by the excellent results achieved in past cases, Hagens Berman is committed to providing the resources required to prosecute this litigation through all phases, including rigorous motion practice, discovery, class certification, summary judgment and trial. Hagens Berman has seven offices located throughout the country with highly experienced attorneys and support staff. Hagens Berman has a national presence and a solid rapport with other plaintiffs' counsel as well as with defense counsel and is skilled at dealing cooperatively with co-counsel and opposing counsel, maximizing efficiency, and knows how to avoid unnecessary cost and expense. Thus, Hagens Berman has the resources necessary to effectively litigate this action and will devote those resources as the case demands. Given such resources, the appointment of Hagens Berman to serve as co-lead counsel in a consolidated action is appropriate.

### D. In The Event That The Class Recovers, Hagens Berman Proposes A Reasonable Fee

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, "[i]n an action certified as a class action, the court may award reasonable attorneys' fees and nontaxable costs authorized by law or by agreement of the parties." Fed. R. Civ. P. 23(h). "To determine attorneys' fees, courts 'typically apply either the percentage-of-recovery method or the lodestar method.'" *Alberto v. GMRI, Inc.*, No. CIV. 07-1895-WBS-DAD, 2008 U.S. Dist. LEXIS 91691, *32 (E.D. Cal. Nov. 12, 2008) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005)). "The Ninth Circuit has noted that attorneys' fees in class actions 'range from 20 percent to 30 percent of the fund created'" and has "approved a district court's conclusion that the 'bench mark' percentage for the fee award should be 25 percent." *Id.* at **32-33 (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). However, and regardless of the benchmark, courts may adjust the percentage "in either direction 'to account for any unusual circumstances involved in this case,'" often considering: "'(1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks

1   of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with

2   counsel's lodestar.'" *Id.* (citing *In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS

3   13555, 2005 WL 1594403, at *18 (C.D. Cal. 2005)).  As for appropriate multipliers, courts within

4   this circuit award a multiplier of anywhere from 1.0 to 4.0.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*,

5   290 F.3d 1043, 1047 (9th Cir. 2002) (finding that a majority of district courts use between 1.0 and

6   4.0 as a multiplier).

7         Here, Hagens Berman proposes that the Court use a percentage of the fund method, while

8   using the lodestar method as a cross check to ensure that the award does not result in a windfall.

9   At this time it is not practically possible to foresee how quickly or successfully this case will be

10  resolved, and therefore it is not practically possible to commit to a specific fee now for the entire

11  litigation.  Hagens Berman does commit, however, that its fee application will be no greater than

12  22% of the value of the common fund or 3 times counsels' lodestar.  In addition, Hagens Berman

13  proposes that the Court enter a case management order, which would require proper timekeeping

14  allowing Interim Co-Lead Counsel to monitor all time and expenses spent during the litigation.

### III.  CONCLUSION

16        Hagens Berman will fairly and adequately represent plaintiffs and the putative class, who

17  will benefit from the experience, knowledge and resources of the firm.  For all the foregoing

18  reasons, Hagens Berman respectfully requests this that the firm be appointed as Interim Co-Lead

19  Class Counsel for plaintiffs and the putative plaintiff class in the consolidated litigation.

20  Alternatively, Plaintiffs request that this court appoint Hagens Berman to the proposed executive

21  committee.  In their memorandum, the CBK firms note that they "remain open to adding an

22  additional member or members to the Interim Executive Committee at the discretion of the Court."

23  CBK Mem. at 14 n.2.

| | | |
|---|---|---|
| 1 | Dated:  May 5, 2009 | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 2 | | |
| 3 | | By   /s/ Shana E. Scarlett<br>        SHANA E. SCARLETT |
| 4 | | Jeff D. Friedman (173886)<br>715 Hearst Avenue, Suite 202 |
| 5 | | Berkeley, CA 94710<br>Telephone: (510) 725-3000 |
| 6 | | Facsimile: (510) 725-3001<br>shanas@hbsslaw.com |
| 7 | | jefff@hbsslaw.com |
| 8 | | Steve W. Berman<br>HAGENS BERMAN SOBOL SHAPIRO LLP |
| 9 | | 1301 Fifth Avenue, Suite 2900<br>Seattle, WA 98101 |
| 10 | | Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594 |
| 11 | | E-mail: steve@hbsslaw.com |
| 12 | | Elizabeth A. Fegan<br>Daniel J. Kurowski |
| 13 | | HAGENS BERMAN SOBOL SHAPIRO LLP<br>820 North Boulevard, Suite B |
| 14 | | Oak Park, IL 60301<br>Telephone: (708) 776-5600 |
| 15 | | Facsimile: (708) 776-5601<br>E-mail: beth@hbsslaw.com |
| 16 | | dank@hbsslaw.com |
| 17 | | J. Barton Goplerud<br>HUDSON MALLANEY & SHINDLER |
| 18 | | 5015 Grand Ridge Frive, Suite 100<br>West Des Moines, IA 50265 |
| 19 | | Telephone: (515) 223-4567<br>Facsimile: (515) 223-8887 |
| 20 | | E-mail: jbgoplerud@hudsonlaw.net |
| 21 | | *Attorneys for Plaintiffs*<br>*Ronald Hayak and James Rehberg* |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

PLS.' RESP. TO MOT. FOR CONSOLIDATION AND                - 12 -
APPT. OF INTERIM COUNSEL – 09-cv-00430-AWI-DLB
010122-11  299397 V1

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

        /s/ Shana E. Scarlett
    SHANA E. SCARLETT

# Mailing Information for a Case 1:09-cv-00430-AWI-DLB

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Christopher Daniel Bell**
  cbell@bakermanock.com,jlewis@bakermanock.com

- **Benjamin Doyle Brown**
  bbrown@cohenmilstein.com,efilings@cohenmilstein.com

- **David A. Edelstein , PHV**
  daedelstein@ober.com,mdbrandy@ober.com

- **Charles M. English , PHV**
  cenglish@ober.com

- **Juli E. Farris**
  jfarris@kellerrohrback.com,kzajac@kellerrohrback.com,dheller@kellerrohrback.com,nstephenson@kellerrohrback.com

- **Christopher Heffelfinger**
  cheffelfinger@bermandevalerio.com,tkelly@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Charles Kendall Manock**
  cmanock@bakermanock.com,btippie@bakermanock.com

- **Kendall L. Manock**
  kmanock@bakermanock.com,sls@bmj-law.com

- **Anthony David Phillips**
  aphillips@bermandevalerio.com

- **Shana E. Scarlett**
  shanas@hbsslaw.com

- **E. John Steren , PHV**
  ejsteren@ober.com

- **Wendy M. Yoviene , PHV**
  wyoviene@ober.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)