1
2
3
4
5
6
7
8                 **UNITED STATES DISTRICT COURT**
9                **EASTERN DISTRICT OF CALIFORNIA**
10

11   **GERALD CARLIN, JOHN RAHM,**          **1:09-cv-0430  AWI DLB**
     **PAUL ROZWADOWSKI AND BRIAN**
12   **WOLFE, individually and on behalf of**  **1:09-cv-0556  AWI DLB**
     **themselves and all others similarly**
13   **situated,**                           **1:09-cv-0558  AWI DLB**
                                             **1:09-cv-0607  AWI DLB**
14            **Plaintiffs,**
                                            **ORDER FOLLOWING ORDER TO SHOW**
15        **v.**                             **CAUSE WHY PLAINTIFFS' MOTION**
                                            **FOR LEAVE TO FILE A SECOND**
16   **DAIRY AMERICA, INC. and**             **AMENDED COMPLAINT SHOULD BE**
     **CAIFORNIA DAIRIES, INC.,**            **DENIED**
17
              **Defendants.**
18
19
20
21          On October 16, 2013, the court issued a Memorandum Opinion and Order (hereinafter, the

22   "October 16 Order," Doc. # 141) granting in part and denying in part Defendants' motion to

23   dismiss.  As a result of the October 16 Order, the sole remaining Defendant party is Dairy

24   America, Inc., and the sole remaining claim is a claim under California common law for negligent

25   misrepresentation.  See Doc. # 141 at 25 (granting Defendants' motions to dismiss California

26   Dairies, Inc., dismissing claim for negligent interference with prospective economic advantage, a

27   claim for violation of California's UCL and dismissing claim for unjust enrichment as a stand-

28   alone claim.)  On June 30, 2014, Plaintiffs filed a motion for leave to file a Second Amended

                                              1

1 | Complaint ("SAC").  Doc. # 155.  After briefing by the parties, the court issued an Order to Show

2 | Cause Why the Motion to Amend Should Not be Denied (hereinafter the "OSC") on November

3 | 17, 2014.  Doc. # 190.  Currently before the court are the parties' responses to the court's OSC.

4 | **THE PROPOSED SECOND AMENDED COMPLAINT**

5 | Broadly, Plaintiff's proposed SAC addresses two central factual contentions regarding

6 | Defendants' conduct.  First, Plaintiffs' proposed SAC alleges two additional fraud-based claims,

7 | one for intentional misrepresentation and one for violation of federal civil RICO statute, 18

8 | U.S.C. § 1962, in response to what Plaintiffs allege is the discovery of facts indicating Defendants

9 | had actual knowledge of the falsity of their certifications of the accuracy of reporting of nonfat

10 | dry milk sales prices at the time the reports were certified.  Second, Plaintiffs' proposed SAC

11 | seeks to address the possibility that the cooperatives that make up Defendant Dairy America

12 | might, or did, withdraw their equity in Dairy America threatening to leave the sole Defendant

13 | judgment-proof.  Based on this factual allegation, Plaintiffs' proposed SAC seeks to add as

14 | Defendant each of the constituent dairy producer cooperatives that make up Dairy America.

15 | Plaintiffs' proposed SAC also asserts a claim for fraudulent transfer in violation of California

16 | Civil Code § 3439.04.

17 | The additional factual material that was incorporated into Plaintiffs' proposed SAC has

18 | been set forth in some detail in the court's OSC and will not be repeated here.  To the extent the

19 | parties rely on particular factual allegations in the discussion that follows, those factual

20 | allegations will be reviewed there.

21 | **LEGAL STANDARD**

22 | Plaintiff's motion to amend the complaint to add claims is governed by the terms of

23 | Federal Rule of Civil Procedure 15(a), which is to be applied liberally in favor of amendments

24 | and, in general, leave shall be freely given when justice so requires.  See Janicki Logging Co. v.

25 | Mateer, 42 F.3d 561, 566 (9th Cir. 1994).  There is a presumption in favor of granting leave to

26 | amend under Rule 15(a).  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.

27 | 2003).  However, "a district court need not grant leave to amend where the amendment: (1)

28 | prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation;

1    or (4) is futile." Amerisource Bergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 951 (9th Cir.

2    2006).  As noted in the court's OSC, Defendants' contention with regard to Plaintiffs' attempt to

3    add claims is that the claims that Plaintiffs wish to add are futile.  Thus, Defendants' ground for

4    opposition to Plaintiffs' attempt to add claims in the proposed SAC is essentially that Plaintiffs

5    have failed to allege claims for which relief can be granted and that such claims would be futile

6    because they would be subject to dismissal if pled.

7        A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can

8    be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts

9    under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34

10   (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set

11   forth factual allegations sufficient "to raise a right to relief above the speculative level."  Bell

12   Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a

13   motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg.

14   Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the

15   light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's

16   favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the

17   allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to

18   provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

19   a formulaic recitation of the elements of a cause of action will not do").  The pleading standard

20   set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual

21   allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

22   accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

23       The Ninth Circuit follows the methodological approach set forth in Iqbal for the

24   assessment of a plaintiff's complaint:

25       "[A] court considering a motion to dismiss can choose to begin by identifying
         pleadings that, because they are no more than conclusions, are not entitled to the
26       assumption of truth.  While legal conclusions can provide the framework of a
         complaint, they must be supported by factual allegations.  When there are well-
27

28

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

Further, the court notes that it previously overlooked the obvious fact that the claims Plaintiffs seek to add through their proposed SAC each sound in fraud. Claims sounding in fraud are subject to heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that a claim sounding in fraud "must state with particularity the circumstances constituting fraud." Thus, the sufficiency of Plaintiffs' proposed new claims must be assessed in light of the requirement that the "who what where and when" of the alleged fraudulent conduct is set forth with sufficient particularity.

## DISCUSSION

### I. Proposed Additional Claims (Fraud and RICO)

As the court noted in its OSC, "'the elements for an intentional-misrepresentation, or actual-fraud, claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.' UMG Recording, Inc. v. Bertelsmann AG, 479 F.3d 1078, 1096 (9th Cir.2007)." Doc. # 190 at 4:19-22. In the court's OSC, the focus of the court's analysis was whether Plaintiffs' proposed SAC did or could allege facts to support the elements of actual knowledge of falsity and intent to defraud. The court will consider both[1] in turn.

### A. Knowing Falsity

Plaintiffs opposition to the court's OSC highlights a number of sections within the SAC where email communications or allegations of other conversations are set forth that support Plaintiffs' contention that Defendants had *actual knowledge* that the weekly price and volume reports submitted to the National Agricultural Statistical Service ("NASS") pursuant to the Dairy Market Enhancement Act of 2000 ("DMEA") were to *exclude* reports of sales of nonfat dry milk

---

[1] The court is aware that Defendants have also raised the issue of whether Plaintiffs can show the required reliance on Defendants' conduct; an issue that was not addressed by Plaintiffs or raised by the court in the OSC. Because the court did not raise the issue in the OSC and because resolution of the issue of whether Plaintiffs are "price takers" probably will require reference to information outside the complaint, the court will not address the issue here. Defendants are free to raise the issue anew in any later motion for summary judgment.

4

("NFDM") where the price for the sale had been set and not changed 30-days or more from the date of completion of the sale ("forward long term sales").  From this, Plaintiffs contend, it is apparent that Defendants' affirmative answers to the question posed by the annual NASS Validation Worksheet: "[w]hen reporting nonfat dry milk sales data to NASS, did you or can you: exclude [data from forward long term sales]?" were knowingly false.

As the court has previously noted, the wording on the Annual Validation Worksheet ("did you or can you exclude") is admittedly inartful and invites an analysis of the technicalities of truth and falsity.  However, the court's determination of whether fraud based claims are supportable in the context of the facts of this case will not rest on a determination of whether or not there was knowing falsity.  Thus, for the sake of economy of judicial resources, the court will presume for purposes of the analysis that follows that Defendant Dairy America was fully aware that NASS intended that pricing information from forward long term sales contracts as defined on forms should be excluded, and that such pricing information was consciously included by Defendants.

### B. Intent to Defraud

As the court noted in its OSC, "[g]enerally, intent to defraud is the intent to deceive or cheat for the purpose of either causing financial loss to another or bringing about financial gain to oneself.  See United States v. Lewis, 67 F.3d225, 232-234 (9th Cir. 1995); United States v. Cloud, 872 F.2d 846, 852, n.6 (9th Cir. 1989) ('intent to defraud' means 'to act willfully, and with the specific intent to deceive or cheat for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself')."  Doc. # 190 at 10:5-10.  Plaintiffs, in their opposition to the OSC do not directly confront the issue of intent to defraud, but point out that Defendants had "strong incentives to misreport."  Doc. # 199 at 12:15.  The court has recognized the incentives Defendants had to include long term forward contract price information in their weekly reports by noting that:

> The additional facts provided in Plaintiffs' proposed SAC support their
> contention that Defendant acted consciously and purposefully to exert
> some level of control over FMMO milk prices by various means, including
> consciously making a decision to report prices and volumes for fixed price
> long term forward contracts and consciously deciding to hold or release

5

stocks of NFMD for domestic or export markets in order to maximize member profits.  The court cannot infer from this information an "intent to defraud" as that term is defined in the cases cited above.  The essence of facts cited in Plaintiffs' SAC is that Defendant acted according to an acknowledged purpose to maximize the profits of its member entities in the sale of NFDM.  Plaintiffs acknowledge that Defendant played a balancing role by trying to minimize risk while trying to assure profits for both MFDM producers and the providers of raw milk; the essence of Plaintiffs' action against Defendant has been and remains that Defendant asserted its balancing influence too forcefully in favor of NFDM producers to the detriment of raw milk providers.  As Defendants point out, there is nothing surprising or unlawful about Defendants' motivations.  Likewise, there is nothing about ongoing efforts to manage risk that, by itself, suggests impropriety.  The court finds the quoted or summarized email conversations fall short of evincing an intent to cheat or deceive for the specific purpose of causing financial loss to Plaintiffs.  Rather, the information presented in the proposed SAC indicates, at most, that Defendants may have strained the logical limits of rationalizing their policy decision to report sales from long-term fixed-price export contracts.  Again, absent a USDA regulation expressly making Defendants' interpretation unlawful at the time at issue in this action, the court cannot find that Defendant acted according to a specific intent to defraud Plaintiffs.

Doc. # 190 at 10:11-11:3.

Plaintiffs' opposition to the OSC does not confront the fact that, while the proposed SAC alleges facts from which it can easily be presumed that Defendants had powerful incentives to misreport by including long term forward contract information, the added information provides a clear and compelling argument that Defendants' purpose was not to "cheat for the purpose of causing financial loss."  In short, Plaintiffs' proposed SAC alleges facts to show that it was not Defendants purpose to cause financial loss to producer or to enrich handlers at the expense of producers, but to moderate the risk of long-term contracts so as to encourage participation by Dairy America's foreign customer and domestic handlers in order to clear excess NFDM from domestic markets.  As Defendants point out, their inclusion of price information from long term forward contract was consistent whether the contract price was above or below market price at the actual time of sale.  The information provided by the proposed SAC shows a behavior by Defendants that is entirely consistent with the stated goal of price fluctuation risk management and in incompatible with the opportunistic sort of falsity necessary to show an intent to defraud.  The court opined in its OSC that the new information contained in the proposed SAC illuminates Plaintiffs' purposeful inclusion of price information from long term forward, mainly export,

6

contracts in contravention of NASS guidance but at the same time undercuts any allegation that the conduct evinces an intent to defraud.  The court continues in that opinion.  The court therefore is unpersuaded by Plaintiffs' contention that they have shown a plausible basis for demonstrating the element of intent to defraud.  The court concludes that Plaintiffs' attempts to allege actual fraud or RICO violation are futile because the alleged facts are inconsistent with that proposition.

**II.  Additional Defendant Parties – Fraudulent Transfer**

Plaintiffs' proposed SAC seeks to add the member dairies that comprise Dairy America as Defendants or – in the alternative -- to allege claims for fraudulent transfer; apparently in response to information obtained during discovery that some of the member dairies have withdrawn from the Dairy America cooperative and have withdrawn portions of their equity in certain of Dairy America's capital funds.

At the outset it is important to keep in mind that liability for fraudulent transfer is entirely separate from the issue of liability for the acts currently alleged against Dairy America for misreporting of NFDM sales data.  If, under Plaintiffs' theory of direct participation, the individual member cooperatives that make up Dairy America can be held liable as co-defendants for misreporting of sales data, then there can be no claim for fraudulent transfer because there are no non-Defendant third parties to whom the Defendants' assets can be transferred.  If, on the other hand, the proposed additional Defendants cannot be held directly liable for the misreporting of NFDM sales data, then Plaintiffs cannot presently allege claims for fraudulent transfer because such claims have not yet accrued.  There are three possibilities for avoidance of allegedly fraudulent transfers under California Civil Code §§ 3439.04(a)(1), 3439.04(a)(2), and 3439.05.  Under these statutes, a debtor's transfer is fraudulent as to a *creditor* if certain criteria are met.  See Cal. Civ.Code §§ 3439.04(a)(1), 3439.04(a)(2), 3439.05. These statutes provide a cause of action for *a creditor*.  A creditor is a person who has a "right to payment." Cal. Civ.Code § 3439.01(b), (c).  Plaintiffs in this action are not creditors until and unless they receive a judgment against Defendants.  Because Plaintiffs cannot claim to be judgment creditors, the issue of fraudulent transfer drops out of consideration and the only issue remaining for the court's determination is whether the proposed new Defendants can be held directly liable for the

1   misreporting of NFDM sales data.

2         Defendants assert two defenses against Plaintiffs' effort to sue the individual cooperatives

3   comprising Dairy America for their role in misreporting NFDM pricing information.  First,

4   Defendants contend that California Food and Agriculture Code section 54239 immunizes the

5   proposed new Defendants in the same manner as the court held it immunized former Defendant

6   California Dairies.  Second, Defendants contend that in any event, Plaintiffs' claims against the

7   individual member cooperatives are time barred.  Because the court will find that the proposed

8   individual Defendants are immune by statute, it will not discuss Defendants' second contention.

9         Plaintiffs contend that the immunity provided by section 54239 applies only to vicarious

10  liability arising from the tortious acts of the association, and does not shield the members of the

11  association from liability from their own tortious acts as officials of the association.  Of some

12  significance, both parties cite the prior statements of this court in its interpretation of immunity

13  under section 54239.  In particular, Plaintiffs cite the court's analysis of Plaintiffs' agent theory of

14  liability where the court held:

15            In dismissing the vicarious liability claims against Dairy America, the
            Court concluded "the statutory structure under which both California
16            Dairies and Dairy America were organized and the provisions of Cal. Food
            & Agric. Code § 54329 shields cooperative owners from liability for the
17            wrongful acts of the cooperative when the cooperative association is acting
            as agent for the owners unless there is a showing of a level of control
18            substantially greater than that implied in the principal-agent relationship for
            which the cooperative was established.  [Doc. # 141 at 23:22-27.
19

20  Doc. # 199 at 16:11-16.  Plaintiffs go on to allege that "[t]he newly available evidence thus *more*

21  that demonstrates a higher 'level of control' because it implicates the members' *direct*

22  involvement."  Id. at 16-18.  It should be kept in mind that the reason both parties cite this court's

23  prior statements is that there appear to be no other cases interpreting this section.  Accepting for

24  the sake of this discussion that section 54329 does not provide immunity for the wrongful acts of

25  the individual members of a cooperative, the court will nonetheless find that the additional facts

26  alleged in Plaintiffs' proposed SAC do not even hint at wrongful conduct by the member dairy

27  cooperatives.

28         The gist of Plaintiffs' argument regarding the inapplicability of section 54239 to shield the

8

proposed new Defendants is that information made available through discovery indicates that officials or officers of the nine member dairy cooperatives that make up Dairy America are also its directors and, as such, participated actively in Dairy America's alleged misconduct and are therefore individually liable for the damages caused by the misconduct.  There are two factors to consider with regard to the applicability of section 54239; the scope of activities contemplated with regard to cooperatives organized under Cal. Food & Ag. Code § 54001 et seq., and the evidence of the scope of activities of the member cooperative directors of Dairy America in the alleged misconduct.

Under Cal. Food & Ag. Code § 54001 et seq. agricultural producers, including dairy farmers and dairy handlers may form marketing cooperatives as well as cooperatives of cooperatives.  See § 54181[2] (an association or cooperative under this section may make any needful contracts or arrangements with any other cooperative "for the cooperative and more economical carrying on of its business or any part of its business.").  A cooperative organized under this chapter is generally exempt from claims of price fixing, conspiracy to restrain trade, or lessen competition, or similar monopolistic conduct.  §§ 54038 and 54039.  "Any two or more associations may, by agreement between them, unite in employing and using, or may separately employ and use, the same personnel, methods, means, and agencies for carrying on a conducting their respective businesses."  § 54181.  The powers of an association or cooperative formed under this section are plenary for the purposes of conducting the activities for which it was constituted, § 54179, and there appears to be no textual basis to distinguish between normal or excessive cooperative conduct between an association and its constituent members.  It is in contemplation of this wide range of permitted activities, arrangements and immunities that subsection 54239 provides:

> A member or stockholder is not liable for the debts of the association to an amount which exceeds the sum which remains unpaid on his membership fee or his subscription to the capital stock, including any unpaid balance on any promissory note which is given in payment of the membership fee or the subscription to the capital stock.

---

[2]    Unless otherwise noted section or subsection numbers hereinafter refer to sections or subsections of the California Food & Agriculture Code.

1    Id.

2         Plaintiffs' contentions with regard to the activities of the individual representatives of the

3    nine dairy cooperative constituents of Dairy America are set forth at pages 28 through 42 of the

4    proposed SAC.  Nearly all of the information added to the proposed SAC that was not contained

5    in the currently-operative FAC consists of records of email communications between Richard

6    Lewis, the CEO (or equivalent) of Dairy America ("Lewis") and either other members of the

7    Dairy America Board of Directors or executive officers of the member dairy cooperatives that

8    make up Dairy America.  The court has reviewed this new information carefully and finds that the

9    newly alleged facts evince concern by the member cooperatives regarding the effect of non-

10   reporting of forward price contracts on increasing their risk in making long-term contracts for

11   NFDM exports.  The additional information also evinces Lewis' attention to the issue and his

12   thoughts and plans for managing the risk.  In short, the new information set forth in the proposed

13   SAC is evidence of precisely the sort of communications that would be expected to occur

14   between the constituents of a cooperative that was formed for the sole purpose of marketing

15   NFDM and related products and the producers who ultimately bear the risks of entering into long

16   term fixed price export agreements and for whom those export contracts are a very significant

17   part of the business.  The additional information shows the producers' concern for the issue and

18   Dairy America's attention to the issue.  Such attention by an agent to the principal is entirely

19   within the scope of normal agent-principal activities and indicates nothing at all outside the realm

20   of activity for which the constituent members of Dairy America should expect immunity under

21   section 54329.

22        Plaintiffs' observation that the individual members of the Dairy America cooperative were

23   "directly involved" in Dairy America's activities does not differentiate that relationship from any

24   other agent-principal relationship.  What Plaintiffs pointedly do not show with the additional

25   information alleged in the proposed SAC is that any or all of the constituent members of Dairy

26   America actually carried out the functions that were entrusted to Dairy America.  In much the

27   same way that a prospective home seller is directly involved in the sale of his or her home

28   through an agent, the producers of NFDM were directly involved in the sales of their produce and

10

specified the desired terms of their sales.  However, there is no evidence the constituent members wrote the sales contracts, wrote shipping contracts, handled escrow accounts, filled out NASS reports or did any of the other things that are the normal province of the selling agent.  There is absolutely no evidence that either Dairy America or its constituent individual cooperatives did anything that is outside the conduct that immunized through section 54329.

The court concludes that the individual cooperatives that make up Dairy America are immune from the debts of Dairy America that may arise as a result of this suit to the extent such immunity is provided by section 54329.  Since the court has determined that the proposed additional Defendants are immune from suit by statute, the court need not address the issue of whether Plaintiffs' proposed additional claims are time barred.


The court concludes that Plaintiffs have failed to show cause why their motion for leave to amend the complaint should not be denied.  It is therefore hereby ORDERED that Plaintiffs' renewed motion to further amend the complaint is hereby DENIED.

IT IS SO ORDERED.

Dated:   March 16, 2015                    _____
                                                       SENIOR  DISTRICT  JUDGE

11