1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11
12
13

**GERALD CARLIN, JOHN RAHM, PAUL ROZWADOWSKI AND BRIAN WOLFE, individually and on behalf of themselves and all others similarly situated,**

14

**Plaintiffs,**

15

**v.**

16
17

**DAIRYAMERICA, INC. and CAIFORNIA DAIRIES, INC,**

18

**Defendants.**

19

**1:09-cv-0430  AWI DLB**

**CLASS ACTION**

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)6**

**Doc. #'s 253, 255 and 268**

20
21
22
23
24
25
26

    In this action for damages, defendants DairyAmerica, Inc. and California Dairies, Inc. ("Defendants") have moved separately pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss claims alleged in the Third Amended Complaint ("TAC") of plaintiffs Gerald Carlin, et al. ("Plaintiffs").  This action was originally brought under diversity jurisdiction pursuant to 18 U.S.C. § 1332.  The TAC alleges federal claims under the Racketeer Influenced Corrupt Organizations Act ("RICO").  Venue is proper in this court.

27
28

    Plaintiffs' TAC alleges a total of six claims for relief. The first two claims, negligent misrepresentation and intentional misrepresentation, both under California common law, are

1

alleged against both Defendants.  Plaintiffs' third and fourth claims for relief are both claims for violation of the civil RICO statute, 18 U.S.C. § 1962(c).  The third claim for relief alleges civil RICO violation against California Dairies only.  The fourth claim for relief is pled in the alternative to the third and alleges civil RICO violation against both defendants.  Similarly, Plaintiffs' fifth and sixth claims for relief allege conspiracy to violate civil RICO pursuant to 18 U.S.C. § 1962(d); with the fifth claim for relief alleged against California Dairies only and the sixth claim alleged in the alternative against both Defendants.  In the motions to dismiss currently before the court, Defendant DairyAmerica seeks to dismiss only the two RICO claims against it. In addition, DairyAmerica seeks an order dismissing any money damages claims under the filed rate doctrine for income lost as a result of improperly reported weekly reports to the National Agricultural Statistical Service that were not explicitly disavowed *and* recalculated.  California Dairies joins DairyAmerica's motion to dismiss and motion to limit damages and also moves on its own to dismiss all claims against it.  The court will consider first DairyAmerica's motion to dismiss the RICO claims against it and will then consider California Dairies' motion to dismiss all claims against it.

**PROCEDURAL HISTORY**

On January 20, 2016, the court issued an order on Plaintiffs' renewed motion to further amend the complaint, granting the motion and directing that any further amended complaint be designated Plaintiffs' Third Amended Complaint (hereinafter, the "January 20 Order").  Doc. # 240.  Plaintiffs' TAC was filed on February 24, 2016.  California Dairies' Motion to dismiss was filed on March 23, 2016, and DairyAmerica filed a notice of motion to dismiss on the same date. DairyAmerica filed its memorandum of points and authorities on March 30, 2016.  Plaintiffs filed their oppositions to both motions to dismiss on April 12, 2016.

**FACTURAL BACKGROUND/ALLEGED CLAIMS**

The court's January 20 Order discussed at some length Plaintiffs' overall theory of the case and the claims alleged in what was then denominated as Plaintiffs' proposed Renewed Second Amended Complaint ("RSAC").  See Doc. # 240 at 2:2-17 and 3:23-7:17.  The claims alleged in Plaintiffs' TAC are substantially identical to those alleged in the RSAC except that

Plaintiffs' claims for violation of RICO and Conspiracy to commit RICO are both alleged as claims in the alternative against California Dairies (claims 3 and 4) and against both Defendants (claims 4 and 6) in the TAC.  Also, Plaintiffs' TAC omits claims against the individual dairy cooperatives that made up DairyAmerica except for California Dairies.  See Doc. # 240 at 17:16-21) (concluding claims against the proposed member defendants were time-barred except for claims against California Dairies).

The major issues of contention by DairyAmerica that has not been discussed in prior orders of the court is DairyAmerica's contention that RICO claims cannot be alleged against it because it is not a "*person*" within the meaning of the statue and therefore cannot be sued as either a conspirator or direct violator of RICO.  California Dairies motion to dismiss the claims against it references facts that were previously set forth in the Court's January 20 Order, and need not be repeated here.  The factual background set forth in the court's January 20 Order is incorporated here by reference.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

Claims sounding in fraud are subject to heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) requires that a claim sounding in fraud "must state with particularity the circumstances constituting fraud."

## ANALYSIS

### I. DairyAmerica's Motion to Dismiss RICO Claims

As noted above, DairyAmerica's motion to dismiss is primarily concerned with the two RICO-related claims alleged against it; claims 4 and 6.  DairyAmerica bases its motion on a number of independent contentions of which one – the contention that DairyAmerica is not distinct from the alleged enterprise – is of determinative importance.  The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., prohibits "any *person employed by or associated with any enterprise* engaged in, or the activities of which affect, interstate or foreign commerce, [from conducting or participating] directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (italics added).  A straightforward reading of the statutory text leads to the conclusion there are two structural parts of a civil RICO claim; a *person* (which may be either a natural person or a business entity) and the *enterprise* which either employs the *person* or with which the *person* is associated.  As DairyAmerica points out, case authority

4

1   clearly establishes this proposition.  See Cedric Kushner Promotions, Inc. v. King, 533 U.S. 158,

2   161 (2001) ("In ordinary English one speaks of employing, being employed by, or associating

3   with others, not oneself").

4          Plaintiffs do not dispute that the "enterprise" and the "person" must be distinct; rather,

5   they contend that a sufficient distinction may be made by considering that DairyAmerica is an

6   "enterprise" with the meaning of the RICO statues when it functions in its role as a marketer of

7   nonfat dry milk ("NFDM") and by considering DairyAmerica to be an "association-in-fact" in its

8   role as perpetrator of the alleged unlawful conduct.   Plaintiff cites River City Markets, Inc. v.

9   Fleming Foods West, Inc., 960 F.2d. 1458 (1992) ("River City") for the uncontested proposition

10  that an entity or individual who combines with other entities or individuals to form an

11  "enterprise" may be held liable under RICO if the enterprise "otherwise falls within statutory

12  prescriptions."  Id. at 1461.  The court has reviewed the decision in River City and finds that it

13  stands for the unremarkable proposition that two separate defendant entities that are otherwise

14  unaffiliated can, by contract or other agreement, form an "association-in-fact" through which the

15  individual defendant entities can realize the purpose of their illegal conspiracy.  See id. at 1462-

16  1463 ("Virtually every business contract can be called an 'association in  fact.'  To constitute a

17  proscribed RICO enterprise the associates must participate, directly or indirectly 'in the conduct

18  of such enterprise's affairs through a pattern of racketeering activity'").

19         What is not supported by River City or any other case known to the court is the

20  proposition that a formal "enterprise," such as DairyAmerica, has one existence when it carries

21  out the legitimate functions that its constituent members intend, and a separate "association-in-

22  fact" existence when it is considered as the entity through which the individual constituent

23  members advance their unlawful conspiracy.  Stated more broadly, River City stands for the

24  proposition that when several separate conspirators come together to form a "whole" through

25  which the conspiracy is to be advanced, the individual conspirators that constitute the "whole"

26  can be held liable under RICO whether the "whole" is a formal entity (as in the case of

27  DairyAmerica) or an otherwise informal entity.  The whole, however, cannot be held to be a

28  conspirator; it is the "enterprise" through which the conspiracy is advanced.

The court finds Plaintiff's argument that the formal association, DairyAmerica, can be considered to have a separate and simultaneous existence as an "association-in-fact" that can be held liable for conspiracy under RICO is unpersuasive. Plaintiffs' claims in the alternative against DairyAmerica for RICO violation and conspiracy to violate RICO, claims 4 and 6, are therefore subject to dismissal. Since Plaintiffs' RICO claims against DairyAmerica are subject to dismissal on the ground discussed, the court need not address DairyAmerica's remaining arguments for dismissal.

## II. California Dairies' Motion to Dismiss

Plaintiffs' TAC alleges claims against California Dairies for negligent misrepresentation, intentional misrepresentation, violation of RICO and conspiracy to violate RICO pursuant to claims 1, 2, 3 and 5. California Dairies moves to dismiss each of these claims.

### A. Negligent Misrepresentation and Intentional Misrepresentation

California Dairies seeks dismissal of Plaintiffs' misrepresentation claims on three grounds. First, California Dairies contends it is shielded from liability for California claims under California common law through California Agriculture Code § 54239, which expressly provides that a member of an agricultural collective is not liable for the debts of the collective. California Dairies observes that this statute is a specific codification of the general proposition that "shareholders or owners [of a corporation] are not personally liable for torts of a corporation except under certain extraordinary circumstances See, e.g., Wyatt v. Union Mortgage Co., 24 Cal.3d 773, 785 (Cal. 1979)." . Doc. # 266 at 12:10-11. Second, California Dairies contends Plaintiffs have failed to state a claim for either negligent or intentional misrepresentation because they have failed to adequately allege facts to show that California Dairies made any representations to National Agricultural Statistical Service ("NASS"), the federal entity that received the weekly reports for nonfat dry milk ("NFDM") sales.

### 1. Plaintiffs' Theory of Liability as to California Dairies

Plaintiffs' TAC alleges that DairyAmerica is a cooperative entity formed by several dairy handler cooperatives, including California Dairies that produce among other products NFDM. The TAC alleges the board of directors of DairyAmerica is populated by primarily by the senior

6

executives of the constituent handler cooperatives and that the board of directors has "hands-on" responsibility for major operating decisions including the decision to report sales prices for NFDM on long-term forward contracts that NASS instructions clearly provided should not have been included in the NASS weekly surveys.  Plaintiffs' TAC alleges that DairyAmerica board of directors members included Gary Korsmeier, Richard Cotta, Jim Gomes, Keith Gomes, Joe Heffington, Stephen Maddox, Gerben Leyendekker and Duane Matherton; each of whom served simultaneously as board members of DairyAmerica and as senior executive officers of California Dairies during the proposed class period.  See Doc. # 246 at ¶ 60.  The TAC also alleges that some of these executives of California Dairies served as officers of DairyAmerica during the class period.  See id. at ¶ 61.  Plaintiffs therefore allege that individual board members of Dairy America who were simultaneously executives of California Dairies directed or were instrumental in directing DairyAmerica to improperly report sales prices for NFDM that were prices from forward sales contracts whose prices were set and not modified more than 30 days before the completion of the contract.

In its January 20 Order, this court noted briefly that defenses advanced by California Dairies for claims under RICO were unavailing because "(1) [California Agriculture Code] section 54239 does not shield California Dairies from *its own* tortious conduct, and (2) because the Supremacy Clause precludes state defenses with regard to RICO claim based on federal predicate acts."  Doc. # 240 at 19:22-24.  The court also observed that the first of Plaintiffs' "contention[s] is uncontested.  Logically and textually section 54239 does not shield an agricultural producer from liability for its own acts."  Id. at 25-26.  The court's passing comment with regard to California Dairies' labilities for its own tortious conduct is significant in the present context because Plaintiffs' TAC makes it clear that California Dairies is being sued under the California common law claims for *its own* tortious conduct.  It is Plaintiffs' legal theory that California Dairies was acting on its *own* behalf *through* its position on DairyAmerica's board of directors and through the service of its senior administrators as officers of DairyAmerica.  As will be discussed below, this observation is significant in the court's determination of California Dairies' defenses against Plaintiffs' claims for negligent and intentional misrepresentation.

### 2. *Immunity Pursuant to Ag. Code § 54239*

As noted, California Dairies seeks immunity from Plaintiffs' state law claims pursuant to section 54239, which California Dairies characterizes as a codification of the general principle that the shareholders of a corporation are not generally liable for the torts of the corporation. Although California Dairies was aware of Plaintiffs' theory of California Dairies' liability for its *own* misconduct, section 54239 notwithstanding; California Dairies has failed to counter Plaintiffs legal contention and instead have asserted, without legal authority, that California Dairies, as one of nine members of the board of directors of DairyAmerica, is shielded from DairyAmerica's liabilities through section 54239. California dairies' argument suggests on one hand that an entity that is a member of an agricultural marketing cooperative is akin to a shareholder of a corporation and is not liable for tort claims against the cooperative simply by reason of owning shares in the cooperative. The court has no disagreement with this as a general statement of shareholder non-laibility. However, California Dairies' argument goes on to suggest on the other hand that the fact that executive officers of California Dairies served on the board of directors and served as officers of DairyAmerica while also serving as officers of California Dairies makes no difference with regard to immunity under section 54239. This is the contention that Plaintiffs and the court take issue with.

Despite the court's raising of this issue in its January 20 Order, California Dairies has failed to find legal authority that support's its contention of immunity under section 54239 against liability for the acts of its employees as directors and officers of DairyAmerica. The court agrees with Plaintiffs who contend that extending immunity to constituent members of a marketing cooperative who would benefit by otherwise unlawful price manipulation and who occupy positions of authority in the cooperative that would allow them to undertake such price manipulation would constitute an invitation to mischief. The court also agrees with Plaintiffs that, absent clear case authority, a court may not presume that the immunity provided by section 54239 is intended to extend to the activities of the constituent members who function in positions of authority within the marketing cooperative.

The court finds that California Dairies' contention that they are shielded from Plaintiffs'

1    claims by operation of section 54239 is unsupported by case authority and is logically

2    unpersuasive.

3                      *3.   Sufficiency and Specificity of Factual Allegations*

4            California Dairies contends that Plaintiffs' TAC is insufficient because it fails to allege

5    facts to show that California Dairies *instructed* DairyAmerica to make any misrepresentations.

6    California Dairies' contention is based primarily on paragraphs 29, 30 and 35 of the White

7    Declaration, Document Number 223-1.  This portion of the declaration states:

8            29.    The decision by DairyAmerica in 2006 to improperly
        include, in its weekly reports to NASS, figures from non-DEIP sales of
9        NFDM in which the selling price was set (and not adjusted) 30 or more
        days before the transaction was completed, and thus limit and prevent the
10       rise of raw milk prices, was taken by jointly by Richard Lewis [CEO of
        DairyAmerica] and several executives from cooperatives that were
11       members of DairyAmerica.  Those executives may have included Keith
        Gomes, Joe Heffington, Keith Murfield, Joel Clark, David Parrish, William
12       Schreiber, William Neary, Craig Alexander, Richard Mosemann, Jim Baird
        and Richard Stammer.

13
14           30.    When the executives at cooperatives that were members of
        DairyAmerica decided in 2006 to disobey NASS's instructions and
15       include, in DairyAmerica's weekly reports to NASS, figures from non-
        DEIP, long-term contracts, those executives did not do so in order to
16       personally profit.   Rather, they made the decision to shield their
        cooperatives from sizable losses that would stem from the sale of NFDM
17       through the long-term export contracts executed with Fonterra.

18       [¶ . . .¶]

19           35.    Prior to February 2007, when DairyAmerica filled out
        weekly reports to NASS and included figures from non-DEIP sales of
20       NFDM in which the selling price was set (and not adjusted) 30 or more
        days before the transaction was completed, several board members and
21       officers of DairyAmerica – including Keith Gomes, Joe Heffington, Keith
        Murfield, Joel Clark, David Parrish, William Schreiber, William Neary,
22       Craig Alexander, Richard Mosemann, Jim Baird and Richard Stammer –
        knew that it was questionable whether or not DairyAmerica was complying
23       with NASS's instructions.  I base this statement on the conversations I had
        directly with board members and officers of DairyAmerica about the
24       NASS reporting requirements.

25           With regard to Plaintiffs' claim for negligent misrepresentation, California Dairies

26   contends that the use of the word "may" in the last sentence of paragraph 29 negates any factual

27   content linking California Dairies to any decision by DairyAmerica to report anything.  California

28   Dairies contends that the ambiguity expressed in the White Declaration renders conclusory any

1  allegation "that California Dairies instructed DairyAmerica to misreport or that California Dairies

2  itself actually misreported dairy prices to NASS."  Doc 266 at 15:19-21.

3        The court finds that California Dairies' contentions regarding conclusory allegations of

4  California Dairies "instruction" of DairyAmerica's misreporting miss the mark in two significant

5  ways.  First, the allegation, construed liberally in favor of the non-pleading party, indicate that

6  "instruction" is not the issue.  Rather, Plaintiffs TAC alleges that the decision to misreport was

7  undertaken ultimately by the board of directors of DairyAmerica which, in turn, was populated by

8  executive officers of California Dairies and the other nine handler cooperative who the TAC

9  identifies as co-conspirators (because they were dismissed as Defendants).  Thus, interpreting any

10  ambiguity in the TAC in Plaintiffs' favor, it is evident that Plaintiffs allege do not allege that

11  DairyAmerica was *instructed* by California Dairies to misreport; California Dairies, along with

12  the other "co-conspirators" made the *decision* to misreport and an employee or officer of

13  DairyAmerica physically carried out that decision.  Plaintiffs' TAC makes it clear that the

14  allegation against California Dairies is based on the theory that California Dairies, *jointly* with

15  other unnamed officers from other handler dairies directly decided to misreport.

16        Second, California Dairies confuses to some extent the sufficiency of the pleading and the

17  weight of the evidence cited by the pleading.  While the White Declaration is somewhat

18  ambiguous with regard to California Dairies' involvement in the decision making, the TAC is not.

19  What is required at the pleading stage is that the claim be based on factual allegations that are

20  ascertainable.  Twombly, 550 U.S. at 555.  In determining a motion to dismiss, the court does not

21  weigh evidence, it only checks to see that the complaint's allegations are rooted in ascertainable

22  fact, whether or not the necessary facts are proven at the time of pleading.

23        The White Declaration offers evidence that the decision to misreport was *jointly* taken by

24  *both* the CEO of DairyAmerica and the officers of the handler cooperative (including California

25  Dairies) in their roles as members of the board of directors of DairyAmerica.  The White

26  Declaration places named individual officers of California Dairies on the board of directors who

27  were serving as members of the board of directors or operating officers of DairyAmerica during

28  the relevant time period and credits these individuals with receiving information and being part of

1   conversations that directly addressed the requirements of NASS reporting.  While a finder of fact

2   may require more specific and/or convincing evidence than is offered in the White Declaration to

3   find California Dairies liable for its conduct, the court finds that Plaintiffs' claim of negligent

4   misrepresentation claim is rests on allegations of ascertainable factual that are at least partially

5   inferred by evidence.  The court finds this is sufficient for pleading purposes.

6        With regard to Plaintiffs' claim against California Dairies for intentional

7   misrepresentation, California Dairies' contentions are much the same as they were in opposition

8   to the claim for negligent misrepresentation and fail for much the same reason.  Again, California

9   Dairies relies on the absence of evidence to show that *it* misreported anything and on the

10  ambiguities contained in the White Declaration that it suggests are devoid of any facts linking

11  California Dairies to any misreporting.  These contentions are unpersuasive for the reasons

12  previously discussed.  To the extent California Dairies relies on the enhanced specificity

13  requirements for pleading a fraud-related claim provided by F.R.C.P. 9(b), that argument also

14  fails because it is not the specificity of Plaintiffs' intentional misrepresentation claim that

15  California Dairies is actually challenging, it is the weight of evidence supporting it.  To satisfy

16  Rule 9(b), a plaintiff must allege the "who, what, where, when, and how" of the charged

17  misconduct. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997).  Plaintiffs' TAC – again

18  interpreted liberally in favor of the non-moving party – alleges that one or more of a short list of

19  named officers of California Dairies functioning on the board of directors of DairyAmerica

20  jointly made the decision to misreport NFDM sales prices for NFDM on weekly NASS reports

21  during the class period by improperly including sales data from forward sales contracts.  Nothing

22  more is required by Rule 9(b).

23       **B.  Claims of RICO Violation**

24       Because the court has determined that RICO claims cannot be brought against

25  DairyAmerica, the only RICO claims remaining are claims 3and 5 alleging RICO violation and

26  conspiracy to commit RICO violation against California Dairies only.  For the reasons that

27  follow, the court will conclude that Plaintiff's claim for conspiracy to violate RICO is adequately

28  pled, but the claim for direct substantive violation of RICO is not.

### 1. Claim for Substantive RICO Violation is Inadequately Pled

To state a civil RICO claim pursuant to 18 U.S.C. § 1962(c), a plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.' " Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir.2001).  For purposes of Plaintiffs' action, the "racketeering activity" alleged consists of wire and mail fraud in violation of 18 U.S.C. § 1341(a) and 18 U.S.C. § 1343, respectively.  California Dairies' motion to dismiss the third claim for RICO violation focuses on the fourth and fifth of the listed elements.  California Dairies' opposition to Plaintiffs' RICO claims challenges the sufficiency of Plaintiffs' pleading of the fraud component of these predicate acts and challenges Plaintiffs' allegation they were harmed by California Dairies' conduct.

As California Dairies points out, because the "racketeering activity" alleged in Plaintiffs' TAC is fraud, the pleading requirements of F.R.C.P. 9(b) apply.  Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  Schreiber Distrib. Co. v. Serve Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986).  " '[T]he p[leader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" Odom v. Microsoft Corp., 486 F.3d 541, 553-554 (9th Cir. 2007) (quoting Schreiber, 806 F.2d at 1401).  In the instant case, it is not disputed that the alleged false representations consisted of the weekly NASS reports from DairyAmerica improperly reflecting sales data for forward price NFDM sales contracts and the yearly verification documents also prepared by DairyAmerica through its CEO, Richard Lewis.  There is no allegation that anyone from California Dairies actually prepared or transmitted the alleged false representations; rather, the TAC alleges that California Dairies and co-conspirators directed the production of the false representations.  In the context of substantive RICO violation, unlike common law fraud-based claims, "bare allegations that each of the defendants 'caused' or 'permitted' certain events to occur are insufficient for Rule 9(b) purposes under any of the RICO provisions."  Lewis on Behalf of Nat. Semiconductor Corp. v. Sporck, 612 F.Supp. 1316, 1325 (N.D.Cal. 1985).  The court finds it significant that those examples of claims of RICO violation based on fraud that are examined and found by courts to be

1   adequately pled note that the pleading in question specifies the identities of the originator and

2   recipient of the allegedly false representations.  See, e.g., id.; Sun Sav. & Loan Ass'n v.

3   Dierdorff, 825 F.2d 187, 196 (9th Cir. 1987).  This finding of significance is bolstered by the

4   observation that congress saw fit to provide the separate statutory basis of conspiracy to impose

5   RICO liability in those situations where the misconduct alleged is a significant factor in the RICO

6   violation, but not the direct means by which the violation was accomplished.

7        The court concludes that the absence of any allegation that an officers of California

8   Dairies directly prepared and/or transmitted the allegedly false representations is fatal to

9   Plaintiffs' claim of direct violation of RICO pursuant to 18 U.S.C. § 1962(c).  Dismissal of

10  Plaintiffs' third claim for relief will therefore be granted.  Because the court finds Plaintiffs'

11  claim of direct RICO violation is inadequately pled on the ground discussed, a separate

12  examination of California Dairies alternate theories for dismissal will not be undertaken although

13  certain of California Dairies' contentions will be briefly discussed infra.

14        *2. Conspiracy to Commit RICO is Adequately Pled*

15        California Dairies relies on Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1561

16  (1st Cir. 1994) for the proposition that a claim for conspiracy to violate RICO requires that a

17  plaintiff show "(1) the existence of an enterprise affecting interstate commerce, (2) that the

18  defendant knowingly joined the conspiracy to participate in the affairs of the enterprise, (3) that

19  the defendant participated in the conduct of the affairs of the enterprise, and (4) that the defendant

20  did so through a pattern of racketeering activity by agreeing to commit, or in fact committing two

21  or more predicate offenses."  Doc. # 266 at 24:10-14.  While the court's brief discussion of

22  Plaintiffs' proposed conspiracy claims in its January 20 Order cited Aetna and the elements listed

23  therein as constituting an adequate RICO conspiracy claim, a more thorough look into case

24  authority indicates that the elements set forth in Aetna no longer constitute an accurate

25  description of the state of the law in this circuit at this time.

26        The requirement that a conspirator participate or agree to participate in at least two

27  predicate offenses was expressly overruled by the Supreme Court in Salinas v. United States, 522

28  U.S. 52 (1997).  There, the Court observed that the text of the RICO conspiracy statute did not

13

1    require the intent of the conspirator to participate in two predicate criminal acts and is therefore

2    more "comprehensive than the general conspiracy offense in [18 U.S.C.] § 371." Id. at 63.  Based

3    on this observation the Court held, "[i]t makes no difference that the substantive offense under §

4    1962(c) requires two or more predicate acts.  The interplay between subsections (c) and (d) does

5    not permit us to excuse from the reach of the conspiracy provision an actor who does not himself

6    commit or agree to commit the two or more predicate acts requisite to the underlying offense.  Id.

7    at 65.  In Howard v. America Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000), the Ninth Circuit

8    applied the conspiracy standard established by Salinas for criminal RICO cases to the

9    determination of the sufficiency of pleading under Rule 12(b)(6) of claim for civil RICO

10   conspiracy.  The decision in Howard states the legal standard for determination of the sufficiency

11   of pleading of a claim for RICO conspiracy as follows:

12       "A conspirator must intend to further an endeavor which, if completed,
         would satisfy all of the elements of a substantive criminal offense, but it
13       suffices that he adopt the goal of furthering or facilitating the criminal
         endeavor." Salinas v. United States, 522 U.S. 52, 65, 118 S.Ct. 469, 139
14       L.Ed.2d 352 (1997).  A defendant must also have been "aware of the
         essential nature and scope of the enterprise and intended to participate in
15       it." Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir.1993) (internal quotation
         marks omitted).  To establish a violation of section 1962(d), Plaintiffs must
16       allege either an agreement that is a substantive violation of RICO or that
         the defendants agreed to commit, or participated in, a violation of two
17       predicate offenses. See id. (italics added).

18   Howard, 208 F.3d at 751.  While the pleader must allege all the elements of a substantive RICO

19   violation, "a conspiracy claim may survive a factfinder's conclusion that there is not sufficient

20   evidence to prove the [substantive] violation."  Id.

21       In its January 20 Order, the court discussed at some length whether the proposed amended

22   complaint then before the court alleged facts sufficient to state a claim for substantive RICO

23   violation.  The court examined the sufficiency of Plaintiffs' pleading with regard to the predicate

24   offenses of wire and mail fraud, the element of interstate commerce and the element of causation.

25   See Doc. # 240 at 21:12-24:14.  The court concluded that Plaintiffs had alleged facts adequate to

26   show that individuals participated through the entity DairyAmerica in a scheme to "deprive

27   Plaintiffs of something of value – in this case profits from rising prices for raw milk – by means,

28   in this case, of deceit and/or overreaching; that is, by deliberately and purposefully submitting

14

1    false data to frustrate the regulatory purpose of maintaining the risk of rising raw milk prices on

2    milk handlers." Doc. # 240 at 22:21-24.  The court also found that the scheme had an effect on

3    interstate commerce and that the facts alleged in connection with the scheme were sufficient to

4    show knowledge and intent to defraud and that the allegedly fraudulent scheme was the direct

5    cause of harm to Plaintiffs.  The court can find no basis to alter that finding based on any

6    differences between the proposed amended complaint then before the court and Plaintiffs' TAC.

7    The court therefore concludes that Plaintiffs have adequately alleged the elements of a substantive

8    RICO violation.

9            While the court has concluded that Plaintiffs' TAC fails to state a claim against California

10   Dairies for the substantive RICO violation because evidence of actual commission of predicate

11   acts by an officer of California Dairies is inadequately pled, it nevertheless concludes that the

12   TAC adequately alleges that California Dairies, along with the other handler cooperatives,

13   adopted the goal of furthering or facilitating the substantive RICO violation.  The court also finds

14   that Plaintiffs' TAC adequately alleges that California Dairies was aware of the essential nature

15   and scope of the enterprise and intended to participate in it.  Thus, while facts are lacking to show

16   that California Dairies actually committed or agreed to commit two predicate acts, they did agree

17   to further the endeavor which, when completed would constitute a substantive RICO violation.

18   The court therefore concludes that Plaintiffs have adequately pled a claim for conspiracy to

19   commit RICO violation against California Dairies as alleged in their fifth claim for relief.

20   **III.  Defendants' Motion to Limit Damages**

21           Both Defendant parties have joined in a motion to limit Plaintiffs' damage claim to the

22   losses incurred during the period of time encompassed by NASS's recalculation of raw milk

23   prices based on resubmitted weekly reports that correctly omitted data from forward price sales

24   contracts of NFDM.  Defendants contend Plaintiffs' damages are limited by the filed rate doctrine

25   to only those rates that were formally disavowed by NASS as evidenced by the re-computation

26   and issuance of corrected rates.  Plaintiffs' contend that the Ninth Circuit's decision in <u>Carlin v.</u>

27   <u>Dairy America, Inc.</u>, 705 F.3d 856 (2012) authorizes Plaintiffs to recover demonstrated losses for

28   the entire class period of 2002 to 2007.

1    The court has reviewed the Ninth Circuit's decision and finds that Defendants' contention

2  that the filed rate doctrine limits the scope of Plaintiff's damage claim to only the FMMO orders

3  that were specifically recalculated is not supported.  In rejecting this court's earlier conclusion

4  that the filed rate doctrine would apply to bar recovery of damages unless the rate-setting agency

5  formally suspended or set aside the published rates, the appellate court noted that, in the context

6  of rates set through FMMO orders promulgated under the Agricultural Marketing Agreement Act

7  ("AMAA") and the Dairy Market Enhancement ACT ("DMEA"):

> Those rates are not initially filed and reviewed by the agency but rather are the product of formulas established by the USDA which are, in part, dependent upon the receipt of pricing data from certain handlers.  In such a situation, there is nothing in the controlling statutes or concomitant regulations that would appear to require any formal process or particular expression for the agency's retroactively setting aside or rejecting milk prices that have been incorrectly set as a result of misreporting by certain handlers.  Further, the statutory goals as to an orderly mandate of marketing conditions and the protection of milk producers would both be served by imposing consequences on handlers for misreporting data that result in incorrect FMMO pricing and multimillion dollar losses for dairy farmers.

Carlin, 705 F.3d at 878.

With this as backdrop, the appellate court held:

> We conclude that USDA's actions here constitute a sufficient rejection such that the filed rate doctrine is not a bar [to Plaintiffs' claims].  Further, the statutory mandate of the AMAA and DMEA, as well as the policies of the filed rate doctrine more generally, are further by our conclusion that the filed rate doctrine does not apply bar plaintiffs' claims here.

Id.

Keeping in mind that the complaint before the Ninth Circuit at the time of its decision

included claims alleging damages spanning the entire time of the alleged misreporting, this court

finds that Defendants' contention that any claim for damages is restricted by the filed rate

doctrine has been specifically rejected by the Ninth Circuit and that rejection is law of the case.


THEREFORE, for the reasons discussed above, it is hereby ORDERED that:

1.    DairyAmerica's motion to dismiss Plaintiffs' RICO claims is GRANTED.  Claims four

and six are hereby DISMISSED in their entirety with prejudice.

2.      California Dairies' motion to dismiss Plaintiffs' third claim for relief for substantive violation of RICO is GRANTED.  Plaintiffs' third claim for relief is hereby DISMISSED with prejudice.

3.      California Dairies' motion to dismiss as to Plaintiffs' first, second and fifth claims for relief are hereby DENIED.

4.      Defendants' motion to limit Plaintiffs' claims for monetary damages to only those marketing orders that were recalculated by USDA is DENIED.

IT IS SO ORDERED.

Dated:   April 29, 2016                      _____

                                                          SENIOR  DISTRICT  JUDGE