1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9           **EASTERN DISTRICT OF CALIFORNIA**

10

11   **GERALD CARLIN, JOHN RAHM,**              **1:09-cv-0430  AWI GSA**
     **PAUL ROZWADOWSKI AND BRIAN**
12   **WOLFE, individually and on behalf of**
     **themselves and all others similarly**    **CLASS ACTION**
13   **situated,**

14            **Plaintiffs,**

15       **v.**                                  **ORDER ON MOTION OF DAIRY AMERICA**
                                                 **AND CALIFORNIA DAIRIES FOR**
16   **DAIRY AMERICA, INC. and**                 **RECONSIDERATION OF COURT'S ORDER**
     **CAIFORNIA DAIRIES, INC.,**                **OF MAY 2, 2016**
17
              **Defendants.**                    **Doc. #'s 306 and 308**
18

19

20

21           Currently before the court are motions by both Defendant parties, DairyAmerica, Inc.

22   ("DairyAmerica") and California Dairies, Inc. ("California Dairies") for reconsideration of the

23   court's order of May 2, 2016, granting in part and denying in part motions by both parties to

24   dismiss the Third Amended Complaint ("TAC") of plaintiffs Gerald Carlin, et al. ("Plaintiffs").

25   DairyAmerica's motion for reconsideration is located at Docket Number 306 and California

26   Dairies' motion is located at Docket number 308.  The court will consider the requests in

27   numerical order.

28   //

1

**LEGAL STANDARD**

Motions to reconsider are committed to the discretion of the trial court.   Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983) (en banc); Combs v. Nick Garin Trucking, 825 F.2d 437, 441 (D.C.Cir. 1987).   To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.   See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D.Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987).  When filing a motion for reconsideration, Local Rule 78-230(k) requires a party to show the "new or different facts or circumstances claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."

**DISCUSSION**

**I. DairyAmerica's Request for Reconsideration**

The court's order of May 2, 2016, (hereinafter, the "May 2 Order") Doc. # 303, granted DairyAmerica's motion to dismiss Plaintiffs' RICO claims on the ground that RICO violation cannot be alleged against the enterprise through which the unlawful scheme is realized; the violation can only be alleged against the individuals or entities who were employed by or associated with the enterprise.  See May 2 Order at pages 4-6.  The court noted in the May 2 Order that DairyAmerica had asserted other grounds for dismissal, including failure to allege DairyAmerica profited from the alleged fraudulent conduct and that the allegation of fraud failed to meet the enhanced pleading standard set forth in F.R.C.P. 9(b).  Because the court found that DairyAmerica's contention that it could not be charged with a RICO violation because it was the enterprise was dispositive, the court declined to address DairyAmerica's remaining grounds.  Id.

In its motion for reconsideration, DairyAmerica clarifies that, although their contentions with regard to the adequacy of Plaintiffs' fraud claims were set forth in subsections of their motion to dismiss that were labeled as pertaining to Defendants' motion for dismissal of the RICO claims (claims numbered 4 and 6), DairyAmerica had intended that the same arguments should constitute a challenge to Plaintiffs' claim for intentional misrepresentation, Claim Number 2.  In particular, DairyAmerica points out that it asserted two theories in support of the dismissal

1    of the fraud component of Plaintiffs' RICO claims that apply equally to Plaintiffs' claim against

2    DairyAmerica for intentional misrepresentation.  First, DairyAmerica asserts the claim of

3    intentional misrepresentation is inadequately pled because DairyAmerica "could not realize

4    financial gain from the fraud alleged."  Doc. # 306 at 3:14.  Second, DairyAmerica asserts

5    Plaintiffs' claim for intentional misrepresentation is inadequately pled because it does not meet

6    the pleading standard of F.R.C.P. 9(b).  The court will consider each contention in turn.

7        ***A. Plaintiffs Alleged Facts Sufficient to Show Intent to Defraud Against DairyAmerica***

8            DairyAmerica references pages 13-14 of its motion to dismiss (Doc. # 268), which

9    advances its argument that demonstration of intent to defraud requires a showing that the

10   perpetrator stood to gain financially from the fraud.  See Doc. # 268 at 20:7-10 (citing Gypsum

11   Co. v. Lloyds Int'l. Corp., 753 F. Supp. 505, 514 (S.D.N.Y. 1990)).  As Plaintiffs point out, the

12   court has previously addressed this argument in the context of the Defendants' collective

13   challenge to Plaintiffs' motion to file what became their TAC.  In its order of January 20, 2016,

14   granting Plaintiffs' "Renewed Motion for Leave to File a Second Amended Complaint,"

15   (hereinafter, the "January 20 Order") the court noted that an intent to defraud requires the

16   showing of an "intent to deceive or cheat for the purpose of *either* causing financial loss to

17   another *or* bringing about financial gain to oneself."  Doc. # 240 at 11:16-18 (quoting United

18   States v. Cloud, 872 F.2d 846, 852, n.6 (9th Cir. 1989)).     While the court agrees that an intent

19   to defraud must reflect an intent to realize financial advantage; there is no requirement that the

20   financial advantage intended be in the form of a profit.  DairyAmerica's contention that Plaintiffs

21   could not show that DairyAmerica could realize a "financial gain" misconstrues the meaning of

22   the term.  Logically, the outcome of a monetary transaction, fraudulent or otherwise, spans a

23   spectrum from "loss" to "break even" to "profit."  Properly understood, "financial gain" does not

24   necessarily mean "profit;" it means any relative improvement along the spectrum from loss to

25   profit.  Thus, it is sufficient for purposes of demonstrating an intent to defraud that evidence be

26   adduced to show that DairyAmerica acted with an intent to shift the risk of rising spot prices for

27   raw milk from the handlers to the producers by unlawfully including forward contract prices in

28   their weekly reports.  By alleging DairyAmerica acted with this intent, they allege that

3

1    DairyAmerica gained financially by avoiding greater loss and Plaintiffs correspondingly suffered

2    reductions in profit.  The court previously held this was sufficient for purposes of alleging

3    fraudulent intent and continues to do so now.  See Doc. # 240 at 11:16-13:7.

4           To the extent DairyAmerica argues that had no intention to defraud because it had no

5    financial interest in the profits or losses from the sale of Nonfat Dry Milk ("NFDM") because it

6    merely passed through profit or loss to its constituent members, the court finds this argument

7    unpersuasive for two reasons.  First, DairyAmerica is constituted for the specific purpose of

8    marketing NFDM and, as such, shares the profit motive with its constituent handler cooperatives

9    whether or not it actually retains a portion of the profit.  Second, DairyAmerica's existence, to the

10   extent it has separate employees and a separate payroll, is predicated on its ability to make a

11   profit greater than the constitutent handler cooperatives could realize operating on their own.

12   Thus, the court rejects DairyAmerica's contention it did not or could not financially gain by

13   shifting the risk of loss onto the milk producers by unlawfully reporting forward sales data on

14   weekly reports.

15          **B.  Pleading Standard of Rule 9(b) Met**

16          As the court noted in prior orders, "'the elements for an intentional-misrepresentation, or

17   actual-fraud, claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e.,

18   to induce reliance; (4) justifiable reliance; and (5) resulting damage.' UMG Recording, Inc. v.

19   Bertelsmann AG, 479 F.3d 1078, 1096 (9th Cir.2007)." Doc. # 190 at 4:19-22. To satisfy Rule

20   9(b), a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct.

21   Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997).

22          DairyAmerica refers to the portion of their motion to dismiss set forth from pages 21

23   through 30 of Document Number 268.  Strictly speaking, DairyAmerica's arguments do not go to

24   the specificity of Plaintiffs' pleading; they challenge the sufficiency of the facts alleged to show

25   fraudulent intent.  Dairy America's general contention in this section of their motion to dismiss is

26   that Plaintiffs' TAC alleges only "neutral facts."  The case DairyAmerica relies primarily upon is

27   Eclectic Properties E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 995-97 (9th Cir. 2014).

28   Although the title of the portion of the opinion DairyAmerica cites is labeled as pertaining to both

Rule 8 and Rule 9(b), the text of the appellate court's analysis dealt only with the sufficiency of the allegations under Rule 8. See id. at 995-997 (analyzing pleading standard under Rule 8 post Twombly and Iqbal.) Thus, the court deems DairyAmerica's request for reconsideration to be based on their challenge to the sufficiency of factual allegations under F.R.C.P. 8.

DairyAmerica's primary argument relies on the "possible/probable" distinction that was emphasized in the appellate court's decision in Eclectic Properties. In that case the Ninth Circuit held:

> Although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable," [citation] plaintiffs must include sufficient "factual enhancement" to cross "the line between possibility and plausibility." [. . . .] Establishing the plausibility of a complaint's allegations is a two-step process that is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." [Ashcroft v. Iqbal, 556 U.S. 662,] 679 (2009). First, a court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Then, a court should "assume the[ ] veracity" of "well pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678, (citation omitted). [. . . .] We [have] applied these principles to hold: "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.2011).

Eclectic Properties, 751 F.3d at 995-97.

DairyAmerica contends that they have offered, and this court has recognized, a non-fraudulent purpose to explain their conduct; that is, DairyAmerica included prices for forward contract sales in order to buffer both producers and handlers from spot price fluctuations and to reduce risk to all parties. The court recognized this explanation for DairyAmerica's conduct prior to Plaintiffs' submission of the "White Declaration" in conjunction with the filing of the proposed revised Second Amended Complaint (later, the TAC). Although the court did not expressly use the "possible/plausible" framework of Eclectic Properties the court did hold that the White Declaration served to push Plaintiffs' allegation of fraudulent intent from speculative to plausible by alleging, based on witness testimony, that DairyAmerica's directors had actual knowledge of

the improper reporting of forward sales contract prices and condoned the continuation of such improper reporting in order to avoid financial loss on their forward export sales contracts for NFDM.  The court continues to be of the opinion that the White Declaration, together with other more specific factual allegations did serve to push Plaintiffs' fraud-based claims across the line that divides possible from plausible.

DairyAmerica's contention regarding the failure of Plaintiffs' to meet Rule 9(b) standards asserts an additional three grounds in support of their contention that the court erred in declining to grant summary judgment as to Plaintiffs' intentional misrepresentation.  In order these are: (1) DairyAmerica's actions were neutral because it had no present knowledge that the market for raw milk would go up ("DairyAmerica required a crystal ball to benefit its members"); (2) the reporting of sales prices for NFDM was voluntary and no statute was violated by the failure to exclude prices from forward sales contracts; and (3) the White Declaration fails to state facts sufficient to support the allegation of fraud against DairyAmerica.  See Doc. # 268 at 23:14-30:14.  These arguments have been covered, either directly or tangentially, in the court's "January 20 Order").

In its January 20 Order, the court observed that the White Declaration, and other alleged facts in the proposed amended complaint, clarified the policy purpose of the reporting regulations to show that the purpose was to reflect prices for milk products that tracked spot market prices. The court also concluded that enhancements to Plaintiffs' complaint clarified their allegation that "Defendants were fully aware of the fact that the inclusion of price data from forward sales contract[s] would *always* or nearly always result in reported wholesale prices that were lower for each weekly report period than would have been the case if the forward sales price data were omitted as directed by NASS."  Doc. # 240 at 12:10-14.  Thus, the court came to the conclusion that the proposed amendments to Plaintiffs' complaint succeeded in stating a plausible claim that DairyAmerica's actions were not neutral.

With regard to the voluntariness of the reporting, Defendants have raised this issue before but have never explained how it is material.  The essence of Plaintiffs' claim of intentional misrepresentation is that Defendants, including DairyAmerica, made statements that were known

to be false at the time they were made and that Plaintiffs relied on those statements to their

detriment.  In its January 20 Order the court reviewed the allegations set forth in the proposed

amended complaint and found that they were sufficient, taken in the light most favorable to

Plaintiffs, to show an intention to defraud through (1) submitting weekly reports containing

pricing information from forward sales contracts, and (2) submitting yearly validation worksheets

that stated that such forward pricing information had been excluded.  The elements of intentional

misrepresentation do not require disobedience of a statute or regulation, only a knowingly false

statement.  See Doc.# 240 at 11:16-13:8 (analyzing the sufficiency of facts to support claim of

intentional misrepresentation in the proposed amended complaint as to both Defendants).  The

court again concludes that DairyAmerica's contention that they did not violate any statute is

irrelevant to the determination of a substantive RICO violation predicated on common law fraud.

DairyAmerica's final contention – that the White Declaration fails to supply facts to

support a claim of intentional misrepresentation – was discussed tangentially in the court's

January 20 Order, which concluded that Plaintiffs' claim for intentional misrepresentation was

not futile.  The conclusion the court reached in the January 20 Order applies here inasmuch as the

claim set forth in the TAC is substantially identical to the claim set forth in the proposed Revised

Second Amended Complaint and the analysis undertaken by the court applies equally to

DairyAmerica and California Dairies.

The court concludes that DairyAmerica has failed to show that the court's decision of

May 2, 2016, denying DairyAmerica's motion to dismiss was clearly erroneous.  The request for

reconsideration will therefore be denied.

**II.  California Dairies Motion for Reconsideration.**

California Dairies requests the court reconsider its decision denying the motion to dismiss

Plaintiffs' claim for conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) while granting

the motion to dismiss Plaintiffs' claim of direct RICO violation pursuant to subsection 1862(c).

California Dairies contends that the court misapplied the holding in Howard v. America Online,

Inc,, 208 F.3d 741 (9th Cir. 2000), which provided, *inter alia*, that "'*[i]f* a substantive violation is

properly pleaded, a conspiracy claim may survive a factfinder's conclusion that there is not

7

1   sufficient evidence to prove the [substantive] violation.'"  Doc # 308-1 at 2:17-19 (quoting

2   Howard, 208 F.3d at 751 (emphasis provided by California Dairies)).  California Dairies reasons

3   that if the court dismissed Plaintiffs' substantive RICO claim pursuant to F.R.C.P. 12(b)(6), the

4   claim was inadequately pled and therefore the claim for RICO conspiracy cannot stand.

5        The flaw in California Dairies' reasoning is that it imposes a requirement on the party

6   pleading RICO conspiracy that is not implied by the holding in Howard.  This court interprets

7   California Dairies' position as requiring that the party pleading RICO conspiracy under

8   subsection 1963(d) must be able to plead the elements of a substantive RICO violation under

9   subsection 1962(c) against the *same* defendant.  In Howard, the appellate court interpreted a

10  footnote in an earlier case, Religious Tech. Ctr. V. Wollersheim, 971 F.2d 364, 367 n.8, which

11  stated "[b]ecause we find that [the plaintiff] has failed to allege the requisite substantive elements

12  of RICO, the conspiracy cause of action cannot stand."  Id.  Neither Howard nor Wollersheim nor

13  any appellate case this court can find have held that a plaintiff must be able to plead the elements

14  of a substantive RICO violation against the *same* defendant that any conspiracy claim is plead

15  against.  As the court noted in its May 2 Order, the Supreme Court in Salinas v. United States,

16  522 U.S. 52 (1977) recognized the extension of RICO liability to "an actor who does not himself

17  commit or agree to commit the two or more predicate acts requisite to the underling offense.  Id.

18  at 63.

19       The court's review of Howard and Wollersheim leads it to conclude that these cases stand

20  for the rather ordinary proposition that a party pleading a conspiracy to commit RICO must be

21  able to plead facts to show that a substantive RICO violation *occurred* before a claim of

22  conspiracy to commit RICO can be alleged against *any* defendant.  As the court found in its May

23  2 Order, a defendant may be held responsible as a conspirator for the completed RICO violation if

24  he or she *either* agreed to an act "'that is a substantive RICO violation or [he or she] agreed to

25  commit, or participated in the violation of two predicate offenses.'"  Doc. # 303 at 1416-17

26  (quoting Howard, 208 F.3d at 751).  In its January 1 Order, the court determined that Plaintiffs

27  had pleaded facts in their Revised Second Amended Complaint to state a substantive RICO

28  violation.  See Doc. # 240 at 22:3-24:14.  In its May 2 Order the court determined that a

substantive RICO violation could not be pled against California Dairies because Plaintiffs could not plead that California Dairies had committed the allegedly fraudulent acts. The court concluded then and concludes now that California Dairies was entitled to dismissal of the substantive RICO claim against it but was and is not entitled to dismissal of Plaintiffs' claim for RICO conspiracy.

THEREFORE, for the reasons discussed, Defendants' motions for reconsideration are each DENIED.

IT IS SO ORDERED.

Dated:   June 22, 2016                          _____
                                                    SENIOR DISTRICT JUDGE