**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GERALD CARLIN, JOHN RAHM, PAUL ROZWADOWSKI and DIANA WOLFE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIRY AMERICA AND CALIFORNIA DAIRIES;<br><br>Defendants. | CASE NO. 1:09-cv-430 AWI-EPG<br><br><br><br>**ORDER RE: PLAINTIFFS' DISCOVERY MOTION**<br><br><br><br>(Docs. 295, 300, and 330) |

**I.    Introduction**

On April 21, 2016, Plaintiffs filed a Discovery Motion seeking to permit the use of a spreadsheet (DA000154), that Defendant Dairy America ("Dairy America" or "Defendant")

1

previously produced in discovery, but is seeking to "clawback" pursuant to a protective order.[1] (Doc. 295). The parties also requested that the Court resolve a discovery dispute involving the length of time of Doug White's deposition, a third party to this litigation. The parties filed a joint statement regarding discovery dispute on April 26, 2016, and supplemental briefing on July 22, 2016. (Docs. 300 and 330). The Court held hearings on May 20, 2016 and July 29, 2016. (Docs. 318, 319, 234, and 335). Upon a review of the pleadings and the arguments, and for the reasons given on the record during oral argument, Plaintiffs' Discovery Motion is GRANTED IN PART.

## II. Discussion

### A. The Spreadsheet

At issue in this dispute is a document, referred to as the "2005-2006" spreadsheet, which Dairy America previously produced in discovery. (Doc. 305). After the production, Dairy America attempted to withdraw the document subject to a clawback provision in the protective order. (Doc. 129, ¶ 11; Doc. 154, ¶ 3). It argues that the document is protected by the attorney-client privilege and work product doctrine. It further contends that there has been no waiver of these protections because the document was inadvertently disclosed during discovery, and they attempted to claw the spreadsheet back as soon as the mistaken disclosure became apparent. (Doc. 300-2, pgs.7- 24).

Plaintiffs contend that the document is critical to this case because it includes pricing data that was requested by the USDA's National Agricultural Statistics Service ("NASS"), but never provided to NASS. Plaintiffs claim that the underlying data has not been otherwise produced in discovery and is no longer available outside of this spreadsheet. Plaintiffs argue that the spreadsheet is not covered under the above protections, and even if it were, Dairy America waived these protections when it initially produced the document, and when Defendant's witness, Jean McAbee, testified to the contents of the spreadsheet during a deposition. (Doc. 300-1, pgs. 7-16). Moreover, Plaintiffs contend that the attorney-client privilege does not apply because the spreadsheet only contains factual data—not communications requesting or providing legal advice.

---

[1] The Court granted permission to file the instant discovery motions after the parties participated in several informal discovery conferences involving several issues. (Docs. 241, 242, and 299).

Finally, even if the spreadsheet were attorney work product, Plaintiffs are entitled to use it because they have a substantial need for the information, and cannot obtain an equivalent by other means. (*Id*. at 27-31; Doc. 330, pgs. 2-15).

Plaintiffs rely on Fed. R. Civ. P. 26(b)(3)(A) which provides as follows:

A. Documents and Other Tangible Things:
 Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discoverable if:

(i)    they are otherwise discoverable under Rule 26(b)(1); and
(ii)   the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

In an effort to resolve this conflict, at the hearing on May 20, 2016, the Court ordered that that the parties meet and confer, and that Dairy America attempt to produce a reconstituted spreadsheet using the underlying factual data it had used at the time the spreadsheet was created, but based on legal assumptions identified by Plaintiffs wherever relevant. In this way, the Court attempted to extricate any legal assumptions that would constitute attorney-work product while providing the underlying factual data, which appears to be critical and discoverable. Dairy America committed to do so. However, at a second hearing on July 29, 2016, Dairy America's attempt at recreation of such a spread sheet was largely blank and did not contain the majority of the underlying factual data that appears in the disputed spreadsheet. Defendant provided many reasons why it was unable to produce the underlying data from the relevant time period.

After consideration of the record and oral argument by counsel at two hearings, the Court finds that the information contained in the spread sheet is protected by the attorney work product doctrine because the document was created after Dairy America had been notified of the possibility of litigation, counsel was consulted to aid in potential litigation, and the creation of the spreadsheet was based on counsel's request for certain data to evaluate potential liability, as well as to assess damages. As explained more fully on the record at the hearing on July 29, 2016, the Court also finds that Dairy America did not waive this protection because the disclosure was

inadvertent.² *See*, Fed. R. Evid. 502(b)(1). Mr. English, Dairy America's counsel indicates the spreadsheet was mistakenly attached to other unprivileged documents. Declaration of Charles English, dated April 13, 2016, ¶¶ 2-11. (Doc. 300-2, pgs. 26-27). Mr. English quickly attempted to clawback the document once the error became apparent. Fed. R. Evid. 502(b)(3); Fed. R. Civ. P. 26(b)(5)(B). Similarly, a review of the deposition transcript of Jean McAbee, reveals that her testimony was given due to a misunderstanding about how the spreadsheet was presented during the deposition, because the spreadsheet was attached to a letter to NASS. (Doc. 300-2, pgs. 44-47).

Notwithstanding the above, the Court finds that the spreadsheet contains data that are highly relevant to the Plaintiffs' assessment of liability and damages, and are not available through other means. Even though the data in this spreadsheet do not appear to have been reported to NASS, they are highly relevant to computation of damages during that time period. Moreover, Dairy America's inability to re-create the underlying factual data contained in the disputed spreadsheet establishes that the data are not otherwise available, or at the very least that an undue hardship exists in obtaining substantially equivalent information. *See*, Fed. R. Civ. P. 36(b)(3)(A)(ii) (A party may not discover documents prepared in anticipation of trial, unless "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.")  As discussed extensively on the record, it thus appears that the disputed spreadsheet is the only source of this particular pricing data for the covered time period.

Accordingly, Defendant's request to clawback the document based on attorney work product is denied. Plaintiffs may use the spreadsheet in the course of this litigation, however, the exact scope of its use will be determined by Judge Ishii at the time of trial.

Finally, the Court is not persuaded by Defendant's argument that the spreadsheet falls under the attorney-client privilege.

As a preliminary matter, the parties largely rely on state law to evaluate the attorney-client

---

² Federal law applies to waiver of a privilege. *Bittaker v. Woodford*, 331 F. 3d 715, 726 (9th Cir. 2003) ("When the court is a federal court, the scope of the waiver is a matter of federal law.")

privilege.[3] (Doc. 300-1 pgs. 29-31; Doc. 300-2, pgs. 18-20). However, under Federal Rules of Evidence 501, federal common law generally governs claims of privilege. "But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. In this case, both state and federal claims are alleged.[4] The Ninth Circuit has held that when the same evidence relates to both federal and state law claims, federal privilege law governs. *Wilcox v. Arpaio*, 753 F. 3d 872, 876 (9th Cir. 2014). See also, *Agster v. Maricopa County*, 422 F. 3d 836. 839-840 (9th Cir. 2005) ("Where there are pendant state law claims present, the federal law of privilege applies.").

In the Ninth Circuit, the attorney-client privilege protects confidential information between a client and an attorney from disclosure, "(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Graf*, 610 F. 3d 1148, 1156 (9th Cir. 2010). It is worth noting that California attorney-client privilege law is substantially similar. Cal. Evid. Code §§ 950 and 952.

Here, the spreadsheet consists of factual data maintained by Dairy America, albeit data that was gathered based on an attorney's request. The document does not contain communications seeking or giving legal advice. The spreadsheet is merely a compilation of data related to sales and pricing that was transmitted to an attorney for a work-product purpose. It does not contain any request from a client, nor any advice--or indeed any response at all--from an attorney. Accordingly, the document is not protected under the attorney-client privilege.

### B. Doug White's Deposition

After considering the parties' arguments and briefing (Doc. 330), and as discussed extensively on the record during oral argument, Doug White shall be deposed for two, seven-hour days. Plaintiffs will depose Mr. White on the first day. Defendants shall depose Mr. White on

---

[3] Plaintiffs cite to federal and state law while Defendant cites only to state law.
[4] The operative causes of action in this case are state law claims of negligent and intentional misrepresentation against Dairy America and California Dairies, and a federal claim of conspiracy to commit RICO pursuant to 18 U.S.C.§1962 against California Dairies. (Docs. 245, 303, 317).

the second day.  Defendants may not use any of Plaintiffs' unused deposition time to complete their depositions.

### III. Conclusion

For the reasons more fully set forth on the record on May 20 and July 29, 2016, and as outlined above, Plaintiff's Motion for Discovery (Doc. 295) is GRANTED IN PART.

IT IS SO ORDERED.

Dated:   **August 15, 2016**                          /s/ Erica P. Grosjean
                                                      UNITED STATES MAGISTRATE JUDGE