# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# FRESNO DIVISION

| | |
|---|---|
| GERALD CARLIN, JOHN RAHM, PAUL ROZWADOWSKI and DIANA WOLFE, individually and on behalf of themselves and all others similarly situated,<br>　　　　　　　　　　　Plaintiffs,<br>v.<br>DAIRYAMERICA, INC., and CALIFORNIA DAIRIES, INC.<br>　　　　　　　　　　　Defendants | Case No. 1:09-cv-00430-AWI-EPG<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL CALIFORNIA DAIRIES, INC. TO RESPOND TO WRITTEN DISCOVERY**<br><br>**(Doc. 443-6)** |

Plaintiffs, Gerald Carlin, John Rahm, Paul Rozwadowski and Diana Wolfe, individually and on behalf of themselves and all others similarly situations ("Plaintiffs") have filed a motion to compel Defendant California Dairies, Inc. ("CDI"), to respond to written discovery. (ECF No. 443-6) CDI has filed a response. (ECF No. 442) The Court held oral argument on July 26, 2017, (ECF No. 447, 451), and took the matter under advisement. The Court rules on the motion as follows.

## A. BACKGROUND

On December 5, 2016, the Court issued an order regarding discovery issues as follows:
Document and written discovery regarding claims and parties already upheld by the Court should proceed on those claims and parties, ***without limitation as to class or merits discovery***. To the extent that a party challenges discovery as being unduly burdensome or not relevant due to significant expected challenges to the scope of class discovery, this Court will hear any such objections on a case by case basis, consistent with its standard discovery procedures. . . . the Court will set a ***deadline of June 30, 2017 to complete production of all documents and respond to all written discovery regarding claims and parties upheld in the Third Amended Complaint***. The parties are directed to bring to the Court's

attention any disputes regarding discovery in order to obtain any necessary orders on motions to compel prior to this deadline.

(ECF No. 371).

The District Judge previously upheld Plaintiffs' first, second and fifth claims for relief in its Third Amended Complaint against CDI. (ECF No. 303). Thus, the following claims are at issue and relevant to determining the scope of discovery at this time:

- Negligent Misrepresentation: "Defendants and Co-Conspirators negligently and in violation of the NASS instructions included volume and price information from non-DEIP, forward pricing sales in DairyAmerica's weekly submissions to NASS."

- Intentional Misrepresentation: "When Defendants and Co-Conspirators conspired to instruct and instructed DairyAmerica to include volume and price information from non-DEIP forward pricing sales in its weekly submissions to NASS, they knew that inclusion of that volume and price information in DairyAmerica's weekly submissions was contrary to the explicit reporting instructions from NASS."

- Conspiracy to Violate RICO: "California Dairies conspired with each Co-Conspirator to direct and conduct the Enterprise to knowingly and intentionally transmit to NASS, by mail or wire, fraudulent price information—*i.e.*, by including forward pricing contracts transacted outside of DEIP for the sale of NFDM, known by California Dairies and Co-Conspirators to be ineligible for reporting—for the common purpose of artificially depressing raw milk prices regulated by the FMMOs. These actions constitute mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, and serve as predicate acts to a pattern of racketeering activity pursuant to 18 U.S.C. §§ 1961(1) and (5). [] At the time this price information was transmitted to NASS, California Dairies and Co-Conspirators knew that forward pricing contracts transacted outside of DEIP for the sale of NFDM were ineligible for reporting, and that doing so would artificially depress the prices for raw milk regulated by the FMMOs.

(ECF No. 245).

At oral argument, counsel for CDI made the following broad objections to the scope of discovery:

> One is a series of interrogatories and requests for production of documents that asks about products not at issue in this case, reporting not at issue in this case, and an agency not an issue in this case. There's some case law thrown back and forth about what exactly is the broad reach of discovery. We're not suggesting it is the verbatim words of their complaint, but it's got to be things that are somewhat relevant to things that are somewhat relevant to the complaint. We've talked all day today. No one has talked about anything besides nonfat dry milk. No one has talked about anything besides alleged misreporting to the USDA via NASS. That's what the case is about. . . .
>
> The second is they've asked for a series of financial documents about how our

1

profits are spent internally and how they're made, and Plaintiffs can talk all they want about how the reason they need that is because they're talking about the reporting of -- the misreporting of nonfat dry milk prices to impact FMMO. That's Federal Order Milk prices. We're not on a federal order. California Dairies is a California milk cooperative that operates on the California State Order for now. So we're not paying FMMO prices. So we're not gaining from FMMO prices. We're paid off through California prices, the CWOT prices. So the idea that digging into all of our – which plants are built or -- or how much we spend on labor and employment or pallets or health insurance, those things could not be less relevant to whether or not Plaintiffs' class members were damaged by the misreporting of forward pricing contracts for nonfat dry milk to NASS. There's just no connection to how those things interlay, and those are the two main issues that we put forward.

(ECF No. 451, pp. 121-123)

### B. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 26(b)(1) "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

### C. ANALYSIS OF REQUESTS FOR PRODUCTION

Request No. 1 in Plaintiffs' First Set of Requests for Productions seeks: "All documents that name, contain information about or discuss DairyAmerica." In response to that request, CDI wrote that it is "limiting its search to documents that are probative of the parties' claims or defenses." Plaintiffs argue in their motion that "DairyAmerica does not have multiple operations and divisions; it was created by, and is an agent of, CDI and exists *solely* to sell powder products and report those sales to government agencies." At oral argument, counsel for Plaintiffs further explained:

> All Dairy America did was to sell and report nonfat dry milk and skim milk powder that was manufactured by California Dairies and the other cooperative members. That's it. There's no other purpose. It was appointed by the predecessors to California Dairies. It is an agent of California Dairies. So because there's no other purpose, all communications that reference Dairy America are

2

> presumptively relevant to our claim, especially because we have conspiracy allegations, and, of course, the communications between California Dairies and Dairy America or about Dairy America internally are naturally responsive.

(ECF No. 451, at p. 124).

Request No. 7 requests: "All documents concerning CDI's relation to and involvement in DairyAmerica, including, but not limited to, any minutes or summaries of meetings referring to such relation or which mention any of the directors or owners of DairyAmerica." Request No. 9 requests: "All communications between CDI and employees of DairyAmerica." In response to both requests, CDI again only agreed to produce documents that are probative of the parties' claims or defenses.

In response, CDI claims that the requests are overbroad, but fail to provide any direction for further limiting the requests. Nor does CDI make a specific showing of burden.

Considering the relevance discussion above, the Court GRANTS Plaintiffs' motion to compel CDI to fully respond to Request for Production Number 1, 7, and 9.

Request No. 8 requests: "All documents and communications regarding, relating, or referring to employees of CDI serving as directors, officers or employees of DairyAmerica." In its response, CDI states it will limit its search to "documents *sufficient* to show which CDI employees were also directors, officers or employees of DairyAmerica" between January 1, 2002 and April 30, 2007. (emphasis added). Plaintiffs argue it is improper for CDI to limit its production to what is "sufficient" to identify employees that served as directors of DairyAmerica. *All* documents that refer or relate to CDI employees serving as DairyAmerica directors are plainly relevant to Plaintiffs' allegations, which include specific allegations that CDI directed DairyAmerica, through its board of directors, to misreport to USDA.

The Court grants Plaintiff's motion to compel regarding Request for Production Number 8.

Request No. 13 requests, "All documents that contain information about or otherwise discuss DairyAmerica's reporting of dairy product prices to NASS or CDFA." In response, CDI has limited its search to "documents that discuss the reporting of Nonfat Dry Milk by DairyAmerica to the National Agricultural Statistics Service." Request No 19 requests, "All

3

communications between CDI and USDA or CDFA officials regarding DairyAmerica's reporting of prices to NASS or CDFA." In response that request, CDI only agreed to produce communications *with USDA* regarding DairyAmerica's reporting to NASS or CDFA. Again, this is an improper restriction. As to both of these requests, CDI objects that "products other than NFDM and reporting to agencies other than NASS on NFDM are not 'at stake in the action,' the 'importance of the issues' is non-existent."

The Court agrees with CDI that the requests go beyond the scope of the operative complaint. The Court notes that further discovery may be appropriate if and when Plaintiffs' latest amended complaint proceeds. At this time, the Court will order that CDI produce documents responsive to requests for production numbers 13 and 19 limited to DairyAmerica's reporting of dairy product prices to NASS.

Request No. 3 in Plaintiffs' First Set of Requests for Productions requests, "All documents defining or describing the business relationship between CDI and other cooperative members of DairyAmerica." In response, CDI refused to produce any documents. During meet and confer, Plaintiffs narrowed the request to "All documents defining or describing the business relationship between CDI and other cooperative members regarding DairyAmerica, including, but not limited to, sales conducted through DairyAmerica, reporting by DairyAmerica, and any other activities performed by DairyAmerica." Plaintiffs claim this narrowed request is relevant to Plaintiffs' allegation that CDI conspired with other cooperative members of DairyAmerica to direct DairyAmerica to misreport forward pricing sales to USDA.

The Court will order CDI to respond to Request for Production No. 3 limited to ""All documents defining or describing the business relationship between CDI and other cooperative members regarding DairyAmerica, including, but not limited to, sales conducted through DairyAmerica, reporting by DairyAmerica, and any other activities performed by DairyAmerica."

Request No. 10 requests, "All communications between CDI and directors of DairyAmerica, insofar as those documents relate to DairyAmerica or the reporting of dairy product prices to NASS or CWAP." Similarly, Request No. 11 requests, "All communications

between CDI and employees or directors of other cooperatives that were members of DairyAmerica, insofar as those documents relate to DairyAmerica or the reporting of dairy product prices to NASS or CWAP." In response to both, CDI wrote that it is limiting its search to communications between CDI and other cooperative members of DairyAmerica "that discuss the reporting of Nonfat Dry Milk by DairyAmerica to the National Agricultural Statistics Service."

The Court orders CDI to respond to Requests for Production 10 and 11 insofar as the requested communications relate to DairyAmerica or the reporting of dairy product prices to NASS.

Request No. 17 requests, "All documents that consist of, or contain instructions for, reporting dairy product prices to USDA or CDFA or to any of the divisions within those agencies." During meet-and-confer correspondence, Plaintiffs conceded that the request was overbroad and proposed instead that CDI only provide: "All documents that consist of, or contain instructions for, reporting dairy product prices to USDA." In response to Plaintiffs' revised request, CDI only agreed to produce documents that reference USDA's instructions for reporting one product, NFDM, and refused to produce documents referencing USDA's instructions for reporting any other dairy product. Plaintiffs argue that this is an improper restriction because USDA's instructions for reporting *all other* dairy products require the exclusion of forward pricing sales. During the Class Period, USDA instructed processing cooperatives to report weekly sales data about four dairy products: NFDM, butter, cheddar cheese and whey. The instructions for reporting each of those products required the exclusion of forward pricing sales.

The Court will order CDI to produce documents responsive to Requests No. 17 narrowed to "All documents that consist of, or contain instructions for, reporting dairy product prices to USDA." The Court will not limit this request to NFDM for the reasons argued by Plaintiffs.

Similarly, the original version of Request No. 18 requests, "All documents that contain information about or otherwise discuss CDI's reporting of dairy product prices to NASS or CDFA." Plaintiffs proposed a narrower version that requires CDI to only produce, "All

documents that contain information about or otherwise discuss CDI's reporting of dairy product prices to NASS."

The Court will order CDI to produce documents responsive to Request for Production number 18 covered by Plaintiffs' narrowed request of "All documents that contain information about or otherwise discuss CDI's reporting of dairy product prices to NASS."

Plaintiffs have served multiple requests for production on CDI that seek documents related to the revenue, profits and expenses of its processing plants. Specifically, Plaintiffs served the following requests:

- No. 27: "Documents sufficient to identify the revenue and profits earned by processing plants owned by CDI."

- No. 28: "Documents sufficient to identify the expenses and costs incurred by processing plants owned by CDI."

- No. 32: "Each of CDI's interim and annual financial statements, including, but not limited to, balance sheets, income statements, statements of earned surplus, and any consolidated statements whether audited or unaudited."

In response to all three requests, CDI has categorically refused to produce any documents on the basis of relevance. Plaintiffs argue that the expenses and profitability of CDI and its processing plants are directly relevant to Plaintiffs' allegations. Plaintiffs allege that CDI conspired to misreport forward pricing sales for the purpose of depressing raw milk prices paid to farmers and maximizing profits from its processing plants. The TAC alleges that CDI implemented the conspiracy so that it could sell dairy products at prices above the cost of manufacturing; shield its processing plants from rising raw milk costs during the pendency of forward pricing contracts; and prevent market prices from rising to a level that decreased customer demand.

The Court heard argument on this issue and appreciates that the allegations currently pending involve NFDM and not all products. However, it does not appear that expenses can be so clearly divided. Additionally, the Court generally understands that the issue of CDI's economic motive to deceive farmers in light of the fact that it is in some way comprised of

farmers is an issue in this lawsuit. In other words, the profit of CDI as a whole appears to be relevant to an intent to defraud the government in its fixing of prices ultimately paid to farmer.

Accordingly, the Court will grant Plaintiff's requests for production 27, 28, and 32 in full. Plaintiffs served four document requests related to CDI's financial payments to farmer members:

- No. 23: "Documents sufficient to identify, for each month of the Relevant Time Period, the monthly income that each of CDI's member farmers received from the sale of their raw milk."

- No. 24: "Documents sufficient to identify how CDI's annual net profits were distributed to its members, including, but not limited to, any distributions in the form of allocated equity and patronage refunds, for each year of the Relevant Time Period."

- No. 25: "Documents sufficient to explain CDI's equity redemption program available to its current or former members."

- No. 26: "Documents sufficient to identify any compensation that CDI provided to its members, other than monthly compensation from the sale of raw milk."

In response to all three requests, CDI has categorically refused to produce any documents. Plaintiffs argue the nature of CDI's payments to farmers are relevant to Plaintiffs' claims. Acquiring raw milk is the primary cost input for the manufacture of multiple dairy products, and Plaintiffs allege that CDI sought to reduce such costs of acquisition by lowering calculated raw milk prices. The farmer members of CDI were paid monthly raw milk prices based on calculations made by CDFA, which in turn were significantly influenced by the raw milk prices set by USDA. Thus, by conspiring to misreport forward pricing sales to USDA, CDI could restrain and lower monthly raw milk prices paid to farmer members.

As described above, the Court understands generally that a disputed issue in this case is whether CDI had any monetary incentive to decrease the price paid to farmers in light of the fact that its members were farmers. Its payments to farmers are relevant to understanding such financial incentives, if any. Accordingly, the Court will grant Plaintiffs' motion as to Requests 23, 24, 25, 26.

Plaintiffs also move to compel two requests regarding profits:

- No. 29: "Documents sufficient to identify how profits from processing plants owned by CDI have been distributed."

- No. 30: "Documents sufficient to identify how you distribute proceeds from the sale of raw milk and dairy products, including, but not limited to, how you calculate and deduct expenses and distribute proceeds to members and others."

Again, CDI has categorically refused to produce any documents in response to these requests on the basis of relevance.

For the same reasons described above, the Court will grant Plaintiffs' motion to compel as to Requests 29, 30.

Request No. 20 requests, "All documents provided to, or received from, any regulatory agency including, but not limited to, USDA, NASS, AMS, CDFA and/or their respective auditors in response to any allegation that DairyAmerica or CDI misreported NFDM prices and/or volume information." In response, CDI refused to produce any documents. Plaintiffs argue if, during the Class Period, CDI was put on notice by USDA or CDFA that it or DairyAmerica was somehow misreporting NFDM sales, and DairyAmerica nonetheless continued to misreport forward pricing sales, that would be a significant fact in support of Plaintiffs' claims.

At this time and based on current claims, the Court limits Request No. 20 to "All documents provided to, or received from, USDA or NASS and/or their respective auditors in response to any allegation that DairyAmerica or CDI misreported NFDM prices and/or volume information."

Request No. 12 requests, "All communications between Fonterra Cooperative Group Ltd. and CDI and/or DairyAmerica concerning: (a) DairyAmerica; (b) potential or actual sales by, or purchases from, DairyAmerica; (c) dairy product pricing; and/or (d) the reporting of dairy product prices to NASS or CWAP." In response, CDI limited its search to communications between CDI and Fonterra Cooperative Group Ltd. that discuss "the reporting of Nonfat Dry Milk by DairyAmerica to the National Agricultural Statistics Service" or "purchases, sales, and pricing of Nonfat Dry Milk."

The Court will order documents responsive to Request No. 12 limited to "All communications between Fonterra Cooperative Group Ltd. and CDI and/or DairyAmerica concerning: the reporting of Nonfat Dry Milk by DairyAmerica to the National Agricultural Statistics Service" or "purchases, sales, and pricing of Nonfat Dry Milk."

Request No. 4 requests, "All documents concerning CDI's actual or contemplated withdrawal from DairyAmerica any time after 2006." In response, CDI refused to produce any documents and explained, in meet-and-confer correspondence, that "the only evidence that could be even potentially relevant to Plaintiffs' allegations of fraudulent transfer would be evidence of actual withdrawal of membership." Plaintiffs argue that the TAC alleges that several former members of DairyAmerica terminated their membership to avoid paying a judgment in this case, thus fraudulently transferring funds. If CDI contemplated the same course of behavior in documents (including in communications with DairyAmerica or other cooperative members), such documents are relevant to understanding why other cooperatives exited DairyAmerica and why CDI may do so in the future.

The Court believes contemplated withdrawal from DairyAmerica in light of the above allegations is relevant. Accordingly, the Court will order production of documents responsive to Request No. 4.

**D. ANALYSIS OF INTERROGATORIES**

Interrogatory No. 8 states, "Prior to March 2007, which employees, officers or directors of CDI heard, knew, learned, suspected or had a conversation about the fact that (a) USDA prohibited the inclusion of forward pricing sales transacted outside of DEIP in weekly reports to NASS; and/or (b) DairyAmerica was including forward pricing sales transacted outside of DEIP in its weekly reports to NASS?" In response, CDI states that it "is unaware of any employees, officers, or directors of CDI, acting in their capacity as such, with information regarding DairyAmerica's protocol for reporting NFDM sales in its weekly reports to NASS."

The Court orders CDI to respond in full to Interrogatory Number 8.

Interrogatory No. 9 states, "What steps did CDI take to ensure that DairyAmerica did not improperly report forward pricing sales, or any other sales of NFDM, to state and federal

9

government agencies during (a) the period prior to April 2007 and (b) the period after April 2007? Please clarify as to whether the steps described in your answer were taken prior or after April 2007." In response, CDI wrote, "DairyAmerica's staff was responsible for reporting NFDM sales data to NASS, and CDI had no reason to believe that DairyAmerica was not reporting NFDM sales data in accordance with any applicable USDA requirements." This response suggests that CDI's answer is "Nothing," but does not state so explicitly.

The Court orders CDI to respond in full to Interrogatory Number 9.

Interrogatory No. 10 states, "During the period prior to April 2007, please identify any communications regarding instructions or rules for reporting NFDM to government agencies, including USDA and CDFA, between CDI and (a) DairyAmerica, (b) cooperative members of DairyAmerica, (c) USDA or (d) CDFA." In response, CDI states, "After a reasonable investigation, CDI states that, prior to April 2007, it is aware of no communications between itself and either DairyAmerica, the cooperative members of DairyAmerica, or USDA regarding the instructions or rules for reporting NFDM to NASS during the proposed class period."

Given the claims currently at issue, the Court will not compel a further response at this time to Interrogatory Number 10.

Interrogatory No. 12 states, "From the period 2009 through the present, identify any communications between CDI and DairyAmerica or any of its cooperative members regarding the possibility of a cooperative member terminating its membership in DairyAmerica, and describe the substance of those communications, including any reasons provided by the cooperative member for considering terminating its membership in DairyAmerica." In response, CDI states that "it is aware that the termination of membership by" five cooperatives "was discussed during DairyAmerica Board of Directors meetings. CDI refers to the DairyAmerica Board of Directors minutes for any minutes of such discussions."

The Court orders CDI to either supplement this response to fully respond to Interrogatory 12 or state that the Board of Directors meeting is the only responsive communication.

Interrogatory No. 14 states, "During the period 2002 through 2007, what processing plants were owned, in part or whole, by CDI? For each such plant, please answer the following questions:
    a. During what time period did CDI have an ownership interest in the plant?
    b. What percentage of the plant was owned by CDI?
    c. What were the identities of the co-owners, if any, of the plant?
    d. What products were produced by the plant?
    e. What was the annual volume of raw milk purchased by the plant for each year?
    f. What percentage of the raw milk purchased by the plant each year was purchased from members of CDI?
    g. For each year, what was the annual revenue earned from the sales of products produced by the plant?
    h. For each year, what were the annual costs and expenditures incurred by the plant, including the costs of acquiring raw milk?

In response, CDI wrote, "During the relevant time period of January 1, 2002 through April 30, 2007, CDI owned five plants that manufactured NFDM. Those five plants were located in Fresno, Tipton, Los Banos, Turlock, and Artesia, California. Further responding, CDI purchases the vast majority, if not all, raw milk from its dairy farmer members. From time to time, it may purchase milk from other entities to assist in balancing a surplus in the market."

While the Court appreciates that CDI's response is not fully responsive, in light of the Court's orders regarding the financial reporting, the Court does not view the additional details requested as discoverable in light of the marginal relevance and burden involved to order a further response to Interrogatory No. 14. To the extent that financial data are unavailable, Plaintiffs may renew their request for this "backup" information.

Interrogatory No. 15 states, "Prior to April 2007, for which dairy products did CDI report sales data in weekly surveys to USDA or CDFA? For each such dairy product (including nonfat dry milk, cheese, butter or dry whey), please answer the following questions:
    a. To which government agency was the sales data reported?
    b. During what time period did CDI report data from the sale of the product?
    c. What kind of data (e.g., price, volume) from the sale of the product did CDI report?
    d. Did CDI submit the sales data in weekly reports to USDA or CDFA?
    e. Did CDI comply with the instructions from USDA or CDFA when submitting the sales data to USDA or CDFA?
    f. Which employees of CDI were involved in reporting the sales data to USDA or CDFA?"

In response, CDI wrote, "Prior to March 2007, CDI did not report any sales of NFDM manufactured by CDI to NASS; rather, DairyAmerica reported all sales of NFDM manufactured by CDI during that time."

Given the current scope of issues, the Court will not require a further response at this time to Interrogatory No. 15.

Interrogatory No. 16 states, "During the period 2002 through April 2007, did CDI seek to increase the minimum monthly raw milk prices calculated by USDA or CDFA? If so, why?" In response, CDI wrote, "No. CDI's payments to its dairy farmer members for raw milk are governed by California law, not any Federal Milk Marketing Order and, therefore, it would have no reason to seek to impact milk prices calculated pursuant to any Federal Milk Marketing order."

Given the current scope of issues, the Court will not require a further response at this time to Interrogatory No. 16.

Interrogatory No. 17 states, "During the period 2002 through April 2007, when minimum monthly raw milk prices calculated by CDFA decreased, did CDI's members receive less money from the sale of their raw milk?"

Given the current scope of issues, the Court will not require a further response at this time to Interrogatory No. 17.

**E. CONCLUSION**

The Court grants Plaintiffs' Motion to Compel California Dairies, Inc. to Respond to Written Discovery as follows (ECF No. 443-6):

The Court GRANTS Plaintiffs' motion to compel CDI to fully respond to Request for Production Number 1, 4, 7, 8, 9, 23, 24, 25, 26, 27, 28, 29, 30 and 32.

The Court will order that CDI produce documents responsive to requests for production numbers 13 and 19 limited to DairyAmerica's reporting of dairy product prices to NASS.

The Court will order CDI to respond to Request for Production No. 3 limited to "All documents defining or describing the business relationship between CDI and other cooperative members regarding DairyAmerica, including, but not limited to, sales conducted through

DairyAmerica, reporting by DairyAmerica, and any other activities performed by DairyAmerica."

The Court orders CDI to respond to Requests for Production 10 and 11 insofar as they relate to DairyAmerica or the reporting of dairy product prices to NASS.

The Court will order documents responsive to Request No. 12 limited to "All communications between Fonterra Cooperative Group Ltd. and CDI and/or DairyAmerica concerning: the reporting of Nonfat Dry Milk by DairyAmerica to the National Agricultural Statistics Service" or "purchases, sales, and pricing of Nonfat Dry Milk."

The Court will order CDI to produce documents responsive to Requests No. 17 narrowed to "All documents that consist of, or contain instructions for, reporting dairy product prices to USDA."

The Court will order CDI to produce documents responsive to Request for Production number 18 covered by Plaintiffs' narrowed request of "All documents that contain information about or otherwise discuss CDI's reporting of dairy product prices to NASS."

At this time and based on current claims, the Court limits Request No. 20 to "All documents provided to, or received from, USDA or NASS and/or their respective auditors in response to any allegation that DairyAmerica or CDI misreported NFDM prices and/or volume information."

The Court orders CDI to respond in full to Interrogatory Number 8 and 9.

The Court orders CDI to either supplement this response to fully respond to Interrogatory 12 or state that the Board of Directors meeting is the only responsive communication.

The Court denies Plaintiffs' motion as to the other requests.

The parties shall meet and confer regarding the timing of production and submit a stipulation and proposed order regarding a deadline for completing production. Such stipulation shall be filed no later than 7 days from this order.

\\\

\\\

\\\

If the parties cannot agree on such a deadline, it shall state each party's position regarding deadline in lieu of a stipulation and proposed order.

IT IS SO ORDERED.

Dated: **August 22, 2017**  /s/ *Elvin P. Grosjean*
UNITED STATES MAGISTRATE JUDGE