# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

GERALD CARLIN, JOHN RAHM, PAUL ROZWADOWSKI and DIANA WOLFE, individually and on behalf of themselves and all others similarly situated,

                                    Plaintiffs,

v.

DAIRYAMERICA, INC., and CALIFORNIA DAIRIES, INC.

                                    Defendants

Case No. 1:09-cv-00430-AWI-EPG

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SANCTIONS**

**(Doc. 443-4)**

Plaintiffs, Gerald Carlin, John Rahm, Paul Rozwadowski and Diana Wolfe, individually and on behalf of themselves and all others similarly situations ("Plaintiffs") have filed a motion for sanctions, (ECF No. 443-4) against Defendant Dairy America Inc. ("Defendant" or "DairyAmerica") based on its failure to disclose the names of three witnesses and the existence of a certain database pursuant to an order requiring the identification of information "likely to contain discoverable information relevant to the subject matter of this litigation." (ECF No. 123). DairyAmerica filed an opposition. (ECF No. 471). The Court heard argument on July 26, 2017. (ECF No. 447, 451). Additionally, the parties filed supplemental briefing following oral argument. (ECF No. 460, 463). Without leave to do so, Defendant California Dairies also filed a statement after the argument. (ECF No. 457).

For the reasons described below, the motion for sanctions is granted in part.

**A. FACTUAL BACKGROUND**

Plaintiffs filed their initial complaint against Defendants Dairy America Inc. and California Dairies Inc. on March 6, 2009. (ECF No. 1). Plaintiffs filed a First Amended Complaint on April 3, 2009. (ECF No. 8)

That complaint alleged that both Defendants were liable for negligent misrepresentation, unlawful or unfair business practices, and unjust enrichment based on their misrepresenting certain prices to the United States Department of Agriculture, which were used to set the raw milk prices paid to dairy farmers:

> Plaintiffs and tens of thousands of other dairy farmers sold raw milk that was priced according to a FMMO during the period January 1, 2002 through April 30, 2007. The raw milk prices paid to those dairy farmers were set using FMMO formulas that factor in dairy product prices obtained by the National Agricultural Statistics Service ("NASS"), a division of the United States Department of Agriculture ("USDA"). NASS obtained the dairy product prices by regularly surveying firms that produce one million or more pounds of manufactured dairy products. One of the largest dairy firms surveyed by NASS was DairyAmerica, Inc. ("DairyAmerica"). From January 1, 2002 through April 30, 2007, DairyAmerica negligently and incorrectly reported dairy product prices to NASS. As a result, the raw milk prices set by the FMMOs were lower than they should have been, and Plaintiffs and the other members of the proposed class of dairy farmers were deprived of millions of dollars of income.

> Prior to and throughout the Class Period, DairyAmerica was provided instructions that identified precisely which dairy product prices to report to NASS. At all times relevant to this Complaint, DairyAmerica was aware that the dairy product prices it reported to NASS would be, and were intended to be, incorporated into the raw milk prices set by FMMOs and paid to dairy farmers. Yet, by its own admission, DairyAmerica failed to properly report its dairy product prices to NASS. A federal government investigation found that dairy farmers were deprived of millions of dollars in income as a result of DairyAmerica's reporting errors. Defendants profited substantially from DairyAmerica's misreporting of dairy product prices to NASS.

(ECF No. 8, at p. 1-2)

The complaint also alleged that "California Dairies is the major shareholder in and majority owner of DairyAmerica. On information and belief, California Dairies directs and controls the activities of DairyAmerica." (ECF No. 8, at p. 3-4).

The complaint also alleged the Defendants had concealed the misrepresentations and thus the statute of limitations had been tolled:

> Throughout the relevant time period, Defendants affirmatively concealed from Plaintiffs and class members the misrepresentations alleged herein and the identity of the dairy firm which negligently made such misrepresentations. DairyAmerica misrepresented dairy product prices in reports that were concealed from public review, and Defendants concealed the contents of the reports throughout the relevant time period. When NASS, AMS and the Inspector General investigated or announced the misreported dairy product prices, Defendants continued to conceal the identity of the misreporting dairy firm.

> As a result of Defendants' concealment, any applicable statute of limitations affecting the rights of Plaintiffs and class members has been tolled. Plaintiffs exercised due diligence to learn of their legal rights, and, despite the exercise of due diligence, did not discover and could not have discovered the unlawful conduct alleged herein at the time it occurred. Plaintiffs could not have discovered the unlawful conduct alleged herein until February 2008, when the identity of the misreporting dairy firm was indirectly disclosed in the minutes of a meeting held by NASS's Advisory Committee on Agriculture Statistics.

(ECF No. 8, at p. 20).

On February 9, 2010, the District Court granted Defendants' Motion to Dismiss on the basis of the Filed Rate Doctrine. (ECF No. 83). Plaintiffs appealed and the Ninth Circuit reversed and remanded. (ECF No. 104)

Following remand, the parties held a scheduling conference with the Magistrate Judge assigned to the case at that time, Magistrate Judge Gary A. Austin. (ECF No. 117). Off the record, the parties discussed initial discovery.

Shortly after the conference, the parties submitted a stipulation and proposed order for Merits discovery. (ECF No. 122). The Court signed the stipulation and ordered, in relevant part, as follows:

> 3. DairyAmerica shall disclose to plaintiffs, in writing, the following information by no later than April 26, 2013:

> a. The names, addresses, and telephone numbers of each individual likely to have discoverable information relevant to the subject matter of this litigation;

> b. The categories and locations of documents, including both paper and electronically-stored documents, in DairyAmerica's possession, custody, or control likely to contain discoverable information relevant to the subject

matter of this litigation including, but not limited to, categories of electronically-stored information previously compiled by DairyAmerica in anticipation of document discovery in this case;

(ECF No. 123, p. 2-3).

DairyAmerica sent a letter to Plaintiff's counsel on April 26, 2013. (ECF. 443-4, at p. 38). It contains the preface "Pursuant to Item 3(a) of the Stipulation and Order regarding Merits Discovery entered April 3, 2013 (Stipulation), DairyAmerica Inc. is providing the names, addresses, and telephone numbers of each individual likely to have discoverable information relevant to the subject matter of this litigation." It then listed 3 individuals: Richard Lewis, Former CEO of DairyAmerica, Inc., Annette Smith, Office Manager Dairy America Inc., and Jean McAbee, Controller DairyAmerica, Inc. It also listed electronically stored documents, which included "Accounting Database (Navision, which leaves an audit trail if modified)."

On June 26, 2015, DairyAmerica served responses to Plaintiff's First Set of Interrogatories. Plaintiff's Interrogatory Number 7 requested "For the period 2000 through 2009, identify each employee of Dairy America that was responsible for determining the information to include in the weekly reports to the USDA, for preparing those weekly reports, and for sending those reports to USDA." (ECF No. 443-4, at p. 57). In response, DairyAmerica asserted objections followed by the statement "DairyAmerica responds that Annette Smith and sometimes Jean McAbee prepared the weekly reports to NASS." (ECF No. 443-4, at 58).

Using their own investigators, Plaintiffs eventually located certain former employees of DairyAmerica, who had not been identified in DairyAmerica's disclosures. Three such employees eventually executed declarations in this case.

The declaration of Ralph Douglas White is dated June 8, 2015. (ECF No. 443-4, at pp. 89-99.) Mr. White states that he was DairyAmerica's Director of Sales from 1998 until 2011. His responsibilities included "identifying and interacting with domestic customers that purchased non-far dry milk ("NFDM") from DairyAmerica, determining the prices at which DairyAmerica would sell NFDM to its domestic customers, negotiating and entering into contracts for the sale of NFDM by DairyAmerica, and implementing the terms of those contracts." Mr. White describes speaking with Richard Lewis, Jean McAbee, employees of the USDA, about the

reporting requirements.  For example, he states that "Between the period 2002 and 2006, on multiple occasions, I discussed whether Dairy America was complying with NASS's instructions for submitting weekly reports with Richard Lewis.  During that time period, we had many conversations about the issue.  During those conversations, I questioned Richard Lewis about whether DairyAmerica was complying with NASS's instructions for submitting weekly reports. Specifically, during those conversations, I asked Richard Lewis whether DairyAmerica was improperly including figures in the reports from non-DEIP sales of NFDM in which the selling price was set (and not adjusted) 30 or more days before the transaction was completed.  I suggested to Richard Lewis that I did not think we should continue to include those figures . . . ." Similarly, Mr. White states that he had discussions with Jean McAbee where he "suggested to Jean McAbee that I did not think we should continue to include those figures in the reports to NASS because DairyAmerica was defying NASS's instructions."

Based on the information gleaned from Mr. White, Plaintiffs filed a motion to amend their complaint to, among other things, add claims for intentional misrepresentation and Racketeer Influenced and Corrupt Organizations Act ("RICO") and also add the members of the Dairy America cooperative, including California Dairies, as defendants.  (ECF No. 223).  Based in large part on the White Declaration, the District Court granted the motion to amend in part, explaining:

> [T]he dominant feature of the proposed RSAC is the presentation of new *evidence* in the form of the White Dec. that newly supports the previously alleged but unsupported allegations of knowing and purposeful misstatement of facts in the weekly NASS questionnaires. The White Dec. is essentially a recounting of Deponent's personal conversations with Dairy America's executive officers and a recounting of conversations had or heard by Deponent with the officers of the handler cooperatives that were the directors of DairyAmerica. The sum and substance of these conversations support the previously unsupported allegation that Defendant DairyAmerica's directors and the directors of the constituent handler cooperatives had actual present knowledge that, under NASS reporting rules, wholesale prices for NFDM in forward sales contracts were not to be reported on the weekly NASS questionnaires. The White Dec. also supports Plaintiffs' allegation that the directors of Defendant DairyAmerica and the directors of the constituent handler cooperatives had actual present knowledge that the improper reporting of wholesale price data for forward contract sales on the NASS questionnaires would have the effect, particularly in a rising market for raw milk and NFDM, of shifting financial benefit to handlers to the corresponding financial detriment of producers.

(ECF No. 240, p. 6).

On September 9, 2016, another former employee of DairyAmerica, Candice Bimemiller, executed a declaration. (ECF No. 443-4, at 101-104.) Ms. Bimemiller was employed as a Credit Manager at DairyAmerica from 2003 until 2009. She states that she reported directly to Richard Lewis, Jean McAbee, and Annette Smith. She worked on the accounting for DairyAmerica's sales of nonfat dry milk to domestic customers. Her responsibilities included "assisting with the preparation of weekly domestic sales reports of NFDM to be sent to the USDA and CDFA." She states "I assisted with the reporting of domestic sales of NFDM to the USDA and CDFA by providing final weekly sales figures to Annette Smith and Jean McAbee. It is my understanding that each week, Ms. Smith and/or Ms. McAbee entered those sales figures into forms that were provided to USDA and CDFA." Ms. Bimemiller also describes meeting weekly with Richard Lewis to review domestic sales figures to determine which would be reported to USDA and CDFA. "During the weekly meetings, Richard Lewis would regularly instruct me to delay the reporting of certain sales of NFDM. . . . The process of delaying the reporting of NFDM sales was clearly inconsistent with, and in defiance of, instructions that were provided each week by USDA and CDFA." She also states that she was instructed "not to speak with the CDFA's auditors."

On August 21, 2016, former employee Lani Ellingsworth executed a declaration. (ECF No. 443-4, at 106-113.) Ms. Ellingsworth was employed as a staff accountant from 2000 to 2002, and then as the Export Documentation Supervisor at DairyAmerica from 2002 until 2009. She reported directly to Richard Lewis and Jean McAbee. During the last year of her employment, she also reported to Annette Smith among others. Her responsibilities included "tracking and cataloguing the prices and volumes of export sales." In her declaration, she describes how "during the period 2001 through at least 2008, each and every week in which DairyAmerica reported prices from export sales of NFDM to the National Agricultural Statistics Service ("NASS"), a division of United States Department of Agriculture ("USDA"), those figures were fabricated by Richard Lewis and his staff and did not accurately reflect export sales transactions." Ms. Ellingsworth also describes how she assembled an "electronic export documentation database that would contain and track figures relating to export sales of NFDM." She explains that this export documentation database included two sets of

figures: "The first set of figures would consist of accurate figures from the actual sales of NFDM in the export market to foreign customers. The second set of figures would consist of fabricated export sales figures that were created internally at DairyAmerica." She also explains how "the accurate export sales figures reflecting actual export transactions were never reported ty NASS." She also describes how DairyAmerica concealed the accurate figures from auditors by removing boxes of accounting documents and concealing the export documentation database. Ms. Ellingsworth was terminated from DairyAmerica in 2009 "so that the company could conceal knowledge of its fraudulent activities."

Plaintiffs moved to amend their complaint based on the allegations described in these new declarations. (ECF No. 377) Regarding the timing of the new claims, Plaintiffs argued in their motion for leave to amend "The motion satisfies the "good cause" requirement of Fed. R. Civ. P. 16, as Plaintiffs exercised diligence to investigate the evidence and file the motion. Statutes of limitations do not bar the proposed claims due to the delayed discovery rule and doctrine of fraudulent concealment." (ECF No. 380, p. 7). Defendants opposed amendment in large part based on timeliness, asserting that Plaintiffs were not diligent in uncovering the allegations underlying their complaint. (*See e.g.*, ECF No. 397 at p. 9 ("amendment is futile because the allegations are time-barred, and neither fraudulent concealment nor the discovery rule will toll the applicable statutes of limitation."); ECF. No. 422, p. 25 ("the onus is on Plaintiffs, after being informed of a wrong regarding milk pricing, to investigate further to determine the specific aspects of misreporting causing the harm.").

## B. PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff asks this Court to sanction DairyAmerica for failing to disclose three additional individuals—Doug White, Candice Bimemiller, and Lani Ellingsworth—as well as the Export Documentation Database. (ECF No. 443-4). Plaintiffs argue that Defendants failed to comply with the initial disclosures order and also failed to provide this information in response to interrogatories and document requests. Plaintiffs argue that the concealed information is the same information DairyAmerica concealed from Government Auditors. Plaintiffs claim that concealment caused them prejudice because they did not uncover the relevant information until

later in the case. Plaintiffs currently face challenges based on statute of limitations regarding claims asserted in the Fourth Amended Complaint, which are directly based on the information from the three undisclosed witnesses and Export Documentation Database.

DairyAmerica objected to sanctions. (ECF No. 471). DairyAmerica contends that it understood the parties' stipulation and court order regarding disclosures to be limited only to information supportive of its own case because it believed that the order was meant to track Rule 26's initial disclosures, which are limited to information "the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1). Thus, DairyAmerica claims it was not required to identify persons and information that had information harmful to DairyAmerica or that DairyAmerica would not use in its own defense. DairyAmerica claims that they did not realize the witnesses had relevant information because "White never disclosed to DairyAmerica that he had any information about misreporting," Bimemiller and Elllingsworth were not involved in NASS or CDFA reporting, and "at the time and until disclosed, these witnesses' allegations (*intentional* inclusion of forward pricing sales to USDA, delayed reporting, fabricated price reporting, and CDFA) were not at issue. Additionally, DairyAmerica claims that it agreed to provide copies of all users' local documents (local c: drive) and a copy of the network drive from the server" as of June 2009, including the program. Dairy America then attempted to produce the Export Documentation Program, but the vendor deemed the files to be corrupt. Thus, the failure to produce the program was not DairyAmerica's fault. Moreover, there had again not been an allegation at that time that DairyAmerica had produced *false* prices—merely that it had wrongly included correct prices of export sales. DairyAmerica claims there is no prejudice to Plaintiffs because they eventually discovered the information. DairyAmerica also states that it disclosed the names of witnesses White, Mimemiller, and Ellingsworth on June 26, 2015 in a supplemental discovery response.

## C. LEGAL STANDARDS

Federal Rule of Civil Procedure 37(b)(2)(A) proves for sanctions for failure to comply with a court order to provide discovery:

**(A)** *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)-- fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

    **(i)**    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    **(ii)**    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    **(iii)**    striking pleadings in whole or in part;

    **(iv)**    staying further proceedings until the order is obeyed;

    **(v)**    dismissing the action or proceeding in whole or in part;

    **(vi)**    rendering a default judgment against the disobedient party; or

    **(vii)**    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(C). As Professors Wright and Miller explain:

> Rule 37 is flexible. The court is directed to make such orders as are "just" and is not limited in any case of disregard of the discovery rules or court orders under them to a stereotyped response. The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural. The district court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even.

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2284, Discretion of District Court in Imposing Sanctions, 8B Fed. Prac. & Proc. Civ. § 2284 (3d ed.)

Additionally, Rule 37 provides:

**(B)** *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(C). Imposition of sanctions under Rule 37 does not require a finding of bad faith. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171, (9th Cir. 1994), *as amended* (July 25,

1994) ("[W]e find no Ninth Circuit cases discussing a bad faith requirement under Rule 37(d). While a finding of bad faith is not a requirement for imposing sanctions, good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust."); Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2284 (3d ed.) ("[I]t is clear that any failure to disclose, regardless of the reason for it, brings the sanctions of Rule 37 into play, although the reason for the failure is an important consideration in determining what sanction to impose.").

Additionally, "[t]he inherent powers of federal courts are those which 'are necessary to the exercise of all others,' " and include "the 'well-acknowledged' inherent power ... to levy sanctions in response to abusive litigation practices." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–65, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980) (quoting *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)).  Courts are invested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)); Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp. 982 F.2d 363, 368 (9th Cir. 1992) ("This circuit has recognized as part of a district court's inherent powers the "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.") (internal quotations omitted).

### D.  ANALYSIS

The initial question is whether DairyAmerica violated a Court order.  Again, the Court's order stated in relevant part:

Shortly after the conference, the parties submitted a stipulation and proposed order for Merits discovery.  (ECF No. 122)  The Court signed the stipulation and ordered, in relevant part, as follows:

> 3.  DairyAmerica shall disclose to plaintiffs, in writing, the following information by no later than April 26, 2013:

a. The names, addresses, and telephone numbers of each individual likely to have discoverable information relevant to the subject matter of this litigation;

b. The categories and locations of documents, including both paper and electronically-stored documents, in DairyAmerica's possession, custody, or control likely to contain discoverable information relevant to the subject matter of this litigation including, but not limited to, categories of electronically-stored information previously compiled by DairyAmerica in anticipation of document discovery in this case;

(ECF No. 123, p. 2-3).

DairyAmerica violated this order.  DairyAmerica admits that it did not identify persons or documents "likely to contain discoverable information relevant to the subject matter of this litigation."  Instead, it only identified the information that supported its own position:

THE COURT: Let me ask you this. So when you --when you were interpreting initial disclosures under that order, are you saying that you were only providing the information that you thought supported your case and not the information that was just all relevant as the text was?

MS. DAVIS: That's correct, your Honor . . . .

(ECF No. 451, at p. 92).  The Court need look no further.  In response to an order unambiguously asking for identification of all relevant information, DairyAmerica admits that it only identified information helpful to its side, and thus concedes that it withheld unfavorable information.  Withholding unfavorable information is a clear violation of the plan language of the order, as well as the purpose of such a disclosure.  Moreover, to claim to abide by such an order while in fact withholding unfavorable information is an egregious form of concealment because Plaintiffs did not know to challenge DairyAmerica's interpretation.  If DairyAmerica had said that it was only producing information that supported its case, Plaintiffs could have quickly brought the issue to the attention of the Court and obtained additional disclosures.  But DairyAmerica chose to only disclose favorable information without alerting anyone, and thus concealing information as well as concealing DairyAmerica's own concealment.

In its defense, DairyAmerica argues that it would be reasonable to interpret the Court's order as equivalent to Rule 26's automatic Initial Disclosure requirement, which is limited to information "that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P.

26(a)(1)(A). But the order does not so limit DairyAmerica's disclosures. The order refers to "limited merits discovery," not Rule 26 initial disclosures. (ECF No. 123) The order uses the language "likely to have discoverable information relevant to the subject matter of this litigation," not "that the disclosing party may use to support its claims or defenses." Nor did DairyAmerica inform Plaintiffs it was so limiting its disclosures. To the contrary, DairyAmerica itself prefaced its disclosure following this order by stating "Pursuant to Item 3(a) of the Stipulation and Order Regarding Merits Discovery entered April 3, 2013 (Stipulation), DairyAmnerica, Inc. is providing the names, addresses, and telephone numbers of each individual *likely to have discoverable information relevant to the subject matter of this litigation*." (ECF No. 443-4, at p. 38) (emphasis added). There was no reason for Plaintiffs to believe that such a disclosure only contained information that supported DairyAmerica's position.

Given DairyAmerica's admission that it did not disclose witnesses and documents according to the plain language of the order, and instead only disclosed information to the extent it supported its defense, the Court need not go further in determining that DairyAmerica violated a Court order. Nevertheless, the Court will examine the specific allegations regarding individuals and electronic material allegedly withheld. For that purpose, the Court examines whether the withheld individuals and information were "likely to have discoverable information relevant to the subject matter of this litigation," which at the time was whether Defendants were liable for negligent misrepresentation, unlawful or unfair business practices, and unjust enrichment based on their misrepresenting certain prices to the United States Department of Agriculture, which were used to set the raw milk prices paid to dairy farmers. For purposes of assessing what information is "relevant to the subject matter of this litigation," it is worth noting that the complaint at issue at the time of the disclosure order including the following description of relevant issues common to the purported class:

    a. whether DairyAmerica improperly reported dairy product prices to NASS;
    b. whether DairyAmerica failed to exercise reasonable care when reporting dairy product prices to NASS;
    c. whether dairy farmers were foreseeable and intended recipients of DairyAmerica's misrepresentations;

1          d. whether DairyAmerica's misrepresentation of dairy product prices
deprived income from dairy farmers;

2          e. the nature of relief available by reason of Defendants' violations of law.

3  (ECF No. 8, at p. 7).  The following description of the negligent misrepresentation claim is also a

4  good reference for examining the allegedly concealed information:

5        96.     At all relevant times, DairyAmerica, among others, reported to NASS the
price and quantity of the NFDM it sold. NASS provided instructions for reporting

6  such information.  The instructions required DairyAmerica and the other reporting
firms to exclude sales in which the selling price was set (and not adjusted) 30 or

7  more days before the transaction was completed, unless the sale was through the

8  DEIP.

9  97. From approximately January 2002 through April 2007, DairyAmerica
negligently and in violation of the NASS instructions included long-term, non-

10  DEIP, forward contracted NFDM volume and price information in its weekly

11  submissions to NASS.

12  98. The improperly-reported NFDM prices had the effect of lowering the raw
milk prices set by USDA using the FMMO formulas.

13

14  99. DairyAmerica knew that the prices it reported to NASS were intended to be,
and would be, used in FMMO formulas to set the prices that were paid to

15  Plaintiffs and the other class members for the purchase of raw milk.

16  100. When including long-term forward contracted NFDM volumes and prices in
their weekly submissions to NASS, DairyAmerica failed to exercise reasonable

17  care. The facts available to DairyAmerica did not reasonably lead to the

18  conclusion that said conduct was proper.

19  101. Plaintiffs and the other members of the class justifiably and reasonably relied
to their detriment on the prices set by USDA under the FMMOs as being the price

20  calculated based on the correct reporting of prices and volumes to NASS. Such
reliance was foreseeable and intended by Defendants.

21

22  102. As a direct and proximate result of DairyAmerica' negligent conduct and
statements, Plaintiffs and the other class members have suffered and are entitled

23  to compensatory and consequential damages, in an amount to be proven at trial.

24  103. California Dairies is liable for DairyAmerica's negligent misrepresentations
because DairyAmerica is an agent of California Dairies, because DairyAmerica is

25  a joint venture between California Dairies and the other dairy cooperatives that

26  own it, and because California Dairies exercised control over DairyAmerica's
decision-making involving the sale and reporting of NFDM.

27

28

(ECF No. 8, at p. 21-22).  With those allegations in mind, the Court turns to the three individuals and one database that DairyAmerica failed to disclose pursuant to the order.

### i.    Candice Bimemiller

According to Ms. Bimemiller's own declaration, discussed above, she fit within the scope of the order and should have been disclosed.  (ECF No. 443-4, at 101-104).  Ms. Bimemiller was employed as a Credit Manager at DairyAmerica from 2003 until 2009.  Her responsibilities included "assisting with the preparation of weekly domestic sales reports of NFDM to be sent to the USDA and CDFA."  She states "I assisted with the reporting of domestic sales of NFDM to the USDA and CDFA by providing final weekly sales figures to Annette Smith and Jean McAbee.  It is my understanding that each week, Ms. Smith and/or Ms. McAbee entered those sales figures into forms that were provided to USDA and CDFA."  Even setting aside the more inflammatory parts of her declaration, including that she was instructed to delay reporting of certain sales and not speak with auditors, her involvement in preparing NFDM sales for reporting makes her "likely to have discoverable information relevant to he subject matter of this litigation."

In response, DairyAmerica only disputes Ms. Bimemiller's claim that she was instructed to delay the reporting of certain sales information in order to *intentionally* misreport sales.  (ECF No. 471, at p. 11).  In support, DairyAmerica includes the declarations of Jean McAbee and Annette Smith who both declare the exact same statement "neither Lani Ellingsworth nor Candice Bimemiller had nay involvement in USDA or California Department of Food and Agriculture ("CDFA") reporting."  (ECF No. 471-19, Smith Declaration at ¶ 4; ECF No. 471-20, McAbee Declaration at ¶ 4).  Neither declarations say anything further about Ms. Bimemiller.  Neither declarations deny that she was involved in reporting the domestic sales figures to Ms. Smith and Ms. McAbee for the purpose of reporting those figures.  At oral argument, counsel for DairyAmerica conceded this:

> THE COURT: So let's hear from Ms. Davis [counsel for DairyAmerica] on that.
> Do you –[interruption] agree that Ms. Bimemiller was preparing domestic sales figures about NFDM and giving them to Annette Smith and Macabee for reporting?
>
> MS. DAVIS: She gave -- she gave figures to the two that they used in their reporting.

(ECF No. 451, p. 78).  *See also* ECF No. 451, pp. 79-80 ("THE COURT: And those -- when she tracks invoices and provides information, she's providing that to Annette Smith and Macabee for reporting to the USDA?  MR. ENGLISH: She is providing the documents that they then use to confirm what will be reported to the USDA. . . . She provided data, but then the data was checked by those persons, and they actually did the reporting.")).

This Court need not resolve whether her testimony would establish intentional misreporting or not.  For purposes of disclosure, her role in collecting data to report sales of NFDM is sufficient to make her "likely to have discoverable information" relevant to the pending claims, which included a claim for negligent misrepresentation of NFDM prices.  A failure to disclosure her identity violated the Court order.

ii.     Lani Ellingsworth and the Export Database

According to Ms. Ellingsworth's Declaration, she too was likely to have discoverable information relevant to the litigation.  (ECF. No. 443-4, at 106-113).  Ms. Ellingsworth was employed as a staff accountant from 2000 to 2002, and then as the Export Documentation Supervisor at DairyAmerica from 2002 until 2009.  Her responsibilities included "tracking and cataloguing the prices and volumes of export sales."  Ms. Ellingsworth describes how she assembled an "electronic export documentation database that would contain and track figures relating to export sales of NFDM."  She explains that this export documentation database included two sets of figures: "The first set of figures would consist of accurate figures from the actual sales of NFDM in the export market to foreign customers.  The second set of figures would consist of fabricated export sales figures that were created internally at DairyAmerica."  She also describes how DairyAmerica concealed the accurate figures from auditors by removing boxes of accounting documents and concealing the export documentation database.

DairyAmerica concedes that Ms. Ellingsworth worked on a computer program that included data regarding exported dairy products, but denies that it included fabricated export sales figures.  At oral argument, the Court attempted to obtain clarification regarding that program, but could not get a straight answer from DairyAmerica.  For example, the Court had the following exchange:

THE COURT: Uh-huh. Okay. Let's pause there. Do you agree -- Dairy America, do you agree that she was -- Ms. Ellingsworth was doing expert sales figures and compiling them for Smith and Macabee for reporting purposes of NFDM to the USDA?

MS. DAVIS: No. I think that's somewhat inaccurate. She did the export documentation --

THE COURT: Okay.

MS. DAVIS: -- from a software program that its purpose was to create particular documents for export, but what -- she has a misconception and what I'd like to talk about -- and I think it would help clear up --

THE COURT: Was she giving --

MS. DAVIS: -- is that --

THE COURT: I'm not ready for that.

MS. DAVIS: I know.

THE COURT: And she gave --

MS. DAVIS: But -- but --

THE COURT: And did -- and she gave that documentation to Smith and Macabee for reporting purposes?

MS. DAVIS: No, no. And I would need to give you a more fulsome explanation so that you would understand why, but we would disagree with that.

THE COURT: She -- okay. She didn't give anything to Smith and Macabee for reporting purposes?

MS. DAVIS: The documents that she created were for export purposes. The -- the pricing in those documents to the customer or to Fontera were two different kinds of prices. The pricing that was reported to USDA was produced from something called NuVision and had a different purpose, and I can explain those three purposes to your Honor, but the connection that they're trying to make from the export documentation that's made for health and, you know, all the different things that you have to do when you export something, is not the same thing as the price that was reported to the USDA. If you want me to go on, I'll be happy to explain those -- those differences.

(ECF No. 451, pp. 82-84). After some very confusing back and forth, the dialogue at oral argument on this point concluded as follows:

THE COURT: Does the database, the export database that Ms. Ellingsworth knows about, does it have the prices that --

MS. DAVIS: No.

THE COURT: -- were reported to the USDA?

MS. DAVIS: No.

(ECF No. 451, at 88). Following oral argument, Plaintiffs submitted supplemental briefing including a letter from counsel for DairyAmerica that appears to contradict this statement. The letter addressed the export program and counsel represented "any price referenced is identical to the prices in Navision (the database used by DairyAmerica personnel to report to the government

and has been previously provided to Plaintiffs). This is because the source of the sales information contained in Navision and the Export Documentation program are the same." (ECF No. 460, p. 92, Exhibit E to Plaintiffs' Supplemental Brief in Support of Motion for Sanctions).

What the Court can glean from all of this is that there is a computer program that contains sales information for export of dairy milk products, including sales prices. Some of the prices are the same as those provided to the government in reporting, although those prices were generated from another program that had identical prices. There were also other export prices related to dairy milk products. The parties vehemently disagree about what those other prices signify. For the purpose of this motion, however, the export program should have been disclosed. It included pricing information related to export of dairy milk products, including the prices ultimately reported to the USDA. It also had other data related to these exports. All in all, Ms. Ellingsworth and the export database were likely to have discoverable information relevant to the subject matter of this litigation.

      iii. Doug White

According to the declaration of Doug White, he had discoverable information relevant to the litigation. (ECF No. 443-4, pp. 89-99). Mr. White describes speaking with Richard Lewis, Jean McAbee, employees of the USDA, about the reporting requirements. For example, he states that "Between the period 2002 and 2006, on multiple occasions, I discussed whether Dairy America was complying with NASS's instructions for submitting weekly reports with Richard Lewis. During that time period, we had many conversations about the issue. During those conversations, I questioned Richard Lewis about whether DairyAmerica was complying with NASS's instructions for submitting weekly reports. Specifically, during those conversations, I asked Richard Lewis whether DairyAmerica was improperly including figures in the reports from non-DEIP sales of NFDM in which the selling price was set (and not adjusted) 30 or more days before the transaction was completed. I suggested to Richard Lewis that I did not think we should continue to include those figures . . . ." Similarly, Mr. White states that he had discussions with Jean McAbee where he "suggested to Jean McAbee that I did not think we should continue to include those figures in the reports to NASS because DairyAmerica was

defying NASS's instructions." At oral argument, Plaintiffs' counsel represented that Doug White was one of two people who negotiated pricing sales of forward pricing contracts of NFDM, and those were the contracts or those prices that were included in reporting to USDA but should not have been. (ECF No. 451, at p. 68).

DairyAmerica concedes that Mr. White sold NFDM at prices that were reported to the government. DairyAmerica disputes that Mr. White knew of any misreporting.[1] In its supplemental briefing, Plaintiffs included a number of correspondence from the relevant time period involving Mr. White and discussing reporting to NASS in relation to the prices of good he was responsible for selling. For example, in one email dated October 14, 2005, Mr. White writes "We will be increasing the amount of powder we ship to the export market over the next few months and there is a chance that a good portion will be reported at prices less than NASS . . . ." (Exhibit L to Plaintiffs' Supplemental Brief in Support of Motion for Sanctions). In another exchange, Rich Lewis copies Mr. White on an email beginning "Based on our conversation this AM regarding your producer comments on the index pricing," and states in part "Once we get through these contracts the NASS will start an unstoppable increase unless we as an industry believe that NFDM prices above a certain level will be a detriment to our business. The only thing that will slow the NASS is SMP exports that are priced below the CWAP and Members run those orders as NFDM and we report those numbers to both the CWAP and NASS." (Exhibit N to Plaintiffs' Supplemental Brief in Support of Motion for Sanctions).

Thus, while the parties again vehemently dispute the facts in Mr. White's declaration, Mr. White's role in selling the product whose prices were reported, and discussions regarding how prices would be reported and how it would affect other sales, are sufficient for the Court to conclude that he should have been named as someone "likely to have discoverable information relevant to the subject matter of this litigation."

---

[1] Without Court permission or legal justification, counsel for DairyAmerica submitted a declaration from Charles English *in camera*. The declaration and accompanying documents argued against any attempt to conceal information and specifically provided information regarding correspondence with Mr. White to support its position. The Court does not believe that *in camera* material not available to Plaintiffs or the public can appropriately be considered in connection with this motion for sanctions. That said, the Court believes that its summary of DairyAmerica's position is consistent with DairyAmerica's *in camera* submission, although without the details provided in that submission.

## E. ANALYSIS

i.   Defenses Based on Untimeless of Asserting Claims Arising out of Information from Withheld Witnesses and Documents

DiaryAmerica argues that no sanctions are warranted because Plaintiffs now have access to those witnesses and thus no prejudice has resulted.  (ECF No. 471, at p. 26 ("Plaintifffs have not suffered any harm or prejudice in the discovery proceedings because they were able to obtain all relevant evidence well before trial and, in fact, by attempting to amend the complaint again, will essentially have all requested evidence from the 'outset' of the claims."); ECF No. 471, at p. 27 ("Plaintiffs did, in fact, receive the three witnesses' names in 2015.").

Plaintiffs respond by pointing to Defendants' opposition to Plaintiff's motion to amend the complaint currently pending before the District Court.  As discussed above, Plaintiffs moved to amend the complaint to assert allegations based on information provided by the three undisclosed witnesses and undisclosed computer program.  Indeed, DairyAmerica argues in its pending opposition to Plaintiffs' motion to amend the complaint based on this new information that the claims are now barred by the statute of limitations:

> Plaintiffs' new allegations of misreporting are time barred. Under the delayed discovery rule, the statute of limitations began when Plaintiffs suspected something was wrong with NASS or CDFA milk prices. When a plaintiff actually suspects wrongdoing or a reasonable person would suspect wrongdoing, she is on inquiry notice. . . . Plaintiffs, once on inquiry notice, must fully investigate their claim and bring suit within the limitations period. . . . [T]he onus is on Plaintiffs, after being informed of a wrong regarding milk pricing, to investigate further to determine the specific aspects of misreporting causing the harm.

(ECF No. 422, at p. 22-26).  The District Judge has not yet ruled on Plaintiffs' motion to amend.

DairyAmerica's argument that Plaintiffs' claims based directly from individuals and documents DairyAmerica itself concealed should now be dismissed as untimely cannot stand.  If DairyAmerica had complied with its disclosure requirements under the order, and as it represented in its own disclosure, Plaintiffs would have learned of the identities of the three critical individuals on April 26, 2013, (ECF No. 443-4, at p. 38) two years earlier.  Given Plaintiffs diligence in securing declarations soon after learning of their identify, it is safe to

1  assume that Plaintiffs would have done the same two years earlier and been in a position to

2  amend its complaint.

3         These two years appear to be legally critical.  DairyAmerica argues in its opposition to

4  Plaintiffs' motion for leave to file a Fourth Amended Complaint that "[Plaintiffs'] claims are

5  barred if they suspected or should have suspected wrongdoing with respect to milk prices two or

6  three years prior to the filing of their FAC (the proposed version of which is dated February 9,

7  2017)."  (ECF No. 422, at p. 23).

8         Accordingly, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(ii), sanctions are

9  appropriate to remove any defense on the basis of untimeliness to allegations stemming from the

10 three undisclosed witnesses and export program. [2]  The Court thus orders that any claims based on

11 information from Ms. Bimemiller, Ms. Ellingsworth, Mr. White or the export program, which were

12 improperly withheld from DairyAmerica's disclosure of April 26, 2013, be treated as if filed shortly

13 after April 26, 2013 for purpose of assessing any defenses based on the timing of filing,

14 including the statute of limitations.[3]

15               ii.     Monetary Sanctions

16

17

---

18 [2] Following briefing and oral argument regarding Plaintiffs' motion, Defendant California Dairies filed a
"Statement" objecting to any effect this Court's order could have on claims against California Dairies.  (ECF No.
19 457).  This Court is not familiar with the extent to which information disclosed by the withheld witnesses and
computer program have implicated California Dairies, and issue which is before the District Court in this case.  But
this Court is generally aware that California Dairies has also opposed Plaintiffs' motion to amend on the argument
20 of untimeliness.  (ECF No. 397, p. 8-9) (" As a threshold matter, under Rule 16(b), Plaintiffs must prove good cause
exists to modify the Court's scheduling order deadline for amendments to the pleadings by establishing they were
21 diligent in seeking leave to amend. Plaintiffs fail to meet this burden. . . . Further, amendment is futile because the
allegations are time-barred, and neither fraudulent concealment nor the discovery rule will toll the applicable
22 statutes of limitation. . . . Plaintiffs cannot demonstrate they were diligent in investigating their claims." ).  This
Court declines to carve out an exception to its sanction to allow California Dairies to dismiss claims based on
23 untimeliness that arose from the withheld information.  As California Dairies notes in its arguments, its untimeliness
arguments stem from the assumption that Plaintiffs could have discovered this information earlier with diligence.
24 That argument fails in light of the fact that Plaintiffs' efforts would have revealed that information in April of 2013
if DairyAmerica had complied with Court orders.
25 [3] The Court will not go further in striking particular portions of currently pending briefs or determining the exact
way this decision affects arguments raised now or later in this case.  Many of those arguments are before the District
26 Judge and this Court is not in a position to sort through which arguments are or are not valid in light of this
determination.  The parties should use this order to the extent relevant in current or future motions before this Court
27 or the District Judge to the extent timeliness becomes an issue.  The intent of this order is to put Plaintiffs in the
same position as if DairyAmerica had complied with the court order and disclosed the three witnesses and export
28 program on April 26, 2013.

Federal Rule of Civil Procedure 37(b)(2)(C) states that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Accordingly, the Court also issues sanctions against DairyAmerica in the amount of reasonable expenses, including attorney's fees, of bringing the motion for sanctions. Plaintiffs shall submit the amount requested under this order, with all applicable support for the expenses and fees, no later than 14 days from the date of this order to epgorders@caed.uscourts.gov. The Court will issue a specific order with an amount following submission of this material.

### iii. Additional Sanctions

The Court also orders that, 7 days from this order, DairyAmerica supplement its April 26, 2013 disclosure to fully comply with the plain text of the Court's order, ECF. 123—*not* limited to information DairyAmerica may use to support its claims or defenses, as previously limited by DairyAmerica.

The Court orders that Plaintiffs have leave to re-open the depositions of Richard Lewis, Jean McAbee, and Annette Smith, which were taken before Plaintiffs learned information relevant to those witnesses from the withheld individuals.

The Court declines to issue the other sanctions requested by Plaintiff. The Court does not believe that default judgment is appropriate under the circumstances, given that Plaintiffs now have the relevant information and the prejudice should be cleared by the other sanctions discussed in this order.

Plaintiffs raise a number of discovery sanctions, including leave to conduct up to forty depositions. The Court will not issue that sanction in this motion, as it appears arbitrary and untied to the newly gleaned information. That said, the Court will consider requests to take depositions above the default limit of 10 depositions to the extent justified on a case by case basis. The parties can raise this issue through discovery procedures in the normal course. Similarly, the Court will entertain requests for additional interrogatories on a case by case basis.

**F. CONCLUSION**

For the reasons stated, the Court grants in part Plaintiffs' Motion for Sanctions. (ECF No. 443-4).

Any claims based on information from Ms. Bimemiller, Ms. Ellingsworth, Mr. White or the export program, which were improperly withheld from DairyAmerica's disclosure of April 26, 2013, shall be treated as if filed shortly after April 26, 2013 for purpose of assessing any defenses based on the timing of filing, including the statute of limitations.

The Court also issues sanctions against DairyAmerica in the amount of reasonable expenses, including attorney's fees, of bringing the motion for sanctions. Plaintiffs shall submit the amount requested under this order, with all applicable support for the expenses and fees, no later than 14 days from the date of this order to epgorders@caed.uscourts.gov. The Court will issue a specific order with an amount following submission of this material.

7 days from this order, DairyAmerica supplement its April 26, 2013 disclosure to fully comply with the plain text of the Court's order, ECF. 122—*not* limited to information DairyAmerica may use to support its claims or defenses, as previously limited by DairyAmerica.

The Court orders that Plaintiffs have leave to re-open the depositions of Richard Lewis, Jean McAbee, and Annette Smith, which were taken before Plaintiffs learned information relevant to those witnesses from the withheld individuals.

IT IS SO ORDERED.

Dated: __**August 23, 2017**__     ___/s/ Erica P. Grosjean___
UNITED STATES MAGISTRATE JUDGE