1

2

3

4

5

6

7

8

9

10

11                    UNITED STATES DISTRICT COURT

12                    EASTERN DISTRICT OF CALIFORNIA

13

14    **GERALD CARLIN, JOHN RAHM, PAUL**          **CASE NO. 1:09-CV-00430 AWI EPG**
      **ROZWADOWSKI and DIANA WOLFE,**
15    **individually and on behalf of themselves and**   **ORDER ON PLAINTIFFS' MOTION**
      **all others similarly situated,**            **FOR LEAVE TO FILE FOURTH**
16                                                  **AMENDED CONSOLIDATED CLASS**
                                                    **ACTION COMPLAINT AND MOTION**
17                              **Plaintiffs,**      **TO STRIKE EXPERT REPORT**

18    **v.**                                         (Doc. Nos. 377, 399)

19
      **DAIRYAMERICA, INC., and**
20    **CALIFORNIA DAIRIES, INC.,**

21                              **Defendants.**

22

23          On February 9, 2017, Plaintiffs filed a motion for leave to file a fourth amended

24    consolidated class action complaint ("FAC").  In the process of conducting further discovery since

25    the third amended complaint ("TAC"), which was filed on February 24, 2016, Plaintiffs state that

26    they have obtained two "smoking gun" declarations from former employees of defendant

27    DairyAmerica, Inc. ("DairyAmerica"), along with corroborating documents obtained through a

28    discovery subpoena, that justify further amendment.

Plaintiffs seek leave to amend their TAC to (1) add new allegations that Defendants made misrepresentations to the California Department of Food and Agriculture ("CDFA") brought by a new class of plaintiffs – California dairy farmers; (2) add the cooperatives Dairy Farmers of America, Inc. ("DFA") and Land O'Lakes, Inc. ("Land O'Lakes") as defendants with respect to claims involving misrepresentations to the CDFA; and (3) add new allegations involving misrepresentations to the United States Department of Agriculture ("USDA") to account for additional misreporting methods. Plaintiffs' case is currently against defendants DairyAmerica and California Dairies, Inc. ("California Dairies") (collectively, "Defendants"). DairyAmerica and California Dairies filed oppositions and the Court permitted DFA and Land O'Lakes ("Proposed Defendants") to file an amicus brief in opposition. Plaintiffs also seek to strike DairyAmerica's expert report from Stuart Harden, as well as all references to the report in DairyAmerica's opposition. For the reasons that follow, the motion for leave to amend will be granted in part and denied in part, and the motion to strike will be denied.

## FACTUAL BACKGROUND

### 1. Background on Milk Pricing and Marketing Systems

Many thousands of dairy farmers in the United States sell their raw milk to processors, and receive compensation each month for their sales. Most of these farmers fall under the jurisdiction of the USDA's ten Federal Milk Marketing Orders ("FMMOs")[1], and therefore receive monthly checks that contain raw milk prices calculated by the FMMOs. The FMMOs rely on formulas to calculate raw milk prices that factor in market prices for finished dairy products, which are obtained by the National Agricultural Statistics Service ("NASS"), a division of the USDA. Non-fat dry milk ("Dry Milk") is one of the finished dairy products whose prices are incorporated into those formulas. From January 1, 2002 through April 30, 2007 (the "Class Period"), NASS obtained market prices for Dry Milk by conducting weekly surveys of firms that sold one million or more pounds of Dry Milk annually.

[1] The FMMOs are issued by the USDA pursuant to section 8c(5) of the Agricultural Marketing Agreement Act of 1937 ("AMAA").

Not all regions of the country are subject to the ten FMMOs. In fact, several states, including California, have established their own program to calculate raw milk prices for in-state dairy farmers. In California, the CDFA[2], like the USDA, conducts weekly surveys and calculates prices that farmers in the state receive each month for the sale of raw milk. The CDFA reporting requirements are different from the USDA reporting requirements.

During the Class Period, the largest seller of Dry Milk surveyed by USDA and CDFA was DairyAmerica, a marketing association composed of nine cooperative members, including California Dairies, Land O'Lakes, and DFA. Each cooperative member held three seats on DairyAmerica's board of directors.

### 2. *Publicity Regarding Alleged Milk Pricing Improprieties and Agency Actions*

The National Family Farm Coalition ("NFFC") published July 20, 2006 testimony by named class representative Paul Rozwadowski at the hearing of the Senate Agriculture Committee to review USDA dairy programs, in which he stated in part: "Larger co-ops have vested interests with private firms causing collusion, corruption and manipulation of our pricing system." Declaration of Sanjay M. Nangia. In support of DairyAmerica's Opposition to Plaintiffs' Motion. ("Nangia Decl."), Ex. G.

In November 2006, *The Milkweed*, a dairy publication, reported that: "The U.S. dairy pricing and milk marketing systems are simply crooked B_ _ _ _ _ _ _ T. The pricing system is leading producers to ruin." The article went on to report that:

> The L-O-W-E-S-T price of all for [Dry Milk] is the value reported by USDA for its weekly survey of dairy commodity prices. And that's the basis for values plugged into the pricing formula USDA uses to set class prices in the federal milk order system. Obviously, the money is in the market place. Somebody is making a LOT of money off milk powder. But the dairy farmers—struggling with high costs and low milk prices—will not see much of the higher values in their milk checks. Draw your own conclusions."

Nangia Decl., Ex. I.

---

[2] Notably, while Plaintiffs' current claims against Defendants are based entirely on the allegedly improper inclusion of "forward pricing," Plaintiffs acknowledge that the CDFA, by contrast, permitted the inclusion of forward pricing for the relevant time period.

In February 2007, *The Milkweed* reported: "[A]necdotal reports for [Dry Milk] in the U.S. indicate the price, the real price is $1.50 per pound. What is wrong with the NASS survey?" Nangia Decl., Ex. J.

In March 2007, *The Milkweed* published an article titled "USDA's Milk-Pricing Fails: Producers Lose Half a Billion Dollars," alleging that DairyAmerica was improperly including forward pricing sales in its weekly reports to the USDA, stating "The major seller of [Dry Milk]— Dairy America—has improperly reported values of weekly [Dry Milk] sales for the past six months to USDA. In turn, USDA uses formulas incorporating these dairy commodity prices to establish farm milk prices under the complex federal milk market order program." See Nangia Decl., Ex. K.

On or about April 20, 2007, NASS requested that all 39 firms that had reported Dry Milk data review their weekly price and sales volume submissions for the period of April 29, 2006 through April 14, 2007, and submit revisions. On June 28, 2007, NASS published "revised prices and sales volume" for Dry Milk, and the USDA reported that "The total classified milk regulated under the [FMMO] program for the period covered by the NASS revision was understated by $50 million, or about 0.25 percent. On a per hundredweight basis, the value was understated an average of $0.04." See Doc. No. 204, Ex. C.

In February 2008, the USDA Office of the Inspector General ("OIG") issued a report regarding "the April 2007 discovery of the error in the reporting of [Dry Milk] prices." Among its findings were:

> A large dairy firm inappropriately included long-term forward contracted [Dry Milk] volume and price information in their weekly submissions to NASS. We found that this dairy firm has been including data for sales of this type since 2002.

> NASS then aggregated the misreported data from this large dairy firm with the weekly data submitted by other dairy firms for the same reporting period. This caused inaccurate [Dry Milk] aggregated volume and price statistics to be published weekly. The internal controls for the survey and estimation process used by NASS for the Dairy Products Prices report were inadequate, as this error went undetected from 2002 until April 2007.

> NASS' published [Dry Milk] price statistics are utilized by [the Agricultural Marketing Service ("AMS")] as a component of its formula for establishing federal milk marketing order (FMMO) prices. Given that incorrect [Dry Milk] prices were factored into the FMMO formula, the published FMMO prices were also incorrect.

4

AMS issued a report on June 28, 2007 stating: "The total classified value of milk regulated under the FMMO program for the period covered by the NASS revision was understated by $50 million ..." covering the period between April 29, 2006, and April 14, 2007.

OIG, U.S. Dep't of Agric., No. 26901–01–IR, Inspection Report: Survey and Estimation Internal Controls for [Dry Milk] and the Dairy Products Prices Report i (2008), Doc. No. 204, Ex. B.

Notes from an NFFC call on which named class representative Paul Rozwadowski was present on August 5, 2008 reflect the following comments: "CME price is tanking. Class III price also down $2. [M]arkets are being manipulated again?" Nangia Decl., Ex. H.

In a letter dated January 1, 2009 from class representative Gerald Carlin ("Carlin") to Congress, Carlin stated in part: "From the summer of 2006 through the spring of 2007, we said that misreporting of [Dry Milk] on NASS was costing dairy farmers millions of dollars. We were right." Nangia Decl., Ex. E.

### 3. Procedural History of This Case

Plaintiffs originally filed the instant action on March 6, 2009, alleging that DairyAmerica and one of its member-cooperative owners, California Dairies, had improperly including forward pricing sales in its weekly reports to the USDA from January 2002 through April 2007. Doc. No. 1. Plaintiffs did not sue Land O'Lakes, DFA, or any other member-cooperatives of DairyAmerica at that time. Plaintiffs timely filed a first amended complaint on April 3, 2009. Doc. No. 8. The Court dismissed the case in 2010 on the basis of the filed rate doctrine. Doc. No. 83. Plaintiffs appealed, and the Ninth Circuit granted Plaintiffs' appeal, effective January 22, 2013. Doc. No. 109.

On April 3, 2013, the Court ordered DairyAmerica to make its disclosures to Plaintiffs no later than April 26, 2013, including: "The names, addresses, and telephone numbers of each individual likely to have discoverable information relevant to the subject matter of this litigation." Doc. No. 123. On April 26, 2013, DairyAmerica made its initial Rule 26 disclosures, which did not include Supervisor Jane Doe[3] ("Supervisor Doe") and Manager Candice Bimemiller ("Manager Bimemiller") (or collectively, "Declarants") as knowledgeable witnesses. See Pls.'

---

[3] The Court granted Plaintiffs' request to file this witness' name under seal. Doc. No. 379. All parties understand who the Court is referring to here.

Motion at 26. On October 16, 2013, a Court-ordered stay on almost all discovery, which had commenced on March 29, 2013 due to Defendants' motion to dismiss, was lifted and discovery commenced in the case. Doc. Nos. 123, 141. As a result of the motion to dismiss, Plaintiffs were left with a single claim for negligent misrepresentation against DairyAmerica. Doc. No. 141.

On April 17, 2014, Plaintiffs were first provided access to DairyAmerica's hard copy documents. Pls.' Motion at 5. On May 19, 2014, Plaintiffs were first provided access to DairyAmerica's electronic documents. Id. DairyAmerica's documents revealed Declarants' existence and employment with DairyAmerica. Pls.' Reply at 13. The Court-ordered deadline for amending the complaint was June 30, 2014. Doc. No. 151. On June 30, 2014, Plaintiffs filed a motion to file a second amended complaint ("SAC"), which the Court denied. Doc. No. 155.

On March 19, 2015, a Court-ordered stay on party depositions, which had been imposed on September 25, 2014, was lifted. Doc. No. 189. The first deposition in this case was taken on June 8, 2015. Pls.' Motion at 5. On June 16, 2015, DairyAmerica's accounting supervisor and office manager, Ms. Annette Smith ("Manager Smith") incorrectly testified at her deposition that Declarants were not involved at all in facilitating or working on the reports that were submitted to NASS. Id. at 21. Declarants reported to Manager Smith during their employment at DairyAmerica; during her final year of employment, Supervisor Doe reported to Manager Smith, and during the entire period of her employment, Manager Bimemiller reported to Manager Smith. Id., Ex. B & C.

On September 25, 2015, Plaintiffs renewed their motion to file a SAC after securing a declaration from DairyAmerica's former Director of Sales, Ralph Douglas White. Doc. No. 220. As part of the SAC, Plaintiff sought to add nine defendants who were members of the co-op DairyAmerica, including California Dairies, DFA and Land O'Lakes. On January 20, 2016, the Court granted Plaintiffs' renewed motion for leave to file an SAC in part, permitting Plaintiffs to add California Dairies as a defendant (and specifically finding that there was "no issue with regard to time limitations because California Dairies was named as a defendant in Plaintiffs' original complaint filed on March 6, 2009" and could thus be added under the relation back doctrine) and to add claims for intentional misrepresentation and conspiracy to violate RICO. ECF No. 240.

The Court denied Plaintiffs' request to add the other eight members of the co-op DairyAmerica as new defendants, finding that the statute of limitations had run. Id.

Pursuant to the Court's order, Plaintiffs filed the TAC on February 24, 2016, which is currently the operative complaint. Doc. No. 245. The TAC states claims against Defendants for: (1) negligent misrepresentation; (2) intentional misrepresentation; and (3) violations of RICO. Id. The TAC defines the proposed class as: "All dairy farmers located in the United States who sold raw milk that was priced according to a Federal Milk Marketing Order during the period January 1, 2002 through April 30, 2007." Id.

Plaintiffs made contact with Declarants, both former employees of DairyAmerica, through an independent investigation of unrepresented former DairyAmerica employees. On August 21, 2016, Plaintiffs obtained a declaration from Supervisor Doe. Pls.' Motion, Ex. B. Supervisor Doe was employed by DairyAmerica from 2000 to 2009. Supervisor Doe was initially a staff accountant, but beginning in 2002 became an export documentation supervisor. Id. While still employed by DairyAmerica, Supervisor Doe states that she witnessed DairyAmerica engage in various types of fraudulent reporting to the CDFA and the USDA. On September 9, 2016, Plaintiffs also obtained a declaration Manager Bimemiller. Pls.' Motion, Ex. C. Manager Bimemiller was employed by DairyAmerica from 2003 to 2009 as a credit manager. Id. While employed by DairyAmerica, Manager Bimemiller states that she witnessed DairyAmerica engage in delayed reporting to the USDA and CDFA, in violation of those agencies' instructions. Id. On October 17, 2016, Plaintiffs received documents from Supervisor Doe after issuing her a subpoena. Pls.' Motion at 27.

On August 23, 2017, the Magistrate Judge sanctioned DairyAmerica for failing to comply with Court orders regarding its initial disclosures, and ordered in part that: "Any claims based on information from Ms. Bimemiller, [Supervisor Doe], Mr. White or the export program, which were improperly withheld from DairyAmerica's disclosure of April 26, 2013, shall be treated as if filed shortly after April 26, 2013 for purpose of assessing any defenses based on the timing of filing, including the statute of limitations." See Doc. No. 474 at 21.

# I.    **PLAINTIFFS' MOTION TO AMEND**

Plaintiffs' TAC states claims against Defendants DairyAmerica and California Dairies based on an alleged conspiracy to misreport forward pricing sales to the USDA for the purpose of reducing payments to dairy farmers, and thus injuring farmers outside of California.  Plaintiffs' TAC pleads the following causes of action ("COA"):

1.  First COA: Negligent Misrepresentation as to DairyAmerica and California Dairies;

2.  Second COA: Intentional Misrepresentation as to DairyAmerica and California Dairies;

3.  Third COA: Violation of RICO as to California Dairies;

4.  Fourth COA: Violation of RICO as to DairyAmerica and California Dairies;

5.  Fifth COA: Conspiracy to Violate RICO as to California Dairies; and

6.  Sixth COA: Conspiracy to Violate RICO as to DairyAmerica and California Dairies.

Plaintiffs claim that, based on the two "smoking gun" declarations that they obtained in August and September of 2016 from Declarants, and corroborating documentation from one of the Declarants, the conspiracy to misreport data was broader and more harmful than the TAC currently alleges.  Plaintiffs argue that based on this new evidence, the "conspiracy involved *multiple* forms of misreporting directed at *two* separate government agencies – USDA and CDFA – for the purpose of reducing payments to a *broader* class of dairy farmers."  Pls' Motion at 2 (emphasis in original).

Plaintiffs seek leave to amend their TAC to:

(1) add new allegations on behalf of a new class of plaintiffs – dairy farmers located in the state of California – that Defendants made misrepresentations to the CDFA, namely:

(a) reporting artificially depressed figures;

(b) misreporting skimmed milk product ("Skimmed Milk") sales; and

(c) delaying the reporting of figures;

 (2) add the cooperative members DFA and Land O'Lakes as defendants with respect to claims involving misrepresentations to the CDFA; and

(3) add new allegations involving misrepresentations to the USDA against the current Defendants[4] to account for additional misreporting methods, namely:

    (a) reporting artificially depressed figures;

    (b) misreporting Skimmed Milk sales;

    (c) delaying the reporting of figures; and

    (d) improperly excluding commissions from reports to the USDA.  See FAC.

So in total, the FAC would contain the following causes of action:[5]

1. First COA: Negligent Misrepresentation as to DairyAmerica and California Dairies *for Misrepresentations to USDA*;

2. *Second COA: Negligent Misrepresentation as to DairyAmerica, California Dairies and Proposed Defendants for Misrepresentations to CDFA*;

3. Third COA: Intentional Misrepresentation as to DairyAmerica and California Dairies *for Misrepresentations to USDA*;

4. *Fourth COA: Intentional Misrepresentation as to DairyAmerica, California Dairies and Proposed Defendants for Misrepresentations to CDFA*;

5. Fifth COA: Conspiracy to Violate RICO as to California Dairies *for Misrepresentations to USDA*; and

6. Sixth COA: Conspiracy to Violate RICO as to DairyAmerica and California Dairies *and Proposed Defendants for Misrepresentations to CDFA*. See FAC.


**LEGAL DISCUSSION**

1. Compliance with Rule 16

    The more restrictive "good cause" standard of Rule 16 applies to a motion to amend that is filed after the deadline established for the submission of motions to amend by a scheduling order.

---

[4] Plaintiffs note that the Proposed Defendants cannot be added as defendants with respect to claims involving misrepresentations to the USDA, based on this Court's previous ruling on the applicable statutes of limitations barring such an attempt by Plaintiffs.  See Doc. No. 240.

[5] Changes from the TAC are noted in italics.  In the FAC, Plaintiffs dropped their violation of RICO COAs and pled only amended COAs for conspiracy to violate RICO.

See Mentor Graphics Corp. v. EVE-USA, Inc., 13 F.Supp.3d 1116, 1121 (D. Or. 2014); Jackson v. Laureate, Inc., 186 F.R.D. 605, 606-07 (E.D. Cal. 1999); Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D. N.C. 1987); see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992) (citing *Forstmann* with approval).  The scheduling order of January 16, 2014, (Doc. No. 151), set the deadline for amendment of the complaint as June 30, 2014.  Plaintiffs' motion to amend was filed on February 9, 2017, which is after the limitation period established by the scheduling order.  However, this issue is resolved by the Magistrate Judge's order sanctioning Dairy America and deeming Plaintiffs' claims based on information from Declarants "as if filed shortly after April 26, 2013," which is well before the June 30, 2014 deadline for amendment.  See Doc. No. 474 at 21. Therefore Plaintiffs do not have to meet the "good cause" standard of Rule 16.

Assuming *arguendo* that Plaintiffs do have to meet the "good cause" standard of Rule 16, Plaintiffs are able to do so.  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  Johnson, 975 F.2d at 608.  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end."  Id.

a)  *Failure to Seek Modification of Scheduling Order*

As a preliminary matter, California Dairies argues that Plaintiffs have failed to seek modification of the scheduling order deadline for amendments to pleadings, and this alone justifies denial of Plaintiffs' motion to amend outright, relying on *Johnson*, 975 F.2d at 608-09.  Plaintiffs respond that this argument ignores the fact that Rule 16(b) provides that a party can seek amendment of a complaint after such a deadline has passed so long as the moving party can show good cause, pointing out that this Court granted Plaintiffs' prior motion for leave to amend, which was filed 15 months after the deadline for amendment, and no modification of the scheduling order deadline was sought.  Once again, this issue is resolved by the Magistrate Judge's order sanctioning Dairy America and deeming Plaintiffs' claims based on information from the Declarants as filed shortly after April 26, 2013, which is well before the deadline for amendment.  See Doc. No. 474 at 21.  Therefore there is no need for Plaintiffs to seek modification of the

scheduling order deadline.

However, even assuming *arguendo* that California Dairies' argument is still relevant, Plaintiffs are correct. In *Akey v. Placer Cty.*, 2017 WL 1831944 (E.D. Cal. May 8, 2017), the defendants argued that the plaintiffs' motion to amend should be denied on the grounds that plaintiffs did not include a request to modify the scheduling order, citing to *Johnson*. Id. at *7. The court disagreed with the plaintiffs' reading of *Johnson*, reasoning that "Although [in *Johnson*] the Ninth Circuit has suggested denial may be appropriate on these grounds, it has never actually required such a rigid rule." Id. (citations omitted). The court found that application of such a rigid rule would "likely be inefficient" citing to a decision where a motion to amend was dismissed for failure to file a motion to modify the scheduling order, which only resulted in plaintiffs refiling the motion to amend with the motion to modify, which was a "circuitous result." Id. This Court agrees with *Akey's* analysis of the Ninth Circuit's decision in *Johnson* and will therefore examine the good cause analysis. The Court declines to deny Plaintiffs' motion outright for failure to seek modification of the scheduling order.

### b) *Plaintiffs' Diligence in Obtaining the Discovery at Issue*

The discovery at issue is two declarations from Declarants, former DairyAmerica employees, as well as documents obtained by subpoena from Supervisor Doe. The Court set the deadline for amending the complaint as June 30, 2014. Doc. No. 151. Plaintiffs did not obtain the declarations until August and September 2016 and subsequently obtained additional documentation from Supervisor Doe by subpoena in October 2016.

Plaintiffs assert that due to significant discovery delays and DairyAmerica's misrepresentations, it was impossible for Plaintiffs to have discovered the evidence currently supporting their motion to amend prior to June 30, 2014. Due to a Ninth Circuit appeal and subsequent motions to dismiss, DairyAmerica did not produce its initial disclosures until October 2013. DairyAmerica did not disclose the names of Declarants. When DairyAmerica produced documents in April and May 2014, depositions were stayed until March 2015. At Manager Smith's deposition in June 2015, she incorrectly testified that Declarants were not involved at all in facilitating or working on the reports that were submitted to NASS. As a result, Plaintiffs state

that on July 15, 2016, they presented DairyAmerica with a list of 34 individuals they sought to depose, and Declarants were not included on that list. Plaintiffs argue that due to the job titles held by Declarants and the misrepresentations of DairyAmerica, Plaintiffs could not determine that they possessed relevant information by reviewing DairyAmerica's documents and deposing their senior executives.

Defendants argue that Plaintiffs have not been diligent in seeking the evidence that supports their proposed amendment. DairyAmerica provided Plaintiffs with access to their paper documents in April 2014 which contained its NASS/CDFA reports and underlying transaction documents for the sales reported to those agencies. In May 2014, DairyAmerica provided Plaintiffs with electronic documents, including its repository of Supervisor Doe's electronic records, totaling 51,274 documents, as well as 23,967 documents referencing Manager Bimemiller. California Dairies argues that Plaintiffs "completed review" of DairyAmerica's documents by June 2014.[6] California Dairies also questions why Plaintiffs could not identify Declarants from the document production from DairyAmerica. Defendants argue that while the parties agreed at various points in the litigation to pause depositions, this did not prevent Plaintiffs from reviewing documents, including the emails referencing Declarants, and attempting to contact the Declarants as part of an informal investigation, outside of the formal discovery process.

The Court is not persuaded that Plaintiffs failed to exercise diligence in obtaining the declarations at issue in light of the many discovery stays in this case, the sizeable amount of documents and witnesses involved, and the roadblocks Plaintiffs faced from DairyAmerica in learning about Declarants through discovery. While it is true that this case was originally filed in 2009, DairyAmerica did not include Declarants in its October 2013 initial disclosures. The Court concludes that this omission was prejudicial to Plaintiffs' ability to file claims based on the Declarants' information, as did the Magistrate Judge in this case. The Magistrate Judge ruled that any claims based on information from Declarants, "which were *improperly withheld from*

---

[6] California Dairies cites to a statement by Plaintiffs that they did a "rushed review" of the documents from DairyAmerica in order to try to move to amend prior to the deadline. Doc. No. 238. This statement does not reflect a representation from Plaintiffs that they actually completed reviewing all documents produced in this case by June 2014.

*DairyAmerica's disclosure of April 26, 2013*, shall be treated as if filed shortly after April 26, 2013 for purpose of assessing any defenses based on the timing of filing . . . ." See Doc. No. 474 at 21 (emphasis added).

Further, assuming *arguendo* that Defendants' arguments about diligence still applied, DairyAmerica did not produce documents until April and May 2014, which was the first time Plaintiffs learned that Declarants even existed. Plaintiffs have explained that given Declarants' positions at DairyAmerica, it was challenging to discover that they possessed relevant knowledge: they were not senior executives, did not attend board meetings, did not negotiate sales, did not sign weekly reports for NASS or CDFA, and did not send emails discussing the rules for completing these reports. Shortly after the stay on depositions was lifted in 2015, Plaintiffs deposed Declarants' former manager and specifically inquired about Declarants knowledge. Notably, DairyAmerica does not dispute Plaintiffs' contention that at Manager Smith's deposition in June 2015, she incorrectly stated that Declarants did not have relevant knowledge of reports that Declarants submitted to NASS. DairyAmerica also does not dispute that when Plaintiffs thereafter submitted a list of 34 witnesses they intended to depose, Plaintiffs did not include Declarants. Given the high number of potential witnesses in this complex litigation, it is not unreasonable in these circumstances for Plaintiffs to have prioritized other witnesses during discovery. While Defendants insist that Plaintiffs could have contacted Declarants earlier as part of an independent investigation, the Court is not persuaded. Given the particular timeline and facts of this case, Plaintiffs were diligent.

### c) *Plaintiffs' Diligence in Filing Motion to Amend After Declarations*

Proposed Defendants and California Dairies argue that Plaintiffs failed to diligently move to amend their complaint, since Plaintiffs gathered the declarations at issue in August and September 2016 and did not move to amend their complaint until February 2017. Proposed Defendants rely on *Manriquez v. City of Phoenix*, 654 F. App'x 350 (9th Cir. 2016), in which the Ninth Circuit affirmed the district court's denial of a motion for leave to amend where the plaintiffs waited approximately three months after deposition testimony to file a motion to amend. Id. at 351. The Ninth Circuit found that "Plaintiffs failed to exercise reasonable diligence and the

district court did not abuse its discretion in denying their motion." Id.  California Dairies cites to *Hernandez v. Select Portfolio Servicing, Inc.*, 2016 WL 770869, at *3 (C.D. Cal. Feb. 24, 2016) ("[T]he decision to wait approximately three more months [from when Plaintiff first learned of the new facts] to file this motion [to amend] is not excused by Plaintiff's counsel's workload.") and *Bonneau v. SAP Am., Inc.*, 2004 WL 2714406, at *1 (N.D. Cal. Nov. 29, 2004) (denying leave to amend when Plaintiff's attorneys waited approximately three months to amend after Plaintiff's deposition took place).

Plaintiffs argue that their wait in filing their motion was not unreasonable, given that Plaintiffs secured both declarations approximately one month before a settlement conference scheduled by the Court in October 2016, and settlement negotiations continued through a private mediator until early February 2017.  Plaintiffs point out that Defendants signed a joint stipulation in November 2016 staying discovery to facilitate settlement, which stated in relevant part that "the parties have agreed to engage in good faith settlement negotiations prior to the filing of Plaintiffs' motion for leave to amend the complaint."  Doc. No. 368.  In the joint stipulation, the parties also agreed that "The time period between the conclusion of the Settlement Conference on October 3, 2016 and the Triggering Event[7] shall not be used to support any argument that either party has unduly delayed the prosecution of this case."  Id.  Thereafter, the Court issued an order in December 2016 permitting "a limited stay to facilitate settlement."  Doc. No. 371.  Further, Plaintiffs argue that a four or five-month delay between the acquisition of evidence and filing a motion to amend does not show a lack of diligence.  See Dominguez v. Crown Equip. Corp., 2015 WL 3477079, at *3 (C.D. Cal. June 1, 2015) (finding that "a four month delay between the earliest alleged date on which Plaintiff's should have known of the claim and the date of filing for leave to amend is not particularly long or unreasonable."); Talwar v. Creative Labs, Inc., 2007 WL 1723609, at *6 (C.D. Cal. June 14, 2007) ("Although Plaintiffs did not move for leave to amend at the very first opportunity, the delay from December 2005 to May 2006, is not necessarily

---

[7] Defined as the time when "Defendants have filed an answer to the [FAC] or, alternatively, the Court enters an order denying leave to file a [FAC]."  Doc. No. 368.

unreasonable under the circumstances.").[8]  In *Himmelfarb v. JP Morgan Chase Bank Nat. Ass'n*, 2011 WL 4498975 (D. Haw. Sept. 26, 2011), the court found that a delay of three months was reasonable under Rule 16, given that the cross-claimant had new counsel. Id. at *3.

Here, given that the parties were in settlement negotiations and signed a stipulation that clearly contemplated the upcoming filing of an amended complaint, the Court finds that Plaintiffs' delay between obtaining the declarations in August and September 2016 and moving to amend in February 2017 is not unreasonable.  It is true that in *Manriquez* the Ninth Circuit found that the district court did not abuse its discretion in denying the plaintiffs' motion to amend their complaint, where the plaintiffs waited approximately three months to seek to amend.   However, there is no rule from the Ninth Circuit that waiting three months to amend a complaint is per se unreasonable.  Manriquez, 654 F. App'x at 351.  Further, there are no facts in *Manriquez* that suggest they are analogous to the instant case, where the parties were in settlement negotiations and signed a stipulation.  *Hernandez* and *Bonneau* are also distinguishable.  In *Hernandez*, plaintiff's only justification for waiting approximately three months to amend the pleadings was counsel's workload.  Hernandez, 2016 WL 770869, at *3. In *Bonneau*, the court found plaintiff's counsel's delay unreasonable, given that plaintiff himself had personal knowledge of the claim that his counsel sought to add after reviewing plaintiff's deposition transcript.  Bonneau, 2004 WL 2714406, at *1.  These circumstances are not present in this case. Given the unique circumstances of settlement negotiations and a stipulation in this case, the Court finds that Plaintiffs exercised reasonable diligence in filing their motion to amend.

        2.  Compliance with Rule 15

        "Only after the moving party has demonstrated diligence under Rule 16 does the court apply the standard under Rule 15 to determine whether the amendment was proper."  Hood v. Hartford Life & Acc. Ins. Co., 567 F. Supp. 2d 1221, 1224 (E.D. Cal. 2008).  Rule 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires."  Fed. R. Civ. Pro. 15(a)(2); C.F. v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 (9th Cir. 2011); Zucco Partners, LLC v. Digimarc Ltd., 552 F.3d 981, 1007 (9th Cir. 2009).  "This policy is to be applied with

---

[8] The Court notes that these cases cited by Plaintiff were decided under Rule 15 and not Rule 16.

extreme liberality." C.F., 654 F.3d at 985; Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). However, a court may deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of amendment." Zucco, 552 F.3d at 1007; Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013) (Courts may decline to grant leave to amend when there is strong evidence of futility of amendment.); U.S. ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). Under the futility of amendment analysis, the Court will first examine the joinder of new parties under Rule 20.

A. Satisfaction of Rule 20 Requirements for Leave to Join New Plaintiffs

Under Rule 20(a)(1), plaintiffs may be joined if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Rule 20 regarding permissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits. Cuprite Mine Partners LLC v. Anderson, 809 F.3d 548, 552 (9th Cir. 2015); League to Save Lake Tahoe v. Lake Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1977). Courts "must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir.2000) (internal quotation marks omitted). The "interests of justice" are not always served by joinder of the plaintiffs. Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997). "Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." Id. Joinder of plaintiffs is not appropriate where "[e]ach claim raises potentially different issues, and must be viewed in a separate and individual light by the Court." Id.

16

Here, joinder affects Plaintiffs' first category of amendments: to add new allegations on behalf of a new class of plaintiffs – dairy farmers located in the state of California – that Defendants made misrepresentations to the CDFA, namely (a) reporting artificially depressed figures, (b) misreporting Skimmed Milk sales, and (c) delaying the reporting of figures. See FAC. Joinder also affects Plaintiffs' second category of amendments: to add the cooperatives DFA and Land O'Lakes as defendants with respect to claims involving misrepresentations to the CDFA. See FAC. However, as addressed below, since Plaintiffs cannot add the California class, they also cannot add the Proposed Defendants.

Defendants challenge joinder of the California plaintiffs since the California plaintiffs' claims are "based on different alleged facts, different reporting obligations under different regulations to a different government agency." Defendants argue that the California plaintiffs' claims do not arise out of the same transaction or occurrence as Plaintiffs' claims of misreporting to the USDA. Plaintiffs argue that the joinder of the new California class of plaintiffs is proper since the proposed claims show that the conspiracy to misreport data was broader and more damaging than originally uncovered. Plaintiffs cite to no cases to support the joinder of the California plaintiffs.

To meet the first requirement of permissive joinder, Plaintiffs' claims must arise from "the same transaction, occurrence, or series of transactions or occurrences...." Fed. R. Civ. P. 20(a)(1)(A). "By its terms, this provision requires factual similarity in the allegations supporting Plaintiffs' claims." Visendi v. Bank of Am., N.A., 733 F.3d 863, 870 (9th Cir. 2013); see also Coughlin, 130 F.3d at 1350 ("The first prong [of permissive joinder], the 'same transaction' requirement, refers to similarity in the factual background of a claim.")

No such factual similarity exists here. Notably, Plaintiffs do not dispute that the California plaintiffs' claims are based on different reporting obligations under different regulations to a different government agency. Plaintiffs' claims against the USDA involve the inappropriate inclusion of forward pricing. It is undisputed among the parties that the inclusion of forward pricing is allowed by the CDFA. The facts involved in the California plaintiffs' claims require consideration of different facts, different reporting obligations under different regulations, to a

different government agency.  Further, the alleged misreporting to CDFA and the alleged forward

pricing misreporting to the USDA are pled as separate conspiracies, and the fact that they are both

RICO claims is not enough.  Therefore, the Court finds that current Plaintiffs cannot join a new

class of California plaintiffs since their claims do not arise "out of the same transaction,

occurrence, or series of transactions or occurrences."  Plaintiffs' request to amend the TAC to add

California Plaintiffs with their CDFA-related claims will be denied.[9]  Fed. R. Civ. P. 20(a)(1)(A).

B.  <u>No Existing Plaintiffs Have Claims Based on CDFA Misrepresentation</u>

Since the Court will deny Plaintiffs' request to add California plaintiffs with their CDFA-

related claims, the Proposed Defendants will not be added as parties to this case.  The only

proposed claims stated against the Proposed Defendants are CDFA-related.  Additionally the

CDFA claims brought by California plaintiffs cannot proceed against the current Defendants in

this case since the Court is denying joinder of the California plaintiffs.

The Court is now faced with Plaintiffs' proposed claims against current Defendants for

additional forms of misreporting to the USDA.  The Court will examine whether Plaintiffs can

amend their USDA claims below.

C.  <u>Statute of Limitations</u>

Plaintiffs' proposed USDA allegations pertain to the same time period as their current

complaint: from January 1, 2002 through April 30, 2007.  There is a two-year statute of limitations

for negligent misrepresentation claims; a three-year statute of limitations for intentional

misrepresentation claims; and a four-year statute of limitations for violations of RICO.  <u>See</u> <u>W.</u>

<u>Filter Corp. v. Argan, Inc.</u>, 540 F.3d 947, 951 (9th Cir. 2008) ("In California, the statute of

limitation . . . [is] three years for a fraud or intentional misrepresentation claim, and two years for

a negligent misrepresentation claim."); <u>A. Stucki Co. v. Buckeye Steel Castings Co.</u>, 963 F.2d

360, 364 (Fed. Cir. 1992) ("A four-year statute of limitations applies to RICO claims.").

The parties agree as to the legal framework for a determination of the date of accrual of a

claim. The parties cite <u>Nogart v. Upjohn Co.</u>, 21 Cal.4th 383 (1999), which holds that a claim

accrues when a plaintiff "at least suspects that someone has done something wrong to him,

---

[9] The Court's ruling has no bearing on the California plaintiffs' ability to file a separate case.

'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding.'" Id. at 398-399 (citation omitted). The parties strongly dispute whether the facts support a finding of delayed discovery or fraudulent concealment.

"While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1112 (1988). "To the extent that defendants are arguing that plaintiffs actually knew or should have known of the alleged injury well before [the relevant date], that is a question of fact that is not appropriately decided at the pleading stage, where the Court's inquiry is limited to reviewing and accepting as true the allegations in plaintiffs complaint." TC Rich, LLC v. Pacifica Chem. Inc., 2015 WL 12532176, at *7 (C.D. Cal. Oct. 9, 2015); see also Bastian v. Cnty. of San Luis Obispo, 199 Cal. App. 3d 520, 527 (1988) ("Once belated discovery is pleaded, the issue of whether plaintiff exercised reasonable diligence in discovering the negligent cause of the injury is a question of fact.")

Defendants argue that the statute of limitations bars Plaintiff's amendments. First, Dairy America has been sanctioned by the Magistrate Judge for improperly withholding Declarants' names in their initial disclosure of April 26, 2013. See Doc. No. 474 at 21. The Magistrate Judge ruled that any claims based on information from Declarants "shall be treated as if filed shortly after April 26, 2013 for the purpose of assessing any defenses based on the timing of filing, *including the statute of limitations*." Id. (emphasis added). Irrespective of whether Plaintiffs filed their claims shortly after April 26, 2013 or on February 9, 2017, the Court finds that Plaintiffs have adequately pled delayed discovery.

Plaintiffs rely on California's "delayed discovery rule," which is exemplified in Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797 (2005). "In order to rely on the discovery rule for delayed accrual of a cause of action, 'a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" Id. at 809 (quoting McKelvey v. Boeing North American, Inc., 74

Cal.App.4th 151, 160 (1999).  The *Fox* Court observed that a cause of action accrues when the "plaintiff discovers, or has reason to discover, [a factual basis for the elements of a] cause of action."  Fox, 35 Cal.4th at 807. The court held that the factual basis for the causation element of the new cause of action could not have been known until the deposition of the surgeon defendant revealed the facts of the medical equipment malfunction.  See id. at 811.

In applying the delayed discovery rule in this context, the Plaintiffs assert that they had no knowledge of the misconduct underlying their additional USDA misreporting claims until they spoke with Declarants in August 2016 and obtained documents from Manager Doe in October 2016.  Plaintiffs assert that no public document, publication or report suggests the additional forms of misreporting to the USDA, in contrast to *The Milkweed* article from March 2007 and subsequent USDA investigation that put Plaintiffs on notice of the forward pricing issue. Plaintiffs cite the many discovery stays in this case that led to DairyAmerica providing access to documents in April and May of 2014, and the first deposition was not taken until June 2015, a year after the deadline for amendment.  Plaintiffs state that DairyAmerica's document production did not include copies of critical documents created by Supervisor Doe, that they later obtained by subpoena directly from Supervisor Doe.  Further, at Manager Smith's deposition in June 2015, she incorrectly testified that Declarants were not involved at all in facilitating or working on the reports that were submitted to NASS.  Plaintiffs concede that the identities of the Declarants were contained in the records they gained access to in April and May 2014.  However, Plaintiffs state that there were unable to determine that the Declarants possessed relevant information by reviewing documents and deposing senior executives, but instead Plaintiffs discovered the Declarants through their own investigation of DairyAmerica's former employees.

DairyAmerica argues that Plaintiffs have been on notice of the possibility of other reporting problems with NASS, citing a number of public sources, including a February 2007 article from *The Milkweed* which reported that "anecdotal reports for [Dry Milk] in the U.S. indicate the price, the real price is $1.50 per pound. What is wrong with the NASS survey?" Nangia Decl., Ex. J.  Defendants argue that Plaintiffs were on notice and should have investigated the possibility of additional USDA claims much sooner.

The key questions here are: "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." <u>Fox</u>, 35 Cal.4th at 809. Under the first question, Plaintiffs obtained the declarations in August/September 2016 and documents from Supervisor Doe after issuing her a subpoena in October 2016. Plaintiffs obtained these declarations as a result of an investigation that Plaintiffs conducted their own. Plaintiffs alleged that they did not suspect the additional misreporting methods to the USDA until Plaintiffs gathered this evidence in August to October 2016. Under the second question, it is undisputed that Plaintiffs did not know of Declarants' names or employment at DairyAmerica prior to receiving documents from DairyAmerica in April-May 2014. It is undisputed that DairyAmerica did not include Declarants' names on their initial disclosures, made on April 26, 2013. Plaintiffs state that they could not tell the extent of Declarants' knowledge of DairyAmerica's reporting procedures for several reasons. First, since Declarants did not sign the reports, have executive job titles, or have their names listed on the initial disclosures, it was not apparent from the discovery that Declarants had knowledge of reporting. Second, when depositions began in June 2015 after the deposition stay was lifted, Manager Smith, who Declarants had directly reported to, denied that Declarants had certain relevant knowledge. Plaintiffs maintain that this testimony was incorrect, and DairyAmerica does not dispute this. Third, based on the information Plaintiffs learned from DairyAmerica through discovery, Plaintiffs prepared a list of 34 individuals to depose, and Plaintiffs did not include Declarants on that list.

While the Court recognizes that Defendants' position is that Plaintiffs could have done its own investigation at any time, given the circumstances in this case, including the lack of forthcoming and accurate information from DairyAmerica in discovery, the Court finds that Plaintiffs showed reasonable diligence in obtaining the declarations at issue, which led to the discovery of the new USDA allegations in the FAC. Further, the Court has reviewed the public documents that DairyAmerica argues should have put Plaintiffs on notice a long time ago, and the Court is not persuaded that the documents DairyAmerica cites to were adequate to put Plaintiffs on notice of additional forms of USDA misreporting. The Court finds that Plaintiffs have

sufficiently pled the delayed discovery rule. Plaintiffs' additional USDA claims survive

Defendants' attack on the basis of the statute of limitations at this stage.[10]

D. Whether the Filed Rate Doctrine Bars Claims by Plaintiffs Arising from Alleged
   Additional forms of Misreporting to the USDA

Defendants argue that the new NASS misreporting allegations are barred by the filed rate

doctrine, because the USDA has neither reviewed nor "sufficiently rejected" the applicable

minimum milk prices based on the new allegations of NASS misreporting. Defendants emphasize

that the USDA rejected the rates solely on the basis of the forward pricing issue, and Plaintiffs

cannot now go beyond the forward pricing claim. Plaintiffs respond that the Ninth Circuit and this

Court have already made clear that the USDA has explicitly rejected the rate, and once the rate is

rejected, they are free to bring their claims.

"The [filed rate] doctrine is a judicial creation that arises from decisions interpreting

federal statutes that give federal agencies exclusive jurisdiction to set rates for specified utilities,

originally through rate-setting procedures involving the filing of rates with the agencies." E. & J.

Gallo Winery v. Encana Corp., 503 F.3d 1027, 1033 (9th Cir. 2007). "At its most basic, the filed

rate doctrine provides that state law, and some federal law (*e.g.* antitrust law), may not be used to

invalidate a filed rate nor to assume a rate would be charged other than the rate adopted by the

federal agency in question." Wah Chang v. Duke Energy Trading & Mktg., LLC, 507 F.3d 1222,

1225 (9th Cir. 2007) (quoting Transmission Agency v. Sierra Pac. Power Co., 295 F.3d 918, 929–

30 (9th Cir. 2002)). "It has generally been recognized that there are three 'purposes' or

'governmental interests' which justify or support the filed rate doctrine . . . . [the first reason] for

the doctrine concerned stabilizing rates and preventing pricing discrimination amongst ratepayers.

Once it was determined that federal law required the primacy of filed rates and tariffs, there

developed two additional and related justifications for the doctrine, *i.e.*, federal preemption (or the

supremacy of federal law) and deference to federal agency expertise (or primary jurisdiction)."

---

[10] Since the delayed discovery rule applies, the Court need not address whether the doctrine of fraudulent concealment applies in this case. See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, Prod. Liab. Litig., 2010 WL 6419562, at *7 (C.D. Cal. Dec. 9, 2010) ("Because the Court finds that the applicability of the discovery rule prevents dismissal of Chang's claims on statute of limitations grounds at this stage, the Court need not address her alternative argument that the statute of limitations should be equitably tolled due to fraudulent concealment.")

Carlin v. DairyAmerica, Inc., 705 F.3d 856, 867–68 (9th Cir. 2013) (citations omitted).

The filed rate doctrine does not apply if the agency has rejected the rate. "The Supreme Court has said that the filed rate doctrine does not apply to bar a private litigant's rate-related claims if the rate has been 'suspended' or 'set aside' by the relevant agency." Id. at 874 (citing to Keogh v. Chicago & N.W. Ry. Co., 260 U.S. 156, 163 (1922) which states that "[u]nless and until suspended or set aside, this rate is made, for all purposes, the legal rate . . .")

Here, Plaintiffs seek to add new allegations involving misrepresentations to the USDA against current Defendants to account for additional misreporting methods, namely (a) reporting artificially depressed figures, (b) misreporting Skimmed Milk sales, (c) delaying the reporting of figures, and (d) improperly excluding commissions from reports to the USDA. See FAC.

This Court originally dismissed Plaintiffs' claims of forward pricing to the USDA based on the filed rate doctrine, and Plaintiffs appealed. The Ninth Circuit agreed that the filed rate doctrine applies to the minimum rates for raw milk set under FMMOs pursuant to the AMAA. Carlin, 705 F.3d at 869. However, the Ninth Circuit held that "the filed rate doctrine does not preempt or otherwise pose a preclusive bar to plaintiffs' lawsuit, because (1) the federal agency itself determined that the FMMO prices were incorrect and (2) the policy considerations behind the doctrine do not justify applying the doctrine as a bar in this case." Id. at 874. The Ninth Circuit held that "the USDA's actions here constitute a sufficient rejection such that the filed rate doctrine is not a bar." Carlin, 705 F.3d at 878.

There is no question that the filed rate has been rejected for the relevant time period in this case. Id. While it is true that there is no evidence that the agency rejected the filed rate for any other reason than forward pricing, Defendants have not cited to any cases limiting a litigant's claims to the only reason the agency rejected the rate. The additional forms of misreporting to the USDA that Plaintiffs seek to add pertain to the exact same time period as the current class period. The Court does not find it surprising or unreasonable that in the course of discovery, Plaintiffs have allegedly uncovered a broader misreporting scheme than originally alleged.

The Court does not find it unreasonable that an agency might find one reason to reject a filed rate, but a litigant with time and money to spend on additional discovery might uncover

23

1   additional misdeeds that led to the filed rate being incorrect.  Of note, in the USDA's inspection

2   report, it states that NASS calculated a $50 million loss to producers, but the "OIG did not attempt

3   to validate the $50 million loss as it was beyond the scope of this review."  USDA Report at 2.

4   Indeed, were the Court to find that a litigant is limited solely to the reason that the agency rejected

5   the filed rate, this could lead to the perverse incentive for the entity being investigated by an

6   agency to hide as much as possible and thereby limit their liability for misdeeds that damaged

7   those affected by an incorrect filed rate.

8          Accordingly, the Court does not find that Plaintiffs are limited in this case to the sole

9   reason that the agency rejected the filed rate in bringing their claims, and declines to apply the

10  filed rate doctrine to Plaintiffs' amendments.  See Keogh, 260 U.S. at 163; Carlin, 705 F.3d at

11  874.

12         E.  Whether Primary Jurisdiction Should be Applied Here

13         Defendants argue that NASS has primary jurisdiction over the complex reporting issues

14  underlying Plaintiffs' additional USDA misreporting claims and that the Court should refer the

15  claims to NASS for review.  Plaintiffs argue that this doctrine is inapplicable to this case.

16         "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a

17  complaint without prejudice pending the resolution of an issue within the special competence of

18  an administrative agency. A court's invocation of the doctrine does not indicate that it lacks

19  jurisdiction. *Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993). Rather, the doctrine is a 'prudential'

20  one, under which a court determines that an otherwise cognizable claim implicates technical and

21  policy questions that should be addressed in the first instance by the agency with regulatory

22  authority over the relevant industry rather than by the judicial branch. Primary jurisdiction applies

23  in a limited set of circumstances."  Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir.

24  2008).  The doctrine is not designed to "secure expert advice" from agencies "every time a court is

25  presented with an issue conceivably within the agency's ambit."  Brown v. MCI WorldCom

26  Network Servs., 277 F.3d 1166, 1172 (9th Cir. 2002) (internal quotation marks and citation

27  omitted). "Instead, it is to be used only if a claim 'requires resolution of an issue of first

28  impression, or of a particularly complicated issue that Congress has committed to a regulatory

agency,' Clark, 523 F.3d at 1114 (citing Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 442, 27 S.Ct. 350, 51 L.Ed. 553 (1907)), and if "'protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme,'" id. (quoting United States v. Gen. Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir.1987)). "The doctrine of primary jurisdiction is not equivalent to the requirement of exhaustion of administrative remedies. Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed. In contrast, the doctrine of primary jurisdiction is committed to the sound discretion of the court when protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 780–81 (9th Cir. 2002) (internal quotation marks and citations omitted).

The Court in its discretion declines to rule that Plaintiff's additional USDA misreporting allegations implicates questions that should be addressed in the first instance by NASS/the USDA rather than by this Court. While the Court recognizes that Plaintiff's additional USDA misreporting allegations involve some technical and complicated issues, the Court does not find the allegations to be so technical that the Court should refer these allegations to the relevant agency. Further, NASS has no special competence to consider allegations of deliberate, fraudulent misreporting and RICO claims. The Court therefore will not apply the doctrine of primary jurisdiction.

F. Whether Section 54239 Bars Claims Against California Dairies

California Dairies argues that Section 54239 of the California Food and Agricultural Code shields California Dairies from Plaintiffs' claims. This Court has already rejected this argument. On May 2, 2016, this Court held:

> California Dairies has failed to find legal authority that supports its contention of immunity under section 54239 against liability for the acts of its employees as directors and officers of DairyAmerica. The court agrees with Plaintiffs who contend that extending immunity to constituent members of a marketing cooperative who would benefit by otherwise unlawful price manipulation and who occupy positions of authority in the cooperative that would allow them to undertake such price manipulation would constitute an invitation to mischief. The

court also agrees with Plaintiffs that, absent clear case authority, a court may not presume that the immunity provided by section 54239 is intended to extend to the activities of the constituent members who function in positions of authority within the marketing cooperative. The court finds that California Dairies' contention that they are shielded from Plaintiffs' claims by operation of section 54239 is unsupported by case authority and is logically unpersuasive.

Doc. No. 303 at 8-9. Once again, the Court rejects California Dairies' argument based on Section 54239.

G. Whether Plaintiffs Have Adequately Stated Amended USDA Claims

Defendants argue that Plaintiffs' claims are futile and thus amendment should be denied. Further, California Dairies argues that the new claims should not be added against them since they are only a member cooperative of DairyAmerica and states that Plaintiffs have not met the standard required by Federal Rule of Civil Procedure 9(b). Plaintiffs argue that Defendants are trying to argue the evidence, when instead the court is supposed to construe the complaint in the light most favorable to the Plaintiffs, taking all of Plaintiffs' allegations as true and drawing all reasonable inference in their favor under the standard for motions to dismiss.

The Court may reject a motion for leave to amend if the proposed amendment would be futile. Carrico v. City & Cty. Of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011). A proposed amendment is futile where it would be subject to dismissal if allowed. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998); see also Jones v. Community Redevelopment Agency of City of Los Angeles, 733 F.2d 646, 650 (9th Cir. 1984) (denying leave to amend complaint where a proposed complaint would continue to fail to state a claim).

1. Negligent Misrepresentation as to Defendants

"The elements of negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'" Wells Fargo Bank, N.A. v. FSI, Fin. Sols., Inc., 196 Cal. App. 4th 1559, 1573 (2011) (citation omitted).

Plaintiffs seek to amend their negligent misrepresentation claim to allege that Defendants made other types of misrepresentations to the USDA (in addition to forward pricing) that damaged

26

Plaintiffs, namely: (a) reporting artificially depressed figures; (b) misreporting Skimmed Milk sales; (c) delaying the reporting of figures; and (d) improperly excluding commissions from reports to the USDA.  See FAC at 93-94.  Plaintiffs have adequately pled that Defendants made misrepresentations of material fact by making additional types of misrepresentations to the USDA, that Defendants did not have reasonable ground for believing the misrepresentations to be true, that Defendants had intent to induce reliance on the misrepresentations, and resulting damage to Plaintiffs:

> Defendants and Co-Conspirators intended and knew that the Dry Milk prices that DairyAmerica reported to NASS would be used to set the prices that were paid to USDA Subclass members for the purchase of raw milk . . . [t]he Dry Milk prices improperly reported by Defendants and Co-Conspirators had the direct effect of lowering the raw milk prices calculated by USDA using FMMO formulas. Members of the USDA Subclass justifiably and reasonably relied to their detriment on the prices set by USDA under the FMMOs as being accurate prices calculated based on the correct reporting of prices and volumes to NASS.  Such reliance was forseeable and intended by Defendants and Co-Conspirators [and resulted in damages to the USDA Subclass].

Id.  Given the adequate pleadings, the Court does not find Plaintiffs' additional allegations of misreporting as part of their existing negligent misrepresentation claim to be futile.

### 2. Intentional Misrepresentation as to Defendants

"[T]he elements for an intentional-misrepresentation, or actual-fraud, claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  UMG Recording, Inc. v. Bertelsmann AG, 479 F.3d 1078, 1096 (9th Cir. 2007).

Plaintiffs seek to amend their intentional misrepresentation claim to allege that Defendants made other types of intentional misrepresentations to the USDA (in addition to forward pricing) with knowledge of falsity, namely: (a) reporting artificially depressed figures; (b) misreporting Skimmed Milk sales; (c) delaying the reporting of figures; and (d) improperly excluding commissions from reports to the USDA.  See FAC at 96-98.  Plaintiffs have adequately pled the elements of intentional misrepresentation by further alleging:

> Defendants and Co-Conspirators knew that, and intended that, the prices that DairyAmerica reported to NASS would be used in FMMO formulas to set the prices that were paid to USDA Subclass members for the purchase of raw milk.

Defendants and Co-Conspirators knew that, and intended that, the prices paid to USDA Subclass members for the purchase of raw milk would be artificially depressed when Defendants and Co-Conspirators conspired to instruct and instructed DairyAmerica to (1) include forward pricing sales in weekly reports to NASS; (2) report sales of SMP in weekly reports to NASS; (3) delay the reporting of select sales prices in weekly reports to NASS; (4) report artificially-discounted export prices in weekly reports to NASS; and (5) deduct commissions and brokers fees from weekly reports to NASS . . . . The NFDM prices improperly reported by Defendants and Co-Conspirators had the direct effect of lowering the raw milk prices calculated by USDA using FMMO formulas. Members of the USDA Subclass justifiably and reasonably relied to their detriment on the prices set by USDA under the FMMOs as being accurate prices calculated based on the correct reporting of prices and volumes to NASS. Such reliance was foreseeable and intended by Defendants and Co-Conspirators.

Id. at 97-98.

Further, claims sounding in fraud are subject to heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that a claim sounding in fraud "must state with particularity the circumstances constituting fraud." To satisfy Rule 9(b), a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). California Dairies argues that Plaintiffs have not met the Rule 9(b) standard in regards to their involvement in any fraud. However, Plaintiffs have adequately pled the "who, what, where, when, and how" of the charged misconduct against both DairyAmerica and California Dairies. The Court reiterates its prior analysis which applies to this amendment as well:

To the extent California Dairies relies on the enhanced specificity requirements for pleading a fraud-related claim provided by F.R.C.P. 9(b), that argument also fails because it is not the specificity of Plaintiffs' intentional misrepresentation claim that California Dairies is actually challenging, it is the weight of evidence supporting it. To satisfy Rule 9(b), a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). Plaintiffs' TAC – again interpreted liberally in favor of the nonmoving party – alleges that one or more of a short list of named officers of California Dairies functioning on the board of directors of DairyAmerica jointly made the decision to misreport NFDM sales prices for NFDM on weekly NASS reports during the class period by improperly including sales data from forward sales contracts. Nothing more is required by Rule 9(b).

See Doc. No. 303 at 11. Here, Plaintiffs have alleged that one or more of a short list of named officers of California Dairies functioning on the board of directors of DairyAmerica jointly made the decision about what to report to NASS during Board meetings and communications. See, e.g., FAC 74-84. Therefore at the pleading stage, the Court does not find Plaintiffs' additional

allegations of intentional misrepresentation to be futile and Plaintiffs have met the requirements of Rule 9(b).

### 3. Conspiracy to Violate RICO as to California Dairies

To adequately list the elements of RICO conspiracy, "an indictment need only charge—after identifying a proper enterprise and the defendant's association with that enterprise—that the defendant knowingly joined a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity." United States v. Glecier, 923 F.2d 496, 500 (7th Cir.1991); see also 18 U.S.C. § 1962(d); United States v. Tille, 729 F.2d 615, 619 (9th Cir.1984) ("Proof of an agreement, the objective of which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of section 1962(d).") The indictment need not allege overt acts, nor predicate acts that the defendant agreed personally to commit." Glecier, 923 F.2d at 500."

Plaintiffs have adequately met these requirements in alleging the additional forms of misreporting to the USDA. See FAC at 101-109. In relevant part, Plaintiffs allege, among other facts in support of a RICO conspiracy:

> Member Defendants and Co-Conspirators knew they were defying explicit reporting instructions from NASS, and thus reporting sales figures that were ineligible or artificially-discounted, when they conspired to instruct and instructed the Enterprise to (1) include forward pricing sales in weekly submissions to NASS; (2) report sales of SMP in weekly reports to NASS; (3) delay the reporting of select sales prices in weekly reports to NASS; (4) report artificially-discounted export prices in weekly reports to NASS; and (5) deduct commissions and brokers fees from weekly reports to NASS. The misreporting constituted a pattern of racketeering activity in the form of repeat violations of the mail and wire fraud statutes; each week for multiple years, at the direction of Member Defendants and Co-Conspirators, DairyAmerica transmitted misrepresentations to NASS by mail or electronically in order to obtain financial gain and cause financial loss to farmers.

Id. at 107-108. Therefore at the pleading stage, the Court does not find Plaintiffs' additional allegations of conspiracy to violate RICO to be futile.

### H. Prejudice and Delay

Defendants argue that courts in this district have found that "prejudice exists where amendment of the complaint 'adds new parties' and 'where the amendment would require expensive and time consuming discovery,'" citing Carson v. City of Bakersfield, 1984 WL 6585,

at *2 (E.D. Cal. Aug. 29, 1984) (citation omitted).  As a preliminary matter, Plaintiffs' new claims have been backdated to shortly after April 26, 2013 by the Magistrate Judge.  See Doc. No. 474 at 21.  Therefore on this basis alone, the Court does not find prejudice or delay.

However, even assuming *arguendo* that Plaintiffs' new claims had not been backdated, the Court still finds no undue prejudice or delay.  In *Carson*, the facts are distinguishable since the plaintiff requested to amend to complaint on the eve of trial, which the court found added to the prejudice in that case.  Id. at *2.  Here, no trial date has even been set in this case and the parties have not begun to submit briefing on class certification.  Further, in this case the Court is not allowing the addition of new parties.  Defendants cite to the length of time this case has been in litigation and the strain this causes on the case: memories have faded, witnesses have passed away, witnesses have retired, and some relevant documents no longer exist.  Defendants argue that an amendment would considerably increase litigation costs and require a further extension and/or reopening of discovery that will delay the case.  While the Court recognizes that this case was filed in 2009, given the history of this case, with an appeal to the Ninth Circuit, motions to dismiss, various discovery delays, documents not produced by DairyAmerica until 2014 and depositions not taken until 2015, the parties are now in the position of litigating a case with a protracted timeline.  The Court does not find undue prejudice to Defendants in this case.

Defendants also argue that allowing amendment will cause undue delay.  Plaintiffs argue that any delay will not be "undue."  As already addressed earlier in this opinion, Plaintiffs have pled valid reasons supporting diligence and delayed discovery in this case.  While it is likely true that amendment will cause some amount of delay in this case, given the unique circumstances already addressed by the Court that Plaintiffs have encountered in discovery, the Court does not find that any delay will be "undue." Any delay is arguably caused by Dairy America's actions in failing to follow the Rule 26 requirements when making their initial disclosures.

I. Prior Amendments

Defendants argue that Plaintiffs have already revised this complaint four times, and this should weigh against allowing the amendment.  Plaintiffs argue that if Defendants had not concealed evidence from them, they would have known of these critical Declarants much earlier.

Given the history of this case and when Plaintiffs were able to discover critical information and witnesses, while the Court gives some weight to the prior amendments, the Court does not find that the prior amendments outweigh allowing the current amendment.

J.     Payment by Plaintiffs of California Dairies' Additional Discovery Costs

California Dairies asks that if the Court grants leave to amend, that the Court order Plaintiffs to pay for California Dairies' additional discovery costs. California Dairies cites to <u>Gen. Signal Corp. v. MCI Telecommunications Corp.</u>, 66 F.3d 1500, 1514 (9th Cir. 1995), in which the Ninth Circuit stated that "Rule 15 does not explicitly permit the imposition of costs or sanctions by the district court. However, we have held that a district court, in its discretion, may impose costs pursuant to Rule 15 as a condition of granting leave to amend in order to compensate the opposing party for additional costs incurred because the original pleading was faulty." <u>Id.</u>  Here, the Court does not find that any additional discovery costs will be incurred because Plaintiffs' original pleading was not faulty.  Therefore the Court declines to award discovery costs.[11]

**CONCLUSION**

Based on the analysis above, the Court will grant Plaintiffs leave to amend their USDA claims to include additional allegations against Defendants of misreporting, namely: (a) reporting artificially depressed figures; (b) misreporting Skimmed Milk sales; (c) delaying the reporting of figures; and (d) improperly excluding commissions from reports to the USDA.

**II.     PLAINTIFFS' MOTION TO STRIKE**

Plaintiffs filed a motion to strike the expert report of Stuart Harden (the "Report") filed by DairyAmerica in support of its opposition and all references to the Report in DairyAmerica's opposition.  Plaintiffs move to strike this motion under Federal Rules of Civil Procedure 12(f), which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12.  DairyAmerica argues that the Report was attached to a motion briefing, not a pleading, and therefore a motion to

---

[11] Further, even if the Court did find fault with Plaintiffs' original pleading, the Ninth Circuit has made it clear that the imposition of costs under Rule 15 is purely discretionary.  <u>Gen. Signal Corp.</u>, 66 F.3d at 1514.

31

strike the Report is procedurally improper.

"Rule 12(f) provides that 'the court may order stricken from any *pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter'. . . Under the express language of the rule, only pleadings are subject to motions to strike." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983) (citation omitted; emphasis in original); see also Hernandez v. Smith, 2015 WL 4253847, at *4 (E.D. Cal. July 13, 2015) (denying plaintiff's motion to strike defendant's expert declaration attached to defendant's summary judgment motion as improperly raised under Rule 12(f) which applies only to pleadings); Harris v. Rios, 2014 WL 1247082, at *2 (E.D. Cal. Mar. 25, 2014) ("Plaintiff may not use Rule 12(f) to attack Defendants' motion. Matters outside the pleadings are normally not considered on a motion to strike."); Winters v. Jordan, 2011 WL 5512671, at *2 (E.D. Cal. Nov. 10, 2011) ("Here, plaintiffs' Rule 12(f) motion to strike seeks to strike materials that are not pleadings or contained in pleadings. Accordingly, plaintiff's motions to strike are denied.")

DairyAmerica's Report is neither a pleading nor is it contained in a pleading. Instead, the Report is attached to DairyAmerica's opposition briefing. Therefore, the Court will decline to strike DairyAmerica's Report. Additionally, the Court did not find the Report necessary for the resolution of Plaintiff's motion to amend, and will also deny Plaintiff's motion to strike the Report as moot.

///
///
///
///
///
///
///
///
///
///

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' request to amend the TAC (Doc. No. 377) to add new allegations of misreporting to the USDA against current Defendants is GRANTED;

2. Plaintiffs' request to amend the TAC to add a California Plaintiff and class bringing CFDA claims against current Defendants and Proposed Defendants is DENIED;[12] and

3. Plaintiffs' request to strike the expert report of Stuart Harden (Doc. No. 399) is DENIED.

IT IS SO ORDERED.

Dated: __August 24, 2017__      _____

                                 SENIOR DISTRICT JUDGE

---

[12] Nothing in this Court's order prohibits the California plaintiffs from filing these claims as a separate case.