UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD CARLIN, JOHN RAHM, PAUL ROZWADOWSKI and DIANA WOLFE, individually and on behalf of themselves and all others similarly situated,<br><br>                     Plaintiffs,<br>    v.<br><br>DAIRYAMERICA, INC., and CALIFORNIA DAIRIES, INC.<br>                     Defendants | Case No. 1:09-cv-00430-AWI-EPG<br><br>ORDER DENYING DEFENDANT DAIRYAMERICA INC'S MOTION TO COMPEL PLAINTIFFS' RETAINER AGREEMENTS<br><br>(ECF Nos. 438, 469) |

      Defendant DairyAmerica, Inc. ("DairyAmerica") has filed a motion to compel Plaintiffs, Gerald Carlin, John Rahm, Paul Rozwadowski and Diana Wolfe ("Plaintiffs"), to produce retainer agreements between class counsel and class representatives. (ECF No. 469). Plaintiffs have filed a response in opposition. (ECF No. 443-1). The Court held oral argument on July 26, 2017, (ECF No. 447, 451), and took the matter under advisement.

      For the following reasons, the motion to compel (ECF No. 469) is DENIED.

**A. Discovery Dispute Background**

      DairyAmerica's third request for production ("RFP") of documents contain the following requests:

> RFP 8: All Documents relating to the manner in which You became a party to this Action, including, but not limited to advertisements or news articles, solicitations, emails, notices, or correspondence.
>
> RFP 9: All Documents that refer or relate to the payment of attorneys' fees, expenses, and costs with respect to this Action.
>
> RFP 10: All Documents that refer or relate to who will advance and/or who is responsible for payment of the costs and expenses incurred in connection with this Action.
>
> RFP 11: All Documents that refer or relate to Your responsibilities as a proposed class representative.

> RFP 12: All Documents that refer or relate to whether a fee in this Action will be shared with any person or entity not a member of Your attorneys' law firms.
>
> RFP 13: All Documents that refer or relate to the fee sharing arrangement(s) between or among any law firm with respect to this Action including but not limited to: (i) Cohen Milstein Sellers & Toll, PLLC; (ii) Berman DeValerio; (iii) Keller Rohrback L.L.P.; (iv) Hudson, Mallaney, Shindler and Anderson, PC (a/k/a Hudson Law Firm); (v) Tostrud Law Group, P.C; (vi) Hagens Berman Sobol Shapiro LLP; and (vii) Freedman Boyd Hollander Goldberg Urias & Ward PA.
>
> RFP 14: All Documents relating to any representations, agreements, promises or assurances You received about any monetary recovery You might receive as a result of Your participation as plaintiffs in this Action.
>
> RFP 15: All documents relating to the terms by which You retained attorneys for the preparation and filing of the complaints in this Action and the maintenance of this Action.

(ECF No. 469-2).

On October 14, 2016, Plaintiffs served objections and responses to DairyAmerica's third request for production of documents. (ECF No. 469-2). Plaintiffs objected to producing documents responsive to RFPs 8-15 because the requests were "overbroad, unduly burdensome, harassing, and to the extent it seeks information that is not relevant to the claims or defenses of any party to this litigation and that is not reasonably calculated to lead to the discovery of admissible evidence." Subject to the objections, Plaintiffs agreed to produce responsive, non-privileged documents in their possession, custody, or control.

Counsel for DairyAmerica and Plaintiffs engaged in subsequent meet and confer negotiations regarding Plaintiffs' objections to DairyAmerica's RFPs. On May 11, 2017, Plaintiffs' counsel sent the following email communication to counsel for DairyAmerica:

> As we conveyed during a meet and confer several months ago, Plaintiffs have no documents that are responsive to Requests 7, 12- 14, and with respect to Requests 8-11, 15, the only responsive documents are retainer agreements with the named Plaintiffs and emails transmitting them, which are privileged communications.

(ECF No. 469-4, p. 2).

On June 29, 2017, Plaintiffs served amended objections and responses to DairyAmerica's third request for production. (ECF No. 443-1, pp. 11-23). Specifically, Plaintiffs amended their

objections to RFPs 8-12 and 15. Plaintiffs represented that the only documents that are potentially responsive to the requests are the retainer agreements entered into between Plaintiffs and their counsel and that "District courts in the Ninth Circuit have routinely held that retainer agreements need not be produced in class actions in the absence of evidence of an incentive fee arrangement or conflict of interest. [citations]." Plaintiffs further represented that the "retainer agreements entered into by Plaintiffs make no mention of any incentive award or the sharing of fees", and therefore, "the retainer agreements are not relevant to this case and will not be produced."

On June 13, 2017, the parties initiated discovery dispute proceedings before the undersigned Magistrate Judge. (ECF Nos. 431-432). After a hearing on June 23, 2017, the parties were granted leave to file motions to compel. (ECF No. 432). On July 5, 2017, the parties filed motions for discovery. (ECF Nos. 436-438). In compliance with this District's local rules, the parties filed a joint statement regarding discovery disputes on July 19, 2017.[1] (ECF Nos. 440-444). A discovery dispute conference was held on July 26, 2017. (ECF No. 447, 451). The Court took under advisement the issue of whether Plaintiffs are required to produce the retainer agreements under the circumstances presented in this case.

The parties do not dispute that "[a]s a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege." *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995) (citing *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995)). Thus, the remaining dispute is whether the responsive documents fall within the scope of discovery. The Court concludes that, under the present circumstances, they do not.

**B. Legal Standards - Discovery**

A party may serve on any other party a request to produce documents within the scope of discovery under Rule 26(b). Fed. R. Civ. P. 34(a). Rule 26(b) of the Federal Rules of Civil Procedure provides that [p]arties may obtain discovery regarding any nonprivileged matter that is

---

[1] While the other parties filed their briefs and exhibits on the public docket, DairyAmerica initially filed a request to seal its discovery dispute briefs and exhibits. (ECF No. 444). Because portions of the request to seal were denied (ECF Nos. 464, 467), DairyAmerica did not file its redacted motions to compel on the public docket until August 18, 2017. (ECF Nos. 468-470). However, DairyAmerica did serve copies of its briefs and exhibits upon the Court and the parties prior to the July 26, 2017 hearing.

relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*.

The responding party to a Rule 34 request for production may respond by serving an objection stating "whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). "An objection to part of a request must specify the part and permit inspection of the rest." *Id*. A party may file a motion to compel discovery if another party "fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3).

### C. Relevance of Incentive Agreements

In a class action lawsuit, "[i]ncentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc*., 715 F.3d 1157, 1163 (9th Cir. 2013) (citing *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958 -59 (9th Cir. 2009); 2 McLaughlin on Class Actions § 6:28 (9th ed. 2012)). Such awards are "fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (citations omitted).

Incentive *agreements* between class counsel and class representatives, however, "are quite different." *Id*. (emphasis as in original). If such an incentive agreement obliges class counsel to seek payment for the class representative in an amount that varies based on the end settlement or verdict amount, a conflict of interest may exist between class counsel and the class representative due to the creation of an "unacceptable disconnect between the interests of the contracting representatives and class counsel, on the one hand, and members of the class on the other." *Id*. at 959-60. The existence of an incentive agreement seriously undermines the class representatives' ability to

adequately represent the class and implicates the "California ethics rules that prohibit representation of clients with conflicting interests." *Radcliffe*, 715 F.3d at 1164 (citing *Rodriguez*, 563 F.3d at 960; *Rodriguez v. Disner*, 688 F.3d 645, 656–57 (9th Cir. 2012)).

**D. Analysis**

DairyAmerica argues that production of Plaintiffs' retainer agreements should be compelled because the documents are relevant to class certification issues. The Court does not disagree with DairyAmerica that the existence of an incentive agreement is relevant and should be disclosed at the class certification stage. *See Rodriguez*, 563 F.3d at 959 ("The arrangement was not disclosed when it should have been and where it was plainly relevant, at the class certification stage").

However, counsel for Plaintiffs has repeatedly represented to DairyAmerica and to the Court that no incentive agreement, as discussed in *Rodriquez*, exists here. *See* Amended Objections and Responses to DairyAmerica's Third Requests for Production, ECF No. 443-1, pp. 11-23 (representing that the "retainer agreements entered into by Plaintiffs make no mention of any incentive award or the sharing of fees"); *see also* Response in opposition to motion to compel, 443-1, p.7. Plaintiffs' counsel has represented the same in at least two hearings before the undersigned judge. ECF No. 451, pp. 4-5, 16 ("THE COURT: … I think as established in the last hearing and it appears to be that Plaintiffs are assuring that there are no such incentive agreements, which I think is an incentive agreement in the term of if Plaintiffs are agreeing to give a cut of the attorneys' fees without some further approval. … PLAINTIFFS' COUNSEL: … I believe it's at -- here what we represented to the Court previously that there have been no promises in any retainer agreements with the named Plaintiffs for – to award incentive fees.").

Furthermore, DairyAmerica has come forward no evidence that would cause the Court to have concerns about the terms of the retainer agreements. In its motion to compel, DairyAmerica points to the fact that the class representatives were not physically present at a court-mandated settlement conference (although they were available by phone). DairyAmerica suggests that this is indicative of a conflict of interest wherein the class representatives have negotiated away their settlement authority to class counsel. At the July 26, 2017 hearing, Plaintiffs' addressed this suggestion as follows:

> PLAINTIFFS' COUNSEL: Your Honor, … the agreements do not negotiate away Plaintiffs' role in the case, and the snippets of information provided by Dairy America do not reflect the full picture. Named Plaintiffs have been involved in all aspects of the litigation, including settlement. They have directly participated in settlement negotiation. They were telephonically present at the settlement conference and were available by phone throughout the mediation in December.
>
> No settlement offer was -- has been made or rejected by Plaintiffs' counsel without the consideration and full support of all four named Plaintiffs.

(ECF No. 451, pp. 17-18).

Under these circumstances, the Court does not have cause to test the veracity of the representations made by officers of the court. DairyAmerica, in contrast, claims it is "entitled to test that assertion and not to blindly take Plaintiffs at their word."[2] At the July 26, 2017 hearing, the Court inquired about the necessity of production and a possible *in camera* review of the retainer agreements. (ECF No. 451). DairyAmerica could not articulate a non-speculative basis to examine the retainer agreements other than a generalized desire to inspect them and then attempt to make class certification arguments based on the contents:

> THE COURT: Let me pose the same but the – the other side of that to Defendants. If I tell you I looked and, no, they don't have these, it's just a normal retainer agreement, why do you want them?
>
> DAIRYAMERICA COUNSEL: Again, we believe it's necessary to make our own determination and we want to put it in the context of all the testimonial and other documentary evidence that has been produced in this case.

(ECF No. 451, p. 20). Without a specific argument for the relevance of the agreements, the Court will not grant a motion to compel.

Nor does the Court agree with DairyAmerica's much broader proposition -- that retainer agreements between class representatives and class counsel must always be produced in class action litigation because they are relevant to adequacy issues.[3] The Ninth Circuit cases cited by

---

[2] It does not have to obtain the retainer agreements to "test that assertion." Certainly, there are other avenues of discovery available to DairyAmerica if it is truly concerned about the veracity of the assertions. *See In re Google AdWords Litig.*, 2010 WL 4942516, at *5 (suggesting defendants could have inquired on its speculative conflict assertions during the depositions of the class representatives).

[3] Again, much of the information that DairyAmerica is interested in, as described in their brief and at the hearing, can likely by obtained by other means of discovery. This does not mean that the information sought is relevant under Rule 26(b)(1). It is not unusual for non-relevant information to be disclosed during the course of discovery.

DairyAmerica do no support such a broad disclosure requirement.  In *Rodriguez*, the Ninth Circuit held that the incentive agreement between class counsel and class representatives, wherein the class representatives would be compensated on a sliding scale depending on the size of the settlement or verdict, was a conflict of interest that should have been disclosed in the class certification stage. *See id*. It was apparent in *Rodriguez* that the incentive agreement existed because class counsel was required under the agreement to apply for the incentive award, and the decision to approve was left to the district court. *See id*.

The Court does read *Rodriguez* to stand for the far broader proposition advocated by DairyAmerica that retainer agreements are always discoverable at the class certification stage because the arrangement is relevant to adequacy issues (even when there is an absence of evidence that a conflict exists).[4] *See, e.g., Larsen v. Coldwell Banker Real Estate Corp.*, No. SACV 10-00401-AG (MLGx), 2011 WL 13131127, at *3 (C.D. Cal. Oct. 4, 2011) (denying a motion to compel the plaintiffs' retainer agreements where there was no evidence of any suspect relationship or conflict between the proposed representatives and class counsel and citing cases for support of its disagreement with the defendants' suggestion that *Rodriguez* "establishes that retainer agreements are always discoverable at the class certification stage, even without any indication that there exists any unusual incentive structure or conflict of interest"); *In re Google AdWords Litigation*, No. C08-03369 JW HRL, 2010 WL 4942516, at *4-5 (N.D. Cal. Nov. 12, 2010) (denying motion to compel retainer agreements and finding "[w]hile *Rodriguez* does state that the existence of an incentive agreement would be relevant at the class certification stage, the Court does not believe that it can be read to stand for the broad proposition that the fee arrangements between named plaintiffs and plaintiffs' counsel should be discoverable without any reason to think there is a potential conflict").

Finally, DairyAmerica suggests that there is no harm in disclosing the terms of retainer agreements now because the terms will need to be disclosed in the event of a future class settlement or an award requiring Court approval.  While the Court agrees that the terms of the retainer

---

[4] The Court has also reviewed the non-binding authority cited in DairyAmerica's brief and does not find it persuasive.

agreement could eventually become relevant, there is no settlement or award requiring court approval at this time. DairyAmerica may raise the issue again at the appropriate time.

**E. Conclusion**

Under the circumstances presented here and considering the factors in Rule 26(b)(1), the Court does not find the retainer agreements relevant to DairyAmerica's defenses and proportional to the needs of the case.

Accordingly, DairyAmerica's motion to compel (ECF No. 469) is DENIED.

IT IS SO ORDERED.

Dated: **September 22, 2017**         /s/ Erica P. Grosjean
                                                                    UNITED STATES MAGISTRATE JUDGE