Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
A. Chowning Poppler (SBN 272870)
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermantabacco.com
        cheffelfinger@bermantabacco.com
        cpoppler@bermantabacco.com

*Counsel for Plaintiffs and the Proposed Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| GERALD CARLIN, JOHN RAHM, PAUL ROZWADOWSKI and DIANA WOLFE, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIRYAMERICA, INC. and CALIFORNIA DAIRIES, INC.,<br><br>Defendants. | Case No.  1:09 CV 00430-AWI (EPG)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: September 10, 2018<br>Time: 1:30 p.m.<br>Ctrm: 2, 8th Floor<br>Judge: Anthony W. Ishii<br>Action Filed: March 6, 2009 |

**REDACTED**

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ...........................................................................................................1

II. PROCEDURAL HISTORY ...........................................................................................2

III. SUMMARY OF SETTLEMENT TERMS ...................................................................6

    A. The Proposed Settlement Class ..........................................................................6

    B. The Settlement Consideration ............................................................................6

    C. Release of Claims ...............................................................................................6

    D. Notice of the Settlement .....................................................................................7

    E. Plan of Distribution ............................................................................................7

IV. ARGUMENT ................................................................................................................8

    A. The Settlement Agreement Satisfies Rule 23(e). ..............................................8

        1. The Settlement Is the Product of Informed, Arm's Length Negotiations. ....9

        2. The Proposed Settlement Has No Deficiencies. .......................................10

        3. The Settlement is Fair and Does Not Grant Preferential Treatment to Class Representatives or Segments of the Class....................................................12

        4. The Settlement Falls Well Within the Range of Approval. ........................14

    B. The Proposed Settlement Class Satisfies Rule 23.................................................14

        1. Numerosity Is Satisfied. ...........................................................................14

        2. The Case Involves Questions of Law or Fact Common to the Class..........14

        3. Plaintiffs' Claims Are Typical of the Claims of the Class.........................15

        4. Plaintiffs Will Fairly and Adequately Represent the Interests of the Class. ......................................................................................................................15

    C. The Settlement Class Satisfies Rule 23(b)(3). ......................................................16

        1. Common Questions of Fact or Law Predominate. .....................................16

        2. Class Proceedings Are Superior in this Case. ...........................................17

    D. The Court Should Reaffirm the Appointment of Class Counsel. ...........................18

    E. The Proposed Notice and Plan of Dissemination Satisfies Requirements of Rule 23...............................................................................................................................19

[1:09 CV 00430-AWI (EPG)] PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

i

F.      Proposed Schedule for Final Approval and Dissemination of Class Notice...........20

V.      CONCLUSION.....................................................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>PAGE(S)</u>

3

**Cases**

4

*Aguilar v. Wawona Frozen Foods*,
No. 15-cv-00093, 2017 U.S. Dist. LEXIS 4320 (E.D. Cal. Jan. 11, 2017) ............................. 8

5

*Alvarado v. Nederend*,
No. 08-cv-01099, 2011 U.S. Dist. LEXIS 52793 (E.D. Cal. May 17, 2011) ......................... 14

6

7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................................ 16

8

*Betorina v. Randstad US, L.P.*,
No. 15-cv-03646, 2017 U.S. Dist. LEXIS 53317 (N.D. Cal. Apr. 6, 2017) ......................... 13

9

*Cabiness v. Educ. Fin. Sols., LLC*,
No. 16-cv-01109, 2018 U.S. Dist. LEXIS 106008 (N.D. Cal. June 25, 2018)....................... 13

10

11

*Carlin v. Dairy Am., Inc.*,
705 F.3d 856 (9th Cir. 2013).................................................................................................... 4

12

*Churchill Vill., LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004).................................................................................................. 19

13

14

*Collins v. Cargill Meat Solutions Corp.*,
274 F.R.D. 294 (E.D. Cal. 2011) ...................................................................................... 8, 14

15

*De Leon v. ServiceLink, Inc.*,
No. 14-cv-2040, 2016 U.S. Dist. LEXIS 55662 (C.D. Cal. Apr. 25, 2016) ......................... 12

16

17

*Four in One Co. v. S.K. Foods, L.P.*,
No. 08-cv-3017, 2014 U.S. Dist. LEXIS 602 (E.D. Cal. Jan. 2, 2014) ................................. 15

18

*Giroux v. Essex Prop. Tr., Inc.*,
No. 16-cv-01722, 2018 U.S. Dist. LEXIS 92356 (N.D. Cal. June 1, 2018).......................... 13

19

20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)................................................................................................ 16

21

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992).................................................................................................. 15

22

23

*Harris v. Vector Mktg. Corp.*,
No. 08-cv-5198, 2011 U.S. Dist. LEXIS 48878, (N.D. Cal. Apr. 29, 2011) ......................... 13

24

*In re Bluetooth Headset Prods. Liability Litig.*,
654 F.3d 935 (9th Cir. 2011)................................................................................................... 10

25

26

*In re Cathode Ray Tube Antitrust Litig.*,
MDL No. 1917, 2015 U.S. Dist. LEXIS 170525 (N.D. Cal. Dec. 17, 2015) ......................... 11

27

28

*In re Critical Path, Inc.*,
    No. 01-cv-00551, 2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002) ......................... 12

*In re Dynamic Random Access Memory Antitrust Litig.*,
    No. 02-md-1486, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006) ........................... 15

*In re High-Tech Emp. Antitrust Litig.*,
    No. 11-cv-02509, 2015 U.S. Dist. LEXIS 118052 (N.D. Cal. Sep. 2, 2015) ...................... 13

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)................................................................................................ 11

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................ 8

*In re Toyota Motor Corp.*,
    No. 10-ml-02151, 2013 U.S. Dist. LEXIS 94485 (C.D. Cal. June 17, 2013) ......................... 12

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978)................................................................................................ 18

*Linney v. Cellular Alaska P'ship*,
    No. 96-cv-3008, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997) ........................... 9

*Local Joint Executive Board v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ............................................................................................ 18

*Medrano v. Party City Corp.*,
    No. 16-cv-2996, 2018 U.S. Dist. LEXIS 9979 (E.D. Cal. Jan. 22, 2018) ................. 15, 16, 18

*Monterrubio v. Best Buy Stores, Ltd. P'ship*,
    291 F.R.D. 443 (E.D. Cal. 2013) .................................................................................. 16, 19

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) ........................................................................................ 16

*Nitsch v. DreamWorks Animation SKG Inc.*,
    No. 14-cv-04062, 2017 U.S. Dist. LEXIS 86124 (N.D. Cal. June 5, 2017) ........................... 13

*Rodriguez v. W. Pub. Corp.*,
    563 F.3d 948 (9th Cir.2009)................................................................................................ 19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)................................................................................................ 8

*Todd v. STAAR Surgical Co.*,
    No. 14-cv-5263, 2017 U.S. Dist. LEXIS 176183 (C.D. Cal. Oct. 24, 2017) ......................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...................................................................................................... 14

**Statutes**

California Business and Professions Code § 17200 ...................................................................... 3

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.631 (2015) ............................................................. 8

Manual for Complex Litigation (Fourth) § 21.632 (2015) ............................................................. 8

Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*,
    103 Colum. L. Rev. 149 (2003) ................................................................................... 14

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................. 15

Fed. R. Civ. P. 23(b) ............................................................................................................. 18

Fed. R. Civ. P. 23(c) ................................................................................................. 20, 21, 22

Fed. R. Civ. P. 23(e) .......................................................................................................... 8, 19

Fed. R. Civ. P. 23(g) ............................................................................................................. 21

# I.     **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23, plaintiffs Gerald Carlin, Paul Rozwadowski, John Rahm, and H. Diana Wolfe (collectively, "Plaintiffs") respectfully seek preliminary approval of a Settlement Agreement[1] with the two defendants in the case: DairyAmerica, Inc. and California Dairies, Inc. (collectively, "Defendants"). *See* Settlement Agreement attached as **Exhibit A**. The Court should preliminarily approve the proposed settlement as fair, reasonable, and adequate because it provides for the putative Settlement Class a cash payment of $40 million. That amount constitutes a remarkably substantial share of the damages incurred by the putative Settlement Class as a result of Defendants' alleged misconduct, i.e., the misreporting of non-fat dry milk ("NFDM") to the United States Department of Agriculture ("USDA"). Specifically, that amount is equal to 80 percent of the damages calculated by USDA and approximately 48 percent of the damages calculated by Plaintiffs' experts. By any measure, it is an excellent result for the putative Settlement Class.

The settlement was reached after intensive arm's length negotiations between informed, experienced counsel who have been deeply involved in this litigation since its inception.  Counsel for Plaintiffs have litigated this case for *more than nine years*.  During that time, counsel for Plaintiffs have defeated multiple attempts by Defendants to dismiss the case; revived the case via appeal to the Ninth Circuit after its initial dismissal; thoroughly litigated this complex matter through a voluminous document review, deposition calendar and extensive motion practice; and retained two of the nation's leading agricultural economists to evaluate and calculate class-wide damages. As a result, Plaintiffs and their counsel are intimately familiar with the strengths and weaknesses of the case and have entered into a Settlement Agreement that reflects the potential risks and rewards of continuing to litigate this case.

The settlement was reached after multiple protracted private mediation sessions with an experienced JAMS mediator and a settlement conference with Magistrate Judge Grosjean. The most recent mediation session included participation of experts from both sides and involved a

---

[1] Unless defined herein, capitalized terms have the same meaning ascribed to them in the Settlement Agreement, a complete copy of which is attached as Exhibit A.

detailed analysis of the strengths, weaknesses and financial value of the case. The mediation began in January 2017 and failed to produce a settlement. After additional motion practice and discovery in the case, the mediation resumed in February 2018 and resulted in the Settlement Agreement, which is fair and appropriate considering the risks and rewards of continuing to litigate this case.

The proposed settlement requires certification by this Court of a Settlement Class that is the same as that alleged by Plaintiffs in their operative complaint. *See* Exhibit A at ¶ 2.2. The proposed Settlement Class is comprised of dairy farmers who pooled their milk on a Federal Milk Marketing Order ("FMMO") during the period January 1, 2002 through April 30, 2007 (the "Settlement Class Period").

Plaintiffs propose a comprehensive and effective notice program designed to provide direct actual notice of the settlement to all Settlement Class Members. *See* Exhibit A at ¶ 3. Plaintiffs intend to collaborate with each of the ten FMMOs to distribute notice of the settlement directly to each member of the Settlement Class.  This unique notice and claims process has the potential to vastly exceed the reach and participation levels commonly seen in class action settlement distributions.

Plaintiffs respectfully request an order: (1) preliminarily approving the proposed Settlement Agreement with the Defendants; (2) certifying the proposed Settlement Class; (3) appointing Cohen Milstein Sellers & Toll, PLLC, Keller Rohrback L.L.P., and Berman Tabacco as Class Counsel; (4) approving the manner and form of notice to Settlement Class Members; and (5) appointing Rust Consulting as the Claims Administrator.

## II.   **PROCEDURAL HISTORY**

During the Settlement Class Period, tens of thousands of farmers received milk checks each month that contained prices calculated by the FMMOs. The formulas employed by the FMMOs factored in market prices for finished dairy products. One of the finished dairy products whose prices were incorporated into those formulas was NFDM. During the Settlement Class Period, USDA obtained market prices for NFDM by conducting weekly surveys of firms that sell one

1   million or more pounds of NFDM annually. The higher the NFDM prices reported in those surveys,

2   the higher the raw milk prices that FMMOs calculated and that dairy farmers received.

3   The surveys conducted by USDA were intended to collect *current* market prices so that

4   dairy farmers' monthly milk checks reflected up-to-date market dynamics. As a result, the

5   instructions on the surveys required the exclusion of sales data from "forward pricing" sales, which

6   are priced well in advance of the actual product delivery.

7   During the Settlement Class Period, the largest seller of NFDM surveyed by USDA was

8   defendant DairyAmerica, a marketing association comprised of nine cooperative members with

9   substantial processing interests. The largest cooperative member of DairyAmerica was Defendant

10  California Dairies. According to Plaintiffs' complaints, DairyAmerica was controlled and operated

11  by its nine cooperative members, and each member held three seats on DairyAmerica's board of

12  directors. DairyAmerica's mission was to maximize profits for its cooperative members.

13  DairyAmerica sold NFDM and other powder products manufactured by its members.

14  In March 2007, a dairy publication called *The Milkweed* published a story alleging that

15  DairyAmerica was improperly including forward pricing sales in weekly reports to USDA, in

16  contravention of the clear instructions from the agency. The article prompted USDA to launch an

17  investigation into DairyAmerica's reporting practices. In February 2008, USDA issued a report

18  stating that DairyAmerica had failed to comply with the instruction to exclude forward pricing sales

19  during the Settlement Class Period and that, as a result, farmers had been deprived of $50 million

20  in income during the period April 2006 through April 2007.

21  On March 6, 2009, Plaintiffs filed their first complaint, alleging claims for negligent

22  misrepresentation, violation of California Business and Professions Code § 17200, and unjust

23  enrichment. ECF No. 1. The complaint was brought on behalf of a class of dairy farmers in the

24  United States who sold raw milk that was priced according to a FMMO during the Settlement Class

25  Period. *Id.*

26  The case was dismissed on the basis of the filed rate doctrine. ECF No. 83. Plaintiffs

27  appealed. On January 11, 2013, the Ninth Circuit reversed the dismissal, holding that "permitting

28

1   the rate-related claims to move forward is the only way to remedy the injuries suffered by the milk

2   producers." *Carlin v. Dairy Am., Inc.*, 705 F.3d 856 (9th Cir. 2013) ;. Following another round of

3   motions to dismiss, Plaintiffs were left with a single claim for negligent misrepresentation against

4   a lone defendant, DairyAmerica. ECF No. 141.

5        On June 30, 2014, after only limited discovery, Plaintiffs moved for leave to amend to add

6   nine cooperative defendants as well as claims for intentional misrepresentation, violation of the

7   Racketeer Influenced and Corrupt Organizations Act ("RICO"), and violation of the Unfair

8   Fraudulent Transfer Act.  ECF No. 155. The Court denied the motion because there was insufficient

9   evidence to warrant the amendment. ECF No. 207.

10        Following the denial, Plaintiffs engaged in extensive discovery: drafting and responding to

11   hundreds of interrogatories, requests for admission and requests for production; reviewing

12   hundreds of thousands of documents produced by Defendants and subpoenaed third parties;

13   reviewing Plaintiffs' documents for responsiveness and privilege; conducting investigations of

14   former employees and other third-party witnesses; conducting and defending dozens of depositions;

15   engaging in extensive discovery motion practice, including litigating multiple motions to compel;

16   and working with Plaintiffs' two economic experts to evaluate data and calculate damages on a

17   class-wide basis.

18        Through discovery, Plaintiffs uncovered documents sufficient to allege a conspiracy to

19   commit fraud and obtained a critical declaration from DairyAmerica's former Sales Director, who

20   swore that the company intentionally misreported sales at the direction of California Dairies and

21   other cooperative members.  In reliance on this declaration, Plaintiffs moved to amend their

22   complaint on September 25, 2015 to add eight cooperative members as defendants as well as claims

23   for intentional misrepresentation and violations of RICO. ECF No. 220. On January 20, 2016, the

24   Court granted the motion in part, permitting Plaintiffs to add California Dairies as a defendant and

25   to add claims for intentional misrepresentation and conspiracy to violate RICO. ECF No. 240. On

26   February 24, 2016, pursuant to the Court's order, Plaintiffs filed the Third Amended Complaint,

27   alleging that DairyAmerica conspired with California Dairies and other cooperatives to misreport

28

1   forward pricing sales to USDA and reduce payments to farmers. ECF No. 245. On March 23, 2016,

2   Defendants moved to dismiss the Third Amended Complaint, and the Court denied those motions

3   on May 2, 2016. ECF No. 303. Defendants subsequently moved for reconsideration on May 16,

4   2016, and the Court denied those motions on June 22, 2016. ECF No. 317.

5           Following that amendment, Plaintiffs obtained declarations from two additional former

6   accounting employees of DairyAmerica, who swore that the company engaged in additional forms

7   of misreporting to fraudulently depress raw milk prices. Relying on these new declarations,

8   Plaintiffs moved to amend their complaint again on February 9, 2017 to add additional allegations

9   of misreporting, expand the class to include California farmers, and add two more defendants. ECF

10  No. 377. On August 25, 2017, the Court granted the motion in part, permitting Plaintiffs to add

11  additional allegations of misreporting, but not permitting Plaintiffs to expand the class nor to add

12  additional defendants. ECF No. 475. On November 15, 2017, pursuant to the Court's order,

13  Plaintiffs filed the Fourth Amended Complaint, alleging that DairyAmerica conspired with

14  California Dairies and other cooperatives to misreport NFDM sales to USDA in multiple ways.

15  ECF No. 513.

16          After the operative Fourth Amended Complaint was filed, Plaintiffs worked with two of the

17  nation's leading agricultural economists to assist with the valuation and prosecution of their claims.

18  Plaintiffs retained Dr. Joseph Glauber, the former Chief Economist of USDA, former Chairman of

19  the Board of the Federal Crop Insurance Corporation and former senior economist at the President's

20  Council of Economic Advisors.  Plaintiffs had also retained Dr. Randy Fortenberry, who holds an

21  endowed Chair at the School of Economic Sciences at Washington State University and is

22  Chairman of the Agricultural Markets Advisory Committee to the Commodity Futures Trading

23  Commission.  These economists calculated class-wide damages for Plaintiffs and also participated

24  in the mediation on behalf of Plaintiffs.

25

26

27

28

### III.   SUMMARY OF SETTLEMENT TERMS

#### A.   The Proposed Settlement Class

The proposed Settlement Class is the same as the class defined in Plaintiffs' operative Fourth Amended Complaint:

> All dairy farmers located in the United States who sold raw milk that was priced according to a Federal Milk Marketing Order during the period January 1, 2002 through April 30, 2007. Excluded from the Class are California Dairies and DairyAmerica, any entity in which California Dairies or DairyAmerica have a controlling interest, and their respective legal representatives, heirs, and successors.

#### B.   The Settlement Consideration

Defendants have agreed to a payment of $40,000,000 to the Settlement Fund. Exhibit A at ¶ 1.24. This payment is the full amount owed under the Settlement Agreement, and is inclusive of any attorneys' fees, expenses, and service awards that might be ordered by this Court. The payment would be made in two installments. Exhibit A at ¶¶ 7-8. The first payment of $20,000,000 would be made within ten business days of the Court's grant of preliminary approval of the Settlement Agreement. *Id.* at ¶ 7.1. The second payment of $20,000,000 would be made on the later of the following three dates: (1) January 11, 2019; (2) within ten business days after the period for appealing the Court's grant of final approval expires; or (3) if that final approval order is appealed, once approval of the settlement has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. *Id.*

#### C.   Release of Claims

Once the Settlement Agreement is final and effective,[2] Plaintiffs and the Settlement Class shall release, as to the Defendants and any of their related entities as defined by the Settlement Agreement, any and all claims, complaints, demands, judgments, damages, debts, liabilities,

---

[2] The Settlement Agreement contains a "blow up" provision that permits Defendants to terminate the Settlement Agreement if the total number of persons who exclude themselves from the Settlement Class, or the total volume of raw milk produced by such persons and pooled on FMMOs during the Settlement Class Period, reaches specified confidential thresholds. Those figures are contained in a Confidential Side Letter referenced in the Settlement Agreement attached as **Exhibit B** (filed under seal).

1   actions, proceedings, remedies, causes of action, or suits, of whatever kind or nature, and whether

2   known or unknown, suspected or unsuspected, asserted or unasserted in the Action, in law or equity,

3   as against the Defendants and any of their related entities as defined by the Settlement Agreement,

4   from January 1, 2002 through and including the Effective Date, and arising from, relating to, or in

5   connection with any matters alleged by Plaintiffs or Former Plaintiffs in any of the complaints filed

6   in this case, including any such complaints that were dismissed by the Court. Exhibit A at ¶ 1.20.

7   The Settlement Agreement does not encompass claims or potential claims by Settlement Class

8   Members that do not arise out of or are not connected with or do not relate to the same conduct,

9   transaction and/or occurrences described in the complaints filed in this case. *Id.*

10          **D.      Notice of the Settlement**

11          The Settlement Agreement provides for the best possible form of notice: actual and direct

12   notice to Settlement Class Members. Exhibit A at ¶ 3. Plaintiffs will collaborate with the Market

13   Administrators for the ten FMMOs in order to provide Settlement Class Members direct notice of

14   the settlement. Specifically, the notice plan provides that (1) notice be directly issued by U.S. Mail

15   to addresses of Settlement Class Members as maintained by the ten FMMOs; (2) summary notice

16   be published in publications whose circulation is likely to reach Settlement Class Members, in the

17   event some Settlement Class Members fail to receive direct notice; and (3) both notice and

18   summary notice be posted on the settlement website www.MilkPowderCase.com. *Id*.

19          **E.      Plan of Distribution**

20          Prior to distribution, the Settlement Amount will be held in an interest-bearing account that

21   is a "Qualified Settlement Fund" pursuant to applicable IRS regulations.  Exhibit A at ¶ 8. The

22   Settlement Funds and the interest earned thereon will be distributed to approved Claimants, less

23   any amounts approved by the Court for payment of attorneys' fees, reimbursement of litigation

24   expenses, and service awards to Class Representatives and Former Plaintiffs ("Net Settlement

25   Funds").[3] The Net Settlement Funds will be distributed on a *pro rata* basis to approved Claimants.

26

27          [3] Plaintiffs' counsel's request for attorneys' fees, expense reimbursements and service
     awards for Plaintiffs and Former Plaintiffs are subject to court approval.

28

---

An approved Claimant's *pro rata* share of the settlement will be determined by dividing (a) the dollar value of the Claimant's total amount of Grade A raw milk produced and pooled on a FMMO from January 1, 2002 through April 30, 2007 by (b) the total dollar value of all Claims made by members of the Settlement Class. The Claims Administrator will review all Claim Forms received and is authorized to investigate any claims, including requesting additional documentation to verify a claim.

**IV.**   **ARGUMENT**

    **A.**   **The Settlement Agreement Satisfies Rule 23(e).**

Federal Rule of Civil Procedure 23(e)provides that a proposed settlement in a class action case must be approved by the Court. The Court is to determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

As a first step, Plaintiffs must seek preliminary approval of the proposed settlement, which is an "initial evaluation" of the fairness of a proposed settlement. Manual for Complex Litigation (Fourth) § 21.632 (2015). When making that initial evaluation, the court must determine whether to provide notice of the proposed settlement to class members and an opportunity for them to voice approval or disapproval of the settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); Manual for Complex Litigation (Fourth) § 21.631 (2015). Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement, but rather a determination of whether the settlement falls within the "range of reasonableness." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301-302 (E.D. Cal. 2011).

Preliminary approval of a settlement and notice to the proposed class is appropriate "[i]f the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *Aguilar v. Wawona Frozen Foods*, 15-cv-00093, 2017 U.S. Dist. LEXIS 4320, at *7 (E.D. Cal. Jan. 11, 2017) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). "The involvement of experienced class action counsel and the fact that the settlement agreement

was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Todd v. STAAR Surgical Co.*, No. 14-cv-5263, 2017 U.S. Dist. LEXIS 176183, at *6 (C.D. Cal. Oct. 24, 2017) (quoting *Linney v. Cellular Alaska P'ship*, No. 96-cv-3008, 1997 U.S. Dist. LEXIS 24300, at *5 (N.D. Cal. July 18, 1997)).

### 1. The Settlement Is the Product of Informed, Arm's Length Negotiations.

The settlement was reached after informed, arm's length negotiations between the parties. The parties have been litigating this matter for *more than nine years*.[4] During that time period, Plaintiffs vigorously investigated their claims and the underlying evidence, and Defendants developed and tested a broad range of defenses. Counsel for Plaintiffs conducted an exhaustive investigation of potential witnesses, including former employees of the Defendants; amended the complaint twice to add California Dairies as a defendant and additional causes of action; defeated several attempts by Defendants to dismiss the case; prevailed on an appeal to the Ninth Circuit after the case was dismissed; searched through a warehouse containing hundreds of thousands of documents on several occasions; reviewed more than 300,000 electronic documents produced by Defendants and 14 third parties; served and responded to hundreds of requests for admission and interrogatories; conducted the depositions of 14 defendant and third-party witnesses; defended the depositions of 11 witnesses including each of the Plaintiffs; prevailed on three motions to compel discovery from Defendants; defeated four motions to compel filed by Defendants; and retained two of the nation's leading agricultural economists to evaluate and calculate class-wide damages. As a result, when Plaintiffs negotiated and entered into the Settlement Agreement, they were fully informed about the strengths and weakness of the case and the potential rewards and risks of continuing the litigation.

The settlement was reached after months of intensive negotiations between the parties and under the direction of experienced mediator Robert A. Meyer, Esq. Those negotiations involved a

---

[4] The drawn-out nature of this dispute is not attributable to delay or lack of zealous and efficient prosecution, but due to a combination of the Ninth Circuit appeal of the initial dismissal, extensive litigation of multiple discovery disputes, and numerous stays during consideration of the various aforementioned motions to amend and various attempts to resolve this dispute through mediations and settlement conferences.

1    detailed analysis of the strengths, weaknesses and financial value of the case. Notably, during the

2    course of the mediation, the two aforementioned economic experts retained by Plaintiffs candidly

3    discussed potential damages with the economic expert retained by Defendants, Dr. Mark

4    Stephenson, Director of Dairy Policy Analysis at the College of Agricultural and Life Sciences at

5    the University of Wisconsin-Madison. Counsel for the parties and the mediator participated in that

6    discussion.

7        This protracted and transparent process facilitated by a neutral third party shows that the

8    settlement is the product of good faith and arm's length negotiations. Indeed, none of the hallmarks

9    of collusion are present here. Courts weigh three factors when considering collusion: (1) a

10   disproportionate distribution of the settlement fund to counsel; (2) a negotiation of a "clear sailing

11   provision," which allows for the payment of attorneys' fees independent of payments to the class;

12   and (3) an arrangement for funds not awarded to revert to Defendants rather than to be added to the

13   settlement fund. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

14       *First*, the settlement provides that the Court, not the parties, will determine and approve the

15   distribution of attorneys' fees and reimbursement of expenses to counsel for Plaintiffs. *Second*, the

16   settlement expressly stipulates that any applications for attorneys' fees and expenses by Plaintiffs'

17   counsel are not part of the Settlement Agreement itself. *Third*, the settlement does not permit any

18   funds to revert to Defendants. After the initial distribution, to the extent that any monies remain in

19   the Settlement Fund, Plaintiffs will move the Court to order distribution of residual funds either to

20   eligible Claimants and/or a *cy pres* recipient. Exhibit A at ¶ 8.11.

21           **2.      The Proposed Settlement Has No Deficiencies.**

22       The settlement was the product of a thorough assessment of the strengths and weaknesses

23   of Plaintiffs' case. It reflects more than nine years of litigation and several years of discovery, which

24   uncovered evidence of a complex, multi-faceted conspiracy. The settlement provides meaningful

25   and definite monetary recovery, and results in putative Settlement Class Members receiving a

26   significant share of their losses stemming from Defendants' alleged misconduct.  The settlement

27   provides this certain and substantial compensation to putative Settlement Class Members without

28

risking the possibility of losing a motion for class certification or a trial. In exchange, this settlement allows Defendants to obtain a reasonable release of all related claims against them and finality of the litigation.

The Settlement Amount is an excellent result for the putative Settlement Class by any measure. According to the class-wide damages figures calculated by Plaintiffs' economic experts, the Settlement Amount is equal to 48 percent of the damages incurred by putative Settlement Class Members as a result of the Defendants' alleged misconduct.[5] The Settlement Amount is also equal to 80 percent of the damages as calculated by USDA.[6] This latter calculation by the USDA is material to the case, as Defendants have repeatedly argued that Plaintiffs would be limited at trial to damages calculated by USDA for two reasons. First, Defendants have argued that the Ninth Circuit's opinion regarding the filed-rate doctrine only permits Plaintiffs to recover damages based on calculations made by USDA, rather than party experts retained for this litigation. Second, Defendants have argued that damages calculated by Plaintiffs for the period prior to April 2006 are inherently unreliable because they are based on inaccurate data and flawed assumptions. Plaintiffs dispute the merit of these arguments but acknowledge that Defendants would continue to raise them if the case were to go forward.

In any event, this settlement provides an extraordinary result. Courts have routinely approved class action settlements where the settlement amount was a substantially lower percentage of the claimed amount of damages. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (recovery of "roughly one-sixth of the potential recovery" was not unfair or inadequate); *In re Cathode Ray Tube Antitrust Litig.*, MDL No. 1917, 2015 U.S. Dist. LEXIS 170525, at *190 (N.D. Cal. Dec. 17, 2015) (approving settlement representing 0.4875% of the maximum possible recovery); *In re Critical Path, Inc.*, No. 01-cv-00551, 2002 U.S. Dist. LEXIS

---

[5] These damages calculations do not include amounts that could be awarded for pre-judgment interest. In the event of a trial verdict for plaintiffs, pre-judgment interest may be awarded at the discretion of the jury, and research and experience reveal that it is difficult to predict whether a jury would do so.

[6] These damages were calculated for the period April 2006 through April 2007, which represents the timeframe during which the majority of damages occurred.

1   26399 *5 (N.D. Cal. June 18, 2002) (approving settlement equal to 8.75 percent of damages); *De*

2   *Leon v. ServiceLink, Inc.*, No. 14-cv-2040, 2016 U.S. Dist. LEXIS 55662, at *30 (C.D. Cal. Apr.

3   25, 2016) (approving settlement representing 20% of the maximum damages). Indeed, the Central

4   District of California described a settlement amount constituting "approximately 42 percent of total

5   economic losses" as nothing less than "exceptional." *See, e.g., In re Toyota Motor Corp.*, No. 10-

6   ml-02151, 2013 U.S. Dist. LEXIS 94485, at *211 (C.D. Cal. June 17, 2013).

7        The Settlement Amount also reflects the risks Plaintiffs must consider in reaching a

8   successful outcome for Settlement Class Members through expert discovery, class certification,

9   trial and appeal. While Plaintiffs believe they have compelling and meritorious claims, this is a

10  unique case, and juries can be unpredictable.  This is particularly true here, where a jury would be

11  asked to reach the somewhat counter-intuitive conclusion that dairy cooperatives engaged in

12  conduct that was adverse to the interests of their farmer-members, contrary to the anticipated direct

13  testimony from sympathetic witnesses for the Defendants. Additionally, Defendants would almost

14  certainly appeal any adverse finding from a jury. Indeed, Defendants have vigorously pursued

15  discovery on a range of issues that (any one of which) could result in the dismissal of this case on

16  appeal, from statutes of limitations to proof of Plaintiffs' reliance. Overall, the risks Plaintiffs face

17  here remain significant, and the settlement takes those risks into account.

18
19        **3.**     **The Settlement is Fair and Does Not Grant Preferential Treatment to Class Representatives or Segments of the Class.**

20        The third factor the court considers in granting preliminary approval is whether the

21  settlement improperly grants preferential treatment to segments of the Settlement Class or the Class

22  Representatives. The proposed settlement provides a fair and reasonable method of compensating

23  all Settlement Class Members, including Plaintiffs, in direct proportion to the size of their financial

24  injury.

25        While the Settlement Agreement permits Plaintiffs' counsel to request a service award of

26  up to $90,000 for each of the four Plaintiffs and up to $10,000 for each of the four Former Plaintiffs

27  for their significant contributions, the Court alone will ultimately determine whether they are

28

1    entitled to such awards and the reasonableness of the amounts requested.[7] "[T]he Ninth Circuit has

2    recognized that service awards to named plaintiffs in a class action are permissible and do not

3    render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp*., No. 08-cv-5198, 2011

4    U.S. Dist. LEXIS 48878, at *28 (N.D. Cal. Apr. 29, 2011). Courts have consistently held that

5    requesting service awards for named plaintiffs does not constitute preferential treatment warranting

6    disapproval of a settlement. *See, e.g., Giroux v. Essex Prop. Tr., Inc.,* No. 16-cv-01722, 2018 U.S.

7    Dist. LEXIS 92356, at *14-15 (N.D. Cal. June 1, 2018) ("[B]ecause incentive awards are not per

8    se unreasonable, the Court finds that this factor still weighs in favor of preliminary approval.");

9    *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109, 2018 U.S. Dist. LEXIS 106008, at *22 (N.D.

10   Cal. June 25, 2018) ("Aside from a potential  service award, Cabiness will receive the same relief

11   as all other class members. There is also no evidence or suggestion that any other class member

12   will receive preferential treatment under the Settlement."); *Betorina v. Randstad US, L.P*., No. 15-

13   cv-03646, 2017 U.S. Dist. LEXIS 53317, at *20-21 (N.D. Cal. Apr. 6, 2017) ("With the exception

14   of the service award to the Class Representatives of up to $10,000 each for Plaintiffs Bentorina,

15   Bell, and Diaz, each of the participating class members will receive a distribution based solely on

16   the number of workweeks in which the member worked during the Settlement Period. Thus, each

17   of the Class Members will receive equal proportionate treatment.").

18

19

20

---

21       [7] While the Court is not approving service awards at this stage, it is noteworthy that the
     proposed service awards are not outside the range of reasonableness, especially considering that
22   each of the Plaintiffs devoted substantive time and has been actively involved in this case for nine
     years. *See, e.g, Nitsch v. DreamWorks Animation SKG Inc*., No. 14-cv-04062, 2017 U.S. Dist.
23   LEXIS 86124, at *47-52 (N.D. Cal. June 5, 2017) (approving service awards of $100,000 for each
     named plaintiff and holding that "service awards of $90,000 ($100,000 total for the litigation) are
24   in line with awards in other megafund cases"); *In re High-Tech Emp. Antitrust Litig*., No. 11-cv-
     02509, 2015 U.S. Dist. LEXIS 118052, at *17 (N.D. Cal. Sep. 2, 2015) (approving service awards
25   of $100,000 for each named plaintiff). During the course of the litigation, the Plaintiffs reviewed
     many pleadings, prepared for and were subject to depositions, produced thousands of pages of
26   documents, responded to more than a hundred interrogatories and requests for admission,
     participated in countless calls and meetings with Plaintiffs' counsel, and facilitated settlement
27   negotiations.

28

---

### 4. The Settlement Falls Well Within the Range of Approval.

This settlement falls at the top end of the range of approval in terms of percentage of alleged loss recovered. As described above, the $40 million represents 48 percent of the class-wide damages calculated by Plaintiffs' experts and 80 percent of the damages calculated by USDA. This is a remarkable recovery under any standard.

### B. The Proposed Settlement Class Satisfies Rule 23.

Rule 23(a) provides four requirements to certify a class: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Those requirements are satisfied for purposes of certifying, for settlement purposes only, the proposed Settlement Class.

### 1. Numerosity Is Satisfied.

The Settlement Class is comprised of tens of thousands dairy farmers and easily satisfies the numerosity requirement. "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Alvarado v. Nederend*, No. 08-cv-01099, 2011 U.S. Dist. LEXIS 52793, at *11 (E.D. Cal. May 17, 2011) (certifying class of 150 dairy workers). *See also Collins*, 274 F.R.D. at 300 (certifying class of 219 employees).

### 2. The Case Involves Questions of Law or Fact Common to the Class.

The proposed Settlement Class also satisfies Rule 23(a)(2)'s commonality requirement. To satisfy the commonality requirement, "[e]ven a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (quoting Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum. L. Rev. 149, 176, n. 110 (2003)). Here, each Settlement Class Member alleges the same injury—suppressed compensation—from the same alleged unlawful conduct: Defendants' alleged conspiracy to misreport NFDM data to USDA in order to reduce payments to dairy farmers for the sale of Grade A raw milk. Courts have consistently held that the very nature of a conspiracy to fix or depress prices compels a finding that common questions of law and fact exist. *See Four in One Co. v. S.K. Foods, L.P.,* No. 08-cv-3017,

2014 U.S. Dist. LEXIS 602, at *16 (E.D. Cal. Jan. 2, 2014) ("Not only does the class raise common questions, but the class action may generate a class-wide answer to the central issue: the existence and effect or not of an alleged conspiracy to raise and fix prices on processed tomato products."); *In re Dynamic Random Access Memory Antitrust Litig.,* No. 02-md-1486, 2006 U.S. Dist. LEXIS 39841 at *3-4 (N.D. Cal. June 5, 2006). The existence *vel non* of Defendants' alleged conspiracy to depress payments for Grade A raw milk is a common question for every Settlement Class Member, thus satisfying the commonality requirement.[8]

### 3.    Plaintiffs' Claims Are Typical of the Claims of the Class.

The proposed Settlement Class also satisfies Rule 23(a)(2)'s typicality requirement. Plaintiffs pooled their raw milk on an FMMO similar to every other Settlement Class Member, and have therefore alleged the same misconduct and suffered the same injury as the putative Settlement Class. "Because the plaintiffs and class members allege the same conduct and injury, the 'typicality' requirement has been satisfied." *Medrano v. Party City Corp.,* No. 16-cv-2996, 2018 U.S. Dist. LEXIS 9979, at *7-8 (E.D. Cal. Jan. 22, 2018). *See also Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.")

### 4.    Plaintiffs Will Fairly and Adequately Represent the Interests of the Class.

The test for adequacy turns on two questions: "(1) whether named plaintiffs and their counsel have 'any conflicts of interest with other class members,' and (2) whether named plaintiffs and their counsel will 'prosecute the action vigorously on behalf of the class.'" *Hanlon v. Chrysler*

---

[8] As alleged in the operative complaint, there are many other common questions of law and fact, including "whether Defendants and Co-Conspirators misrepresented dairy product prices to USDA; whether Defendants and Co-Conspirators intentionally misrepresented dairy product prices to USDA; whether Defendants and Co-Conspirators failed to exercise reasonable care when reporting dairy product prices to USDA; whether Defendants and Co-Conspirators made misrepresentations for the purpose of lowering raw milk prices paid to dairy farmers; whether Defendants and Co-Conspirators made misrepresentations to obtain financial gain; whether Defendants and Co-Conspirators engaged in a pattern of racketeering; whether Defendants' and Co-Conspirators' misrepresentations of dairy product prices deprived income from dairy farmers; and the nature of relief available by reason of Defendants' and Co-Conspirators' violations of law." ECF No. 513 at 6-7.

*Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Plaintiffs do not have conflicts of interest with other putative Settlement Class Members. During the last nine years, Plaintiffs and their counsel have also demonstrated they will prosecute this Action vigorously on behalf of the putative Settlement Class.

**C.    The Settlement Class Satisfies Rule 23(b)(3).**

**1.    Common Questions of Fact or Law Predominate.**

Under Rule 23(b)(3) predominance analysis, the Court must determine whether the proposed Settlement Class is "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The requirement "is satisfied if a plaintiff establishes that a 'common nucleus of facts and potential legal remedies' dominates the litigation." *Monterrubio v. Best Buy Stores, Ltd. P'ship*, 291 F.R.D. 443, 450-51 (E.D. Cal. 2013) (quoting *Hanlon*, 150 F.3d at 1022). "Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 476 (E.D. Cal. 2010).

The "common nucleus of facts" in this case derives from Defendants' alleged overarching conspiracy to fraudulently misreport NFDM prices to USDA which reduced Grade A raw milk prices paid to Settlement Class Members across the country. *See, e.g., Medrano*, 2018 U.S. Dist. LEXIS 9979, at *10 ("[T]he violations at issue all arise from a standard practice that applies uniformly to all class members, and therefore resolving the issue of willfulness can be done just once on a class-wide basis. Accordingly, the 'predominance' requirement has been satisfied."); *Monterrubio*, 291 F.R.D. at 450-51 ("The 'common nucleus of facts' in the present case derives from Defendant's alleged practices that applied consistently and uniformly to class members throughout the class period, which deprived Plaintiff and Class Members of reimbursement for expenses related to using their personal vehicles for Defendant's business."). To prove Defendants' alleged conspiracy to misreport NFDM prices, Plaintiffs and putative Settlement Class Members would rely entirely on common proof.

Common proof of the impact of Defendants' misconduct will also predominate over any individual questions in the case. During the Settlement Class Period, the USDA used a formula to calculate monthly raw milk prices that were, by regulation, uniformly included in the paychecks provided to putative Settlement Class Members. Due to the federal formula used by the USDA to calculate raw milk prices, the suppression of reported NFDM prices by Defendants had a common impact on members of the Settlement Class. The USDA used the data misreported by DairyAmerica to calculate raw milk prices that were included in monthly payments to each Settlement Class Member during the Settlement Class Period. For that reason, Defendants' alleged misreporting automatically had a uniform and class-wide impact. Indeed, unlike most class cases, where hired experts put forth damages methodologies that might fairly be viewed skeptically by judges or juries, here the USDA itself has performed a calculation of the class-wide impact of Defendants' misreporting, computing that putative Settlement Class Members lost approximately $50 million during the period April 2006 through April 2007. That USDA formula could reliably be used to compute class-wide damages. The experts retained by Plaintiffs —Dr. Joseph Glauber, former USDA chief economist, and Dr. Randy Fortenberry, Chairman of the Agricultural Markets Advisory Committee to the Commodity Futures Trading Commission—did just that by relying predominantly on the USDA's methodology in making their own class-wide damages determinations.

## 2.    Class Proceedings Are Superior in this Case.

The Settlement Class also satisfies the superiority requirement of Rule 23(b)(3) , which sets forth four non-exhaustive factors: (1) class members' interests in individually controlling the litigation; (2) the extent and nature of any litigation concerning the controversy already begun by class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) likely difficulties in managing a class action.

In *Medrano*, this Court held:
[C]lass members' interest in individually controlling the ligation is low given that all of the members stand to recover relatively little compared to the costs of individual litigation. The court is unaware of any concurrent litigation in this case, or a reason why this particular forum would be ill-suited to resolving plaintiffs' class

1    action.  Additionally, neither party alleges that managing this class action would present undue difficulties.

2

3    2018 U.S. Dist. LEXIS 9979, at *10-12.   The same rationale applies here.  Each individual's

4    recovery is dwarfed by the cost of bringing individual lawsuits; there are not competing cases

5    pending; this matter is ideally suited as a class action in this forum; and Plaintiffs do not foresee

6    manageability issues.  Furthermore, "the alternative litigation possibility would involve 'numerous

7    individual actions[,] would be expensive and time-consuming and would create the danger of

8    conflicting decisions as to persons similarly situated.'" *Id.* (quoting *Lerwill v. Inflight Motion*

9    *Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).  Accordingly, because there is no reasonable

10   alternative to a class action, Plaintiffs have satisfied the "superiority" requirement.  *See Local Joint*

11   *Executive Board v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001) (explaining that "if

12   a comparative evaluation of other procedures reveals no other realistic possibilities, this superiority

13   portion of Rule 23(b)(3) has been satisfied.").

14       **D.**     **The Court Should Reaffirm the Appointment of Class Counsel.**

15       Rule 23(c)(1)(B)  provides that an order certifying a class action "must appoint class counsel

16   under Rule 23(g)."  The Court must consider "(i) the work counsel has done in identifying or

17   investigating potential claims in the action; (ii) counsel's experience in handling class actions, other

18   complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the

19   applicable law; and (iv) the resources counsel will commit to representing the class."  Fed. R. Civ.

20   P. 23(g)(1)(A).  The Court has already appointed the three undersigned law firms to lead this

21   litigation, and those same firms should be appointed Class Counsel.[9] ECF No. 44. Since entry of

22       [9] The Court specifically appointed Cohen Milstein as Interim Class Counsel; (2) Berman
23   Tabacco (formerly, Berman DeValerio) and Keller Rohrback to serve on an Interim Executive
     Committee to assist Interim Class Counsel; and (3) Berman Tabacco to serve as Interim Liaison
24   Counsel. ECF No. 44 at 3-4. In making those appointments, the Court found "there is no dispute
     that" Cohen Milstein has "adequate experience in class actions and complex litigation, adequate
25   knowledge of the applicable law and abundant resources" and that Berman Tabacco and Keller
     Rohrback "are equally experienced and knowledgeable." *Id.* The Court also found that Cohen
26   Milstein "has done a majority of the preparation work leading to the filing of these actions,
     including investigation into the alleged misconduct and identification of the legal theory of the
27   case." *Id.* Cohen Milstein has continued to act as lead counsel throughout the litigation and worked
     cooperatively and efficiently with the firms named to the executive committee.
28

that order, the three undersigned law firms have vigorously litigated this case for nine years and negotiated the excellent settlement at issue. The firms also have substantial experience litigating and settling class actions, the resources to effectuate the settlement, and significant knowledge of the applicable law.

### E.    The Proposed Notice and Plan of Dissemination Satisfies Requirements of Rule 23.

Rule 23(c)(2)(B)   provides that class members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." "Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is 'reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Monterrubio*, 291 F.R.D. at 452.

A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward be heard.'" *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 962 (9th Cir.2009) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Rule 23(c)(2)(B) specifically requires that the notice clearly identify:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; [and] (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed notice here meets those requirements. The notice includes all the information required by Rule 23(c)(2)(B). *See* Long Notice with Claim Form, attached as **Exhibit C**. Plaintiffs' counsel will collaborate with Market Administrators for each of the ten FMMOs to disseminate the detailed Long Notice directly to each farmer who is a member of the Settlement Class, *i.e.* a farmer whose raw Grade A milk was pooled on a FMMO at some point during the Settlement Class Period. In addition, Plaintiffs will publish a Summary Notice in the following two publications that are widely read by dairy farmers: *American Dairymen* and *Progressive Dairyman*. *See* Summary

Notice, attached as **Exhibit D**. Finally, the detailed notice will be available on the website www.MilkPowderLawsuit.com, along with relevant case documents such as the operative complaint and Settlement Agreement itself.

        **F.**      **Proposed Schedule for Final Approval and Dissemination of Class Notice**

       Below is a proposed schedule for providing notice, submitting objections, and holding a fairness hearing:

| Event | Due Date |
| --- | --- |
| Defendants send CAFA notice | 10 days after this motion is filed in court |
| Notice mailed and posted on the internet | 60 days from Preliminary Approval Order |
| Summary notice published | 60 days from Preliminary Approval Order |
| Motion for attorneys' fees, costs and service awards | 90 days from Preliminary Approval Order |
| Deadline for objections | 120 days from Preliminary Approval Order |
| Deadline for exclusions | 120 days from Preliminary Approval Order |
| Deadline for claim forms | 120 days from Preliminary Approval Order |
| Administrator files Affidavit regarding Compliance with notice requirements | 140 days from Preliminary Approval Order |
| Motion for final approval | 140 days from Preliminary Approval Order |
| Responses to objections | 140 days from Preliminary Approval Order |
| Final Fairness Hearing | 170 days from Preliminary Approval Order |

**V.**      <u>**CONCLUSION**</u>

       Based on the foregoing, Plaintiffs respectfully request that the Court (1) preliminarily approve the proposed Settlement Agreement with the Defendants; (2) certify the proposed Settlement Class; (3) appoint Cohen Milstein Sellers & Toll, PLLC, Keller Rohrback L.L.P., and

1   Berman Tabacco as Class Counsel; (4) approve the manner and form of notice to Settlement Class

2   Members; and (5) appoint Rust Consulting as the Claims Administrator.

3

4

5   DATED: August 3, 2018                    Respectfully submitted,

6                                            **BERMAN TABACCO**

7                                            By:    */s/ A. Chowning Poppler*
                                                        A. Chowning Poppler

8
                                             Joseph J. Tabacco, Jr. (SBN 75484)
9                                            Christopher T. Heffelfinger (SBN 118058)
                                             44 Montgomery Street, Suite 650
10                                           San Francisco, CA  94104
                                             Telephone: (415) 433-3200
11                                           Facsimile: (415) 433-6382
                                             Email: jtabacco@bermantabacco.com
12                                                    cheffelfinger@bermantabacco.com
                                                      cpoppler@bermantabacco.com
13

14                                           Benjamin D. Brown (SBN 202545)
                                             **COHEN MILSTEIN SELLERS**
15                                           **& TOLL, PLLC**
                                             1100 New York Avenue, N.W.
16                                           Suite 500, West Tower
                                             Washington, DC 20005
17                                           Telephone: (202) 408-4600
                                             Facsimile: (202) 408-4699
18                                           Email:  bbrown@cohenmilstein.com

19                                           George F. Farah, *Admitted Pro Hac Vice*
                                             **COHEN MILSTEIN SELLERS**
20                                           **& TOLL, PLLC**
                                             88 Pine Street
21                                           14th Floor
                                             New York, NY 10005
22                                           Telephone: (212) 838-7797
                                             Facsimile: (212) 838-7745
23                                           Email:  gfarah@cohenmilstein.com

24                                           Leslie M. Kroeger, *Admitted Pro Hac Vice*
                                             **COHEN MILSTEIN SELLERS**
25                                           **& TOLL, PLLC**
                                             2925 PGA Boulevard, Suite 200
26                                           Palm Beach Gardens, FL 33410
                                             Telephone: (561) 515-1400
27                                           Facsimile: (561) 515-1401
                                             Email:  lkroeger@cohenmilstein.com

28

Lynn L. Sarko, *Admitted Pro Hac Vice*
Mark A. Griffin, *Admitted Pro Hac Vice*
Cari C. Laufenberg, *Admitted Pro Hac Vice*
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206)-623-1900
Facsimile: (206)-623-3384
Email: lsarko@kellerrohrback.com
        mgriffin@kellerrohrback.com
        claufenberg@kellerrohrback.com

Ron Kilgard, Admitted Pro Hac Vice
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602)-248-0088
Facsimile: (602)-248-2822
Email: rkilgard@kellerrohrback.com

*Counsel for Plaintiffs and the Proposed Class*

# EXHIBIT A

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Benjamin D. Brown (SBN 202545)
1100 New York Avenue, N.W., Suite 500
Washington D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: bbrown@cohenmilstein.com

-and-

George Farah *(Pro Hac Vice)*
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: gfarah@cohenmilstein.com

*Counsel for Plaintiffs and the Proposed Class*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| GERALD CARLIN, JOHN RAHM, PAUL ROZWADOWSKI and DIANA WOLFE, individually and on behalf of themselves and all others similarly situated, | Case No. 1:09 CV 00430-AWI (EPG) |
| Plaintiffs, | **SETTLEMENT AGREEMENT** |
| v. | |
| DAIRYAMERICA, INC. and CALIFORNIA DAIRIES, INC., | Judge: Hon. Anthony W. Ishii<br>Action Filed:   March 6, 2009 |
| Defendants. | |

1    This Settlement Agreement ("Agreement") is made and entered into this ___ day of July

2  2018 by and between DairyAmerica, Inc. ("DairyAmerica") and California Dairies, Inc.

3  ("California Dairies") (collectively "Defendants"), and the putative plaintiff class representatives

4  Gerald Carlin, John Rahm, Paul Rozwadowski, and H. Diana Wolfe ("Plaintiffs"), both

5  individually and on behalf of the Settlement Class, as more particularly defined in Paragraph 1.4

6  below ("Settlement").  This Agreement is intended to fully, finally, and forever resolve, discharge

7  and settle the Released Claims (as defined below), upon and subject to the conditions hereof.

8    WHEREAS:

9    A.    Plaintiffs have been and are prosecuting the above-captioned case, *Gerald Carlin*

10  *et al. v. DairyAmerica, Inc. et al.,* No. 1:09 CV 00430 (AWI) (EPG) ("Action"), on their own

11  behalf and on behalf of the putative class, against Defendants;

12    B.    Plaintiffs allege that Defendants participated in an unlawful conspiracy with each

13  other and certain other cooperative members to misreport, and that they did misreport, the pricing

14  and volume of sales of nonfat dry milk to the U.S. Department of Agriculture;

15    C.    Defendants have denied and continue to deny all material allegations in the Action,

16  and have asserted defenses to Plaintiffs' claims;

17    D.    Plaintiffs have investigated the facts and the law regarding the Action and have

18  concluded that resolving their claims against Defendants according to the terms set forth below is

19  in the best interest of Plaintiffs and the Settlement Class;

20    E.    Defendants, despite their belief that they are not liable for the claims asserted

21  against them and that they have good defenses thereto, have nevertheless agreed to enter into this

22  Agreement to avoid further expense, inconvenience, and the distraction of burdensome and

23  protracted litigation; to obtain the releases, orders, and judgment contemplated by this Agreement;

24  and to put to rest with finality all claims that have been or could have been asserted against

25  Defendants, based on the allegations of the Action;

26    F.    Arms' length settlement negotiations have taken place among Defendants and

27  Plaintiffs' counsel, as defined below, and this Agreement, which embodies all the terms and

28

conditions of the settlement between Defendants and Plaintiffs, on behalf of the Settlement Class, has been reached as provided herein;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned, subject to the approval of the Court, that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Released Parties, as defined below, and except as hereinafter provided, without costs as to Plaintiffs or the Settlement Class on the following terms and conditions:

**1.     DEFINITIONS**

1.1     "Action" or "*Carlin* Action" means the consolidated class action captioned as *Gerald Carlin et al. v. DairyAmerica, Inc. et al.,* No. 1:09 CV 00430 (AWI) (EPG).

1.2     "Claimant" means a Settlement Class Member who submits a valid claim in accordance with the terms of this Agreement and the Distribution Plan.

1.3     "Claims Administrator" means the entity selected by Class Counsel to administer the Settlement and, in particular, the claims process for the Settlement.

1.4     "Settlement Class" or "Settlement Class Members" means the following class stipulated by the Parties for settlement purposes only, subject to Court approval that the class satisfies the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure:

> All dairy farmers located in the United States who sold raw milk that was priced according to a Federal Milk Marketing Order during the period January 1, 2002 through April 30, 2007. Excluded from the Class are California Dairies and DairyAmerica, any entity in which California Dairies or DairyAmerica have a Controlling Interest, and their respective legal representatives, heirs, and successors.

1.5     "Class Counsel" means:

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Benjamin D. Brown
1100 New York Avenue, N.W., Suite 500
Washington, DC  20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: bbrown@cohenmilstein.com

-and-

George F. Farah *(Pro Hac Vice)*
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: gfarah@cohenmilstein.com

**KELLER ROHRBACK L.L.P.**
Lynn L. Sarko, *(Pro Hac Vice)*
Mark A. Griffin *(Pro Hac Vice)*
Cari C. Laufenberg *(Pro Hac Vice)*
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206)-623-1900
Facsimile: (206)-623-3384
Email: lsarko@kellerrohrback.com
         mgriffin@kellerrohrback.com
         claufenberg@kellerrohrback.com

        -and-

Ron Kilgard *(Pro Hac Vice)*
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012
Telephone: (602)-248-0088
Facsimile: (602)-248-2822
Email: rkilgard@kellerrohrback.com

**BERMAN TABACCO**
Christopher T. Heffelfinger (SBN 118058)
A. Chowning Poppler (SBN 272870)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: cheffelfinger@bermantabacco.com
         cpoppler@bermantabacco.com

1.6    "Settlement Class Period" means the period from January 1, 2002 through April 30, 2007.

1.7    "Class Representatives" or "Plaintiffs" means the following individuals named as plaintiffs in the Fourth Amended Class Action Complaint and proposed to represent the Settlement Class pursuant to the Agreement: Gerald Carlin, John Rahm, Paul Rozwadowski, and H. Diana Wolfe.

1.8    "Controlling Person" or "Controlling Interest" means an entity or a person having significant ownership interest in another entity, whether such entity is an association, corporation,

1    partnership, limited partnership, limited liability company, joint venture, or any other entity with

2    standing to prosecute or defend an action in its standalone capacity.

3         1.9    "Court" means the United States District Court for the Eastern District of

4    California.

5         1.10    "Defendants" means DairyAmerica, Inc. and California Dairies, Inc.

6         1.11    "Distribution Plan" shall have the meaning set forth in Paragraph 8.7 hereto.

7         1.12    "Effective Date" means the earliest date on which all of the events and conditions

8    specified in Paragraph 5.1 herein have occurred or have been met.

9         1.13    "Fairness Hearing" means the hearing described in Section 4.

10        1.14    "Former Plaintiffs" means the following individuals who were named as plaintiffs

11   in prior complaints in the Action: Michael Schugg, Timothy Rawlings, James Rehberg, and

12   Ronald Hayek.

13        1.15    "Judgment" means the final order of judgment, dismissal, and approval of

14   Settlement.

15        1.16    "Litigation Expenses" means the reasonable costs and expenses incurred by

16   counsel for Plaintiffs in connection with commencing and prosecuting the Action, for which Class

17   Counsel intends to apply to the Court for reimbursement.  Litigation Expenses may also include

18   reimbursement of Settlement Class Representatives' reasonable costs and expenses.

19        1.17    "Party" or "Parties" means the Plaintiffs and Defendants in the Action.

20        1.18    "Person" means an individual or an entity.

21        1.19    "Preliminary Approval Order" means an order to be entered by the Court

22   preliminarily approving the Settlement or the docket entry of a ruling from the Court granting the

23   motion for preliminary approval of the Settlement.

24        1.20    "Released Claims" means all claims, complaints, demands, judgments, damages,

25   debts, liabilities, actions, proceedings, remedies, causes of action, or suits, of whatever kind or

26   nature, and whether known or unknown, suspected or unsuspected, asserted or unasserted in the

27   Action, in law or equity, as against the Released Parties, as defined in Paragraph 1.21 below, from

28

---

1   January 1, 2002 through and including the effective date of the Agreement, and arising from,

2   relating to, or in connection with any matters alleged by Plaintiffs or Former Plaintiffs in any of

3   the complaints filed in the Action, including any such complaints that were dismissed by the

4   Court in the Action.   In avoidance of doubt, the term "Released Claims" encompasses any

5   reporting by DairyAmerica of nonfat dry milk prices to USDA from January 1, 2002 through and

6   including the Effective Date of this Agreement, including the involvement, if any, by California

7   Dairies and/or any other DairyAmerica cooperative members in such reporting, but does not

8   encompass claims or potential claims by Settlement Class Members that do not arise out of or are

9   not connected with or do not relate to the same conduct, transactions and/or occurrences described

10  in the complaints filed in the *Carlin* Action.

11      1.21    "Released Parties" means Defendants, their predecessors, successors, subsidiaries,

12  insurers, members, former members, owners, attorneys, and any and all past and present officers,

13  directors, employees, managing agents, and Controlling Persons of such entities.

14      1.22    "Releasing Parties" means, individually and collectively, Plaintiffs, Former

15  Plaintiffs, the Settlement Class, and all Settlement Class Members, on behalf of themselves and

16  any Person claiming by or through them as an heir, administrator, devisee, predecessor, successor,

17  parent, subsidiary, representative of any kind, all entities in which they have an ownership

18  interest, shareholder, partner, contractor, attorney, or insurer.   Releasing Parties shall not include

19  any Person who is excluded from the Class pursuant to Paragraph 10.1.

20      1.23    "Sanctions" means those discovery proceedings in this Action for monetary and

21  non-monetary sanctions which Plaintiffs, through Class Counsel, earlier moved for as against

22  Defendant DairyAmerica due to alleged violations of discovery rules and orders.   On August 24,

23  2017, ECF No. 474, Magistrate Judge Grosjean granted that motion in part, and subsequent

24  submissions were made to assist the Court in determining the quantum of any monetary sanctions.

25  DairyAmerica has appealed that determination to District Judge Ishii and, as of the date of this

26  Agreement, there is not a final determination by the District Court of whether sanctions are

27  appropriate or, if so, what the quantum of any sanctions will be.

28

1.24    "Settlement Amount" or "Settlement Fund" shall be the $40,000,000 U.S. dollars specified in Section 7 plus accrued interest on said deposits as set forth in Sections 7 and 8.

**2.      MOTION FOR PRELIMINARY APPROVAL**

2.1    Following the execution of this Agreement, but not later than August 3, 2018, Class Counsel shall file with the Court a motion, which shall not be opposed by Defendants, requesting entry of a Preliminary Approval Order, providing for, *inter alia*:

(a)    Preliminary approval of this Agreement as fair, reasonable, and adequate and in the best interests of the Settlement Class, considering all relevant risks and factors of litigation;

(b)    Approval of the form and manner of notice described in Section 3;

(c)    Appointment of a Claims Administrator;

(d)    The scheduling of a hearing (the "Fairness Hearing") to consider (i) whether this Agreement should be approved as fair, reasonable, and adequate to, and in the best interests of, the Settlement Class, and whether Judgment should be entered dismissing the Released Claims on the merits and with prejudice; (ii) whether to approve any application by Class Counsel for an award of attorneys' fees and reimbursement of costs and expenses; and (iii) whether to approve any application for the payment of service awards to the Class Representatives or Former Plaintiffs;

(e)    The date by when any Settlement Class Member may serve a written request for exclusion from the Settlement Class;

(f)    The date by when any Settlement Class Member may serve written objections to this Agreement or any application by Class Counsel for attorneys' fees and reimbursement of expenses, which date shall, subject to the Court's approval, be thirty-five (35) days prior to the Fairness Hearing;

(g)    A stay of all further pretrial and trial proceedings against Defendants; and

(h)    An injunction against the initiation, commencement, or prosecution of any Released Claim by any of the Releasing Parties.

2.2     Defendants shall not object to certification of the Settlement Class, solely for the purposes of settlement of the Action as set forth herein, provided, however, that if this Agreement does not receive Court approval in all material respects, then the Parties shall return to their respective positions in the Action as of the date of this Agreement, pursuant to Paragraph 12.4 and 12.5.

3.      **NOTICE TO SETTLEMENT CLASS MEMBERS**

3.1     The Settlement Class, acting through Class Counsel, shall develop, after consultation with Defendants and the Claims Administrator, a proposed plan by which to notify the Settlement Class of the Settlement.  The proposed notice program shall include a proposed form of notice which shall be subject to Court approval.  Class Counsel, on behalf of the Settlement Class, shall submit the proposed notice program to the Court for approval at the same time the Settlement Class files its motion requesting entry of a Preliminary Approval Order as described above in Paragraphs 1.19 and 2.1.

3.2     In accordance with the requirements of Rule 23 of the Federal Rules of Civil Procedure and Due Process, the notice program shall attempt to identify and individually notify, to the extent practicable, each member of the Settlement Class reasonably ascertainable by the ten Federal Milk Marketing Orders in effect during the Settlement Class Period or from other sources.

3.3     In order to provide notice of the Settlement to those individuals who may not be capable of being identified for purposes of providing individual notice, publication notice, to the extent ordered by the Court, shall also be provided.

4.      **FAIRNESS HEARING**

4.1     At the Fairness Hearing, the Settlement Class shall seek entry of a Judgment which shall not be opposed by Defendants, *inter alia*:

(a)     Finally approving this Agreement and its terms as being fair, reasonable, and adequate, and in the best interest of the Settlement Class, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation according to its terms;

(b)     Determining that the notice to the Settlement Class constituted, under the

circumstances, the most effective and practicable notice of this Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

(c) Permanently barring and enjoining institution, commencement, or prosecution, by any of the Releasing Parties, of any action asserting any Released Claim against the Released Parties, in any local, state, federal, or other court or tribunal of any nation, or in any agency or other authority or arbitral or other forum wherever located;

(d) Providing that any Settlement Class Member who failed to object in the manner and by the deadline prescribed in this Agreement shall be deemed to have waived any objections to the Settlement or this Agreement and will forever be barred from making any such objections to this Agreement;

(e) Providing that any Person who timely submitted a Request for Exclusion shall be excluded from the Settlement Class, shall have no rights with respect to this Agreement, and shall receive no payments as provided in this Agreement;

(f) Retaining exclusive jurisdiction over this Agreement, including the administration and consummation of this Agreement; and

(g) Determining pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there be no just reason for delay and directing that the judgment of dismissal shall be final and entered within ten (10) business days following the receipt of all monies contemplated to be paid under this Agreement.

4.2 Any Settlement Class Member who objects to the Settlement may appear at the Fairness Hearing in person or through counsel, at his or her own expense, to present any evidence or argument with respect to the Settlement, to the extent permitted by the Court. However, no such Settlement Class Member shall be heard, and no papers, briefs, pleadings, or other documents shall be received and considered by the Court, unless such Settlement Class Member properly submits a written objection that includes (a) notice of intention to appear, and (b) the specific grounds for the objection. The Settlement Class will request that the Court order that any

written objection must be filed with the Court no later than thirty-five (35) days prior to the date set for the Fairness Hearing and mailed to Class Counsel and counsel for Defendants and postmarked (or mailed by overnight delivery) no later than thirty-five (35) days prior to the date of the Fairness Hearing. Any Settlement Class Member who fails to object in the manner prescribed herein shall be deemed to have waived any objections to the Settlement and this Agreement and will forever be barred from making any such objections to the Settlement or this Agreement.

4.3     Plaintiffs, Defendants or their counsel will not encourage or advise any member of the Settlement Class to submit an objection to the Agreement (or any aspect thereof) or to submit a Request for Exclusion from the Settlement Class.

4.4     If this Agreement is finally approved by the Court in its current form, or in a form not materially different from its current form, the Parties and the Settlement Class agree not to take any appeal from entry of judgment.  Final approval of this Agreement shall not be contingent upon the Court making any particular award of attorney's fees, costs or expenses or any service award to Class Representatives or Former Plaintiffs, and any order of the Court making or relating to such awards shall not affect the approval or finality of this Agreement or the validity, effectiveness or enforceability of the releases set forth herein.

**5.     EFFECTIVE DATE OF AGREEMENT**

5.1     This Agreement shall become final and effective on the earliest date on which all of the following events and conditions have occurred or have been met:

(a)     No party has timely availed itself of any right to terminate this Agreement pursuant to Paragraphs 10.3 or 12.1 herein;

(b)     The Court has entered the Judgment, following notice to the Settlement Class and the Fairness Hearing, finally approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action with prejudice as to all Settlement Class Members; and

(c)     The time for appeal or to seek permission to appeal from the Judgment has

expired or, if appealed, approval of this Agreement and the Judgment has been affirmed in its

entirety by the court of last resort to which such appeal has been taken and such affirmance has

become no longer subject to further appeal or review. It is agreed that neither the provisions of

Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be

taken into account in determining the above-stated times.

**6.       RELEASE AND COVENANT NOT TO SUE**

6.1     Upon the Effective Date, and in consideration of the Settlement Consideration

specified in Section 7 herein and for other good and valuable consideration, the sufficiency and

receipt of which is hereby acknowledged, each of the Releasing Parties shall be deemed to have,

and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and

discharged all Released Claims against the Released Parties, shall have covenanted not to sue any

of the Released Parties with respect to all Released Claims, and shall be permanently barred and

enjoined from instituting, commencing, prosecuting or asserting any Released Claims against any

of the Released Parties.

6.2     In addition to the release and covenant not to sue provided by the Releasing Parties

in Paragraph 6.1 herein, the Releasing Parties expressly waive and release any and all provisions,

rights, and benefits conferred by § 1542 of the California Civil Code and any statute, rule, or legal

doctrine of any state or territory of the United States that is similar, comparable, or equivalent to

California Civil Code § 1542, which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.**

Each Releasing Party may hereafter discover facts other than or different from those

which he, she, or it knows or believes to be true with respect to the claims that would otherwise

fall within the definition of Released Claims, but each Releasing Party hereby expressly waives

and fully, finally, and forever settles and releases, upon this Agreement becoming final, any

1   known or unknown, suspected or unsuspected, contingent or non-contingent claim that would

2   otherwise fall within the definition of Released Claims, whether or not concealed or hidden,

3   without regard to the subsequent discovery or existence of such different or additional facts.

4         Plaintiffs, any Settlement Class Member, and the Released Parties shall be deemed by

5   operation of the Judgment to have acknowledged that the foregoing waiver was separately

6   bargained for and a key element of the Settlement of which this release is a part.

7   **7.      SETTLEMENT CONSIDERATION**

8         7.1     Monetary Payment. Defendants will pay an aggregate of $40,000,000 (the

9   "Settlement Amount") in two payment-installments of $20,000,000 each.  The first payment-

10  installment of $20,000,000 in U.S. dollars ("First Payment-Installment"), shall be paid no later

11  than ten (10) business days following the entry of the Preliminary Approval Order and receipt by

12  Defendants of complete payee information, including an executed Form W-9, and complete

13  payment instructions. The second payment-installment of $20,000,000 in U.S. dollars ("Second

14  Payment Installment") shall be paid by the later of (a) ten (10) business days following the

15  Effective Date or (b) January 11, 2019.

16        7.2     The First Payment-Installment shall be transferred into an interest-bearing escrow

17  account as described in Section 8 below (the "Escrow Account").  Except as otherwise provided

18  in Section 12 herein, all interest generated on the First Payment-Installment shall inure to the

19  benefit of the Class and Class Counsel, according to their proportionate interests.  In the case of

20  Class Counsel, to the extent not already distributed in whole or in part, one-half of their fees

21  approved by the Court plus all out-of-pocket expenses approved by the Court for reimbursement,

22  shall constitute the proportionate interest of Class Counsel for purposes of calculating and

23  allocating Class Counsel's share of interest on the First Installment-Payment.

24        7.3     The Second Payment-Installment, on becoming due and payable, shall similarly be

25  transferred into the same interest-bearing Escrow Account described in Section 8 below.  Except

26  as otherwise provided in Section 12 herein, all interest generated on the Second Payment-

27  Installment shall inure to the benefit of the Class and Class Counsel, according to their

28

proportionate interests.  In the case of Class Counsel, their remaining unpaid but Court-approved fees shall constitute the proportionate interest of Class Counsel for purposes of calculating and allocating Class Counsel's share of interest on the Second Payment-Installment.

7.4     In the event an appeal of the Court's order finally approving the Settlement is filed within 30 days of that order becoming final, interest earned on $20,000,000 during the pendency of the appeal will be paid into Escrow when the Second Payment-Installment is paid as follows. Beginning from the date of filing of the first notice of appeal, if any, and up until the date there is a final order or judgment on all appeals, interest shall accrue on the Second Payment-Installment, or any portion of the Second Payment-Installment remaining unpaid during the pendency of such appeal, at same rate that interest will accrue on funds in the Escrow Account as set forth in Paragraph 8.2 below.

7.5     If either Payment-Installment is not timely and fully received into Escrow, it shall constitute a default ("Default"), and interest at the rate of twelve percent (12%) compounded annually shall accrue until such time as the due and owing Payment-Installment has been fully paid into Escrow.  In the event of such Default, Plaintiffs shall provide Defendants with written notice of Default, and Defendants shall be afforded an opportunity to cure such Default for a period of five (5) business days after receipt of Plaintiffs' written notice ("Cure Period").  In the event that Defendants fail to cure any such Default within the Cure Period, it shall constitute a breach of the Agreement.  In the event of such breach, Plaintiffs may elect to either terminate the Agreement or to demand payment of the due and owing Payment-Installment(s) with interest accruing from the date of Default as specified above by bringing a motion to compel such performance before this Court to complete all performance due under this Agreement.  In the event Plaintiffs seek to compel performance of this Agreement, all such sums received into Escrow shall be retained in Escrow and credited against the unpaid principal amounts that remain due and owing under this Agreement. Interest accumulated on funds already received into Escrow shall not be credited against the unpaid principal still due under the Payment-Installments described in Paragraphs 7.1-7.3 but shall be in addition to such principal payments specified in

Paragraph 7.1 and shall belong to the Settlement Class and Class Counsel according to their respective percentage interests, as applicable.

7.6    The monetary relief described in Paragraph 7.1 shall be the sole monetary relief afforded to the Settlement Class. Defendants will have no responsibility to make any payment other than the payments described in Paragraph 7.1.

**8.      THE ESCROW ACCOUNT/SETTLEMENT FUND**

8.1    The Escrow Account will be established at Eagle Bancorp, Inc. ("Escrow Agent"), such escrow to be administered under the Court's continuing supervision and control.  Class Counsel shall insist on an escrow agreement that requires appropriate accounting records to be maintained to reflect all transactions involving the Settlement Fund which shall be kept on a calendar year, as required by Treas. Reg. § 1.468B-2(j).

8.2    The Settlement Fund shall be invested, at the sole discretion of Class Counsel, and in accordance with the escrow agreement described in Paragraph 8.1 hereof, in a United States treasury money market fund subject to regulations of the United States Securities Exchange Commission, or in United States Government Treasury Bills or Notes of no more than six (6) months' duration, provided however that when disbursement of some or all of the Settlement Fund is approved by the Court, the necessary funds may be transferred into and paid out of federally insured bank accounts. All interest or other income earned on the Settlement Fund shall become and remain part of the Settlement Fund.

8.3    All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as the funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

8.4    The Settlement Class and Defendants, their counsel, and the Court shall treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 for all periods after the date of initial funding of the Settlement Fund. The Settlement Class and Defendants, their counsel, and the Court agree to take no action inconsistent with the treatment of the Settlement Fund in such manner, and all provisions of this Agreement

shall be interpreted in a manner, that is consistent with such treatment. As required, the Settlement Class and Defendants shall timely make such elections as are necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest date permitted. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.

8.5     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, the regulations promulgated thereunder, the "administrators" of the Settlement Fund shall be the Claims Administrator designated by Class Counsel and approved by the Court. The Class Counsel's designee shall timely and properly file or cause to be filed on a timely basis all tax returns necessary or advisable with respect to the Settlement Fund (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1))

8.6     All of the following shall be paid out of the Settlement Fund: (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon any Defendant or any other Released Party with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses of and costs incurred in connection with the operation and implementation of Paragraphs 8.1, 8.2, 8.4, 8.5 and 8.6 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 8.6 ("Tax Expenses")).

8.7     (a)     After the Effective Date, the Settlement Fund shall be distributed in accordance with a plan that Class Counsel shall submit, at the time Class Counsel seeks preliminary approval of the Settlement, and subsequently as appropriate, to the Court for approval of the Settlement ("Distribution Plan").

(b)     The parties anticipate that such a Distribution Plan would provide, in material part,

that the Settlement Fund, which includes interest earned thereon, be distributed to approved Claimants, less any amounts approved by the Court for the costs of notice to the Settlement Class and administration of the Settlement, escrow costs, taxes, payment of attorneys' fees, reimbursement of Litigation Expenses, and service awards to Class Representatives or Former Plaintiffs (the "Net Settlement Funds"); further, that the Net Settlement Funds will be distributed on a *pro rata* basis; and that an approved Claimant's *pro rata* share of the settlement will be determined by dividing (i) the volume of the Claimant's total raw Grade A milk produced and pooled on a Federal Milk Marketing Order during the period January 1, 2002 to April 30, 2007, by (ii) the total volume of raw Grade A milk produced and pooled on Federal Milk Marketing Orders during the period January 1, 2002 to April 30, 2007 by all members of the Settlement Class.

8.8     Class Representatives and Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all Court-approved expenses, including, but not limited to, Court-approved attorneys' fees and Litigation Expenses.

8.9     Defendants shall not be liable for any Litigation Expenses, Tax Expenses, or other fees, costs, or expenses of any of Settlement Class' or Class Representatives' respective attorneys, experts, advisors, agents, or representatives, and all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.  Except as otherwise specified in this Agreement at Paragraphs 7.4 and 7.5, in no event shall Defendants be obligated to pay anything in addition to the Settlement Amount described in Paragraph 7.1 hereto, including without limitation Settlement Class notice costs, Court-approved attorneys' fees, service awards to Class Representatives or Former Plaintiffs, settlement administration costs, escrow costs, taxes, or any other cost or expense arising from or to be paid as part of this Agreement.

8.10     Prior to the Effective Date, (i) up to $300,000 of the Settlement Fund may be used to provide notice of the Settlement to Settlement Class Members and for settlement administration costs, (ii) up to $20,000 of the Settlement Fund may be used for escrow agent costs, and (iii) any amount of the Settlement Fund may be used to pay required taxes on income earned on the

Settlement Fund. Except as otherwise provided in this Paragraph, any disbursement from the Settlement Fund, including disbursements for Court-approved attorneys' fees, Litigation Expenses, and service awards to named Class Representatives or Former Plaintiffs, shall be made only upon approval and order of the Court.

8.11    Where there are Net Settlement Funds remaining, and after taking into account adequate reserves to pay all administration and tax expense, Class Counsel is authorized to make follow-on distributions to approved Claimants to complete distribution of all proceeds to Settlement Class Members.   Where a follow-on distribution is contemplated, but it is either uneconomical or impractical to effect a secondary distribution to all approved Claimants, Class Counsel may establish a minimum *pro rata* threshold claim level below which no distributions will be made in order to exhaust remaining funds by making distributions only to those meeting or exceeding the minimum *pro rata* threshold level at a cost effective price point taking into account the incremental costs of further claims administration in effecting a follow-on distribution.   To the extent funds remaining in the Settlement Fund are too modest in the view of Class Counsel to make any meaningful final distribution on a *pro rata* basis, then Class Counsel shall apply to the Court for permission to distribute those residual funds to a *cy pre*s beneficiary.   To select the *cy pres* beneficiary, Class Counsel will present a list of five potential *cy pres* beneficiaries to Defendants, and Defendants will have five (5) business days to reject up to four of the beneficiaries on the list.   If Defendants fail to reject the proposed *cy pres* beneficiaries within the five-day period, Class Counsel will select the *cy pres* beneficiary from list.   Beyond the Parties and the Court, notice of any application identifying proposed *cy pres* beneficiaries and requesting that a distribution be made to such *cy pres* beneficiaries from residual funds, net of remaining administration and tax expense, need only be given to any party-in-interest with standing or Claimant who requested such notice during or prior to the Fairness Hearing, providing that the Class Notice describes this procedure for potential *cy pres* recipients.

## 9.    WARRANTIES BY CALIFORNIA DAIRIES

9.1    Defendant California Dairies makes the following warranties: (1) California

Dairies warrants that it has the means, the resources, and the intention to timely and fully make the Payment-Installments described above in Paragraphs 7.1-7.3; (2) California Dairies warrants that it is currently unaware of any circumstances that would impair its ability to timely and fully make Payment-Installments described in Paragraphs 7.1-7.3; and (3) California Dairies warrants that going forward from the date of this Settlement it will not enter into any lending arrangements, or extend trade credits, that would impair its ability to timely and fully make the Payment-Installments described in Paragraphs 7.1-7.3.

**10.    EXCLUSIONS AND TERMINATION**

10.1    Any Person who wishes to seek exclusion from the Settlement Class for purposes of this Settlement must timely submit a written request for exclusion as provided in this Paragraph (a "Request for Exclusion"). Any Person who timely submits a Request for Exclusion ("Opt-Out") shall be excluded from the Settlement Class, shall have no rights with respect to this Agreement, and shall receive no payments as provided in this Agreement. A Request for Exclusion must be in writing and state the name, address, and telephone number of the Person(s) seeking exclusion and expressly provide authorization to the applicable market administrator(s) to provide to the Claims Administrator, for purposed of aggregation of all Requests for Exclusion only, that Person(s) total pooled milk volume during the Class Period.  The Parties shall request that the Court order that the Request for Exclusion must be mailed to the Claims Administrator at the address provided in the notices to Settlement Class Members and postmarked (or mailed by overnight delivery) no later than thirty-five (35) calendar days prior to the date set for the Fairness Hearing.

10.2    The Claims Administrator shall forward each Request for Exclusion to Class Counsel and counsel for the Defendants within two (2) business days of receipt.

10.3    Defendants shall have the option to terminate the Settlement upon the occurrence of a condition relating to either the total number of Persons who timely submitted Requests for Exclusion, or the total volume of raw milk produced by such Persons and pooled on Federal Milk Marketing Orders during the Class Period.  The specific terms of that condition shall be set forth in a Confidential Side Letter executed between Class Counsel and Defendants.  Those terms shall

---

14660108.1

include the following:

(a)    Independently of the Claims Administrator's obligations to forward Requests for Exclusion to both Class Counsel and counsel for Defendants as described in Paragraph 10.2, within five (5) calendar days after the end of the period established by the Court, and as set forth in the notice, to request exclusion from the Settlement Class, Class Counsel shall provide to Defendants, through their counsel, with a written list of all those putative Settlement Class Members requesting exclusion from the Class.

(b)    In the event that the total number of, or the total volume of raw milk produced and pooled on Federal Milk Marketing Orders during the Class Period by, Opt-Outs is equal to or greater than the numbers or percentages set forth in the Confidential Side Letter, then Defendants shall have the right to terminate the Settlement by providing written notice to Class Counsel.  Such written notice shall be due within fourteen (14) calendar days of Defendants receiving the list of Opt-Outs described in subparagraph (a) above.

(c)    Plaintiffs may attempt to obtain rescission of any decision by an Opt-Out to request exclusion prior to Defendants invoking their right to terminate under this Paragraph.

## 11.    ATTORNEYS' FEES AND SERVICE AWARDS

11.1    Class Counsel may submit an application or applications to the Court ("Fee and Expense Application") for distribution to them from the Settlement Fund, and Defendants shall not oppose such application for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of Litigation Expenses, plus interest on such Court-approved attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  Class Counsel reserve the right to make additional applications for fees and expenses incurred, but in no event shall the Released Parties be responsible to pay any such additional fees

1   and expenses, or any interest thereon, except to the extent they are paid out of the Settlement

2   Fund.

3          11.2    (a)     Following entry of the Fee and Expense Award and the Judgment, one-half

4   of the total amount of those fees and expenses awarded shall immediately be paid to Class

5   Counsel from the First Payment-Installment described in Paragraphs 7.1-7.2, notwithstanding the

6   existence of any timely objections filed thereto, or potential for appeal therefrom, or collateral

7   attack on the Settlement or any party thereof, subject to Class Counsel's obligation to repay all

8   such amounts with interest at the same rate as is earned on the First Payment-Installment on the

9   portion allocable to those Court-approved attorneys' fees and Litigation Expenses if the

10   Settlement is terminated for any reason, or if, as a result of any appeal or further proceedings or

11   successful collateral attack, the award of Court-approved attorneys' fees and/or Litigation

12   Expenses is reduced or reversed.

13          (b)     Following receipt of the Second Payment-Installment as described in Paragraphs

14   7.1 and 7.3, all unpaid remaining Court-approved attorneys' fees and any remaining Litigation

15   Expenses shall be paid immediately to Class Counsel from the Settlement Fund notwithstanding

16   the existence of any timely objections filed thereto, or potential for appeal therefrom, or collateral

17   attack on the Settlement or any party thereof, subject to Class Counsel's obligation to repay all

18   such amounts with interest at the same rate as is earned on the Second Payment-Installment on the

19   portion allocable to those Court-approved attorneys' fees and Litigation Expenses distributed if

20   the Settlement is terminated for any reason, or if, as a result of any appeal or further proceedings

21   or successful collateral attack, the award of Court-approved attorneys' fees and/or Litigation

22   Expenses is reduced or reversed.

23          (c)     With reference to subparagraphs (a) and (b) above in this Paragraph, Class Counsel

24   shall make the appropriate refund or repayment of all attorneys' fees and Litigation Expenses

25   received no later than ten (10) business days after receiving from the Defendants' Counsel or

26   from a court of appropriate jurisdiction notice of the termination of the Settlement or notice of any

27   reduction or reversal of the award of attorneys' fees, service awards, and/or Litigation Expenses.

28

11.3    The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund.

11.4    Defendants do not and will not object to Plaintiffs seeking approval from the Court to pay each of the named Class Representatives a service award not to exceed $90,000 each. Defendants do not and will not object to Plaintiffs seeking approval from the Court to pay Former Plaintiffs who were deposed, a service award not to exceed $10,000 each.

11.5    The procedure for and allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs, expenses, and service awards to Class Representatives or Former Plaintiffs to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Agreement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Agreement.

11.6    Neither Defendants nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any Fee or Expense Award in the Action.

11.7    Neither Defendants nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Class Counsel, or any other person who may assert some claim thereto, of any Fee or Expense Award that the Court may make in the Action.

**12.      WITHDRAWAL FROM OR MODIFICATION OF THE SETTLEMENT**

12.1    If the substance of the Agreement or a material provision of the Agreement does not receive Final Approval by the District Court, or is materially modified by the District Court, then Class Counsel or Defendants may, at their option, terminate and declare the Settlement and Agreement null and void by written notice to the District Court and to counsel for the other Parties filed and served within ten (10) business days of the entry of an order not granting court approval or Final Approval or having the effect of disapproving or materially modifying the terms

---

1   of the Agreement.

2       12.2   If the Settlement is terminated in accordance with the applicable terms of this

3   Agreement before payment of claims to Settlement Class Members, then the Parties will be

4   restored to their respective positions in the *Carlin* Action as of the date of this Agreement, and,

5   within ten (10) business days after the termination, Defendants shall be reimbursed the Settlement

6   Fund as follows: the Settlement Fund, including interest thereon, less any funds actually disbursed

7   pursuant to Paragraphs 8.6 and 8.10 will be returned to Defendants, and Class Counsel shall

8   reimburse Defendants for one-half of any funds actually disbursed for notice and administration

9   costs pursuant to Paragraph 8.10.

10      12.3   A modification or reversal on appeal of any amount of Class Counsel's fees and

11  expenses awarded by the Court from the Settlement Fund or any Distribution Plan, including

12  service awards, shall not be deemed a modification of all or a part of the terms of this Agreement

13  or such final judgment.

14      12.4   If the Agreement is not approved in all material parts by the Court, or the court of

15  last resort reviewing any appeal relating to material parts of the Agreement, or the Agreement is

16  otherwise rescinded, then the Parties will be restored to their respective positions in the *Carlin*

17  Action as of the date of this Agreement, and, within ten (10) business days following such order

18  of the Court, Defendants shall be reimbursed the Settlement Fund as follows: the Settlement

19  Fund, including interest thereon, less any funds actually disbursed pursuant to Paragraphs 8.6 and

20  8.10 will be returned to Defendants, and Class Counsel shall reimburse Defendants for one-half of

21  any funds actually disbursed for notice and administration costs pursuant to Paragraph 8.10.

22      12.5   In the event that this Agreement is rescinded pursuant to Paragraph 12.1, or fails to

23  receive Court approval pursuant to Paragraph 12.4, or for any reason the Effective Date does not

24  occur in accordance with the terms of Paragraph 5.1 herein, then:

25          (a)     The terms and provisions of this Agreement shall be null and void and shall

26  have no force or effect; and

27          (b)     Neither the existence nor the terms of this Agreement, nor any negotiations

28

preceding this Agreement, nor any acts performed pursuant to, or in furtherance of, this Agreement, shall be used or offered in evidence in the Action or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect, specifically, Paragraphs 8.3, 8.4, 8.5, 8.9, 10.3, 11.2(a)-(c), 12.1, 12.2, 12.4, 12.5, 13.1, 13.2, 14.3-14.12, 14.14, 15.1).

**13.    TAXES**

13.1    Class Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, and (except as provided in Paragraph 13.2) paying to the appropriate taxing authority when due any tax payments, including interest and penalties due on income earned by the Settlement Fund.  All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid, when due, from the Settlement Fund; Class Counsel shall direct the escrow agent to do so in writing. Defendants shall have no responsibility to make any informational or other tax filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned by the Settlement Fund or pay any taxes on the Settlement Fund, unless the Settlement is not consummated and the Settlement Fund is returned to Defendants.

13.2    In the event the Settlement Fund is returned to Defendants, Class Counsel shall restore to the Settlement Fund (a) any attorneys' fees or costs previously paid to them, (b) any penalties or interest paid or imposed on the Settlement Fund by reason of the late filing of any tax return or failure to pay the amount shown on any tax return, whether or not filed on time, and (c) fifty percent (50%) of all Tax Expenses and fifty percent (50%) of the expenses paid out of the Settlement Fund to give the Notice to Settlement Class Members under Paragraphs 3.1, 3.2 and 3.3 above.  Class Counsel shall also turn over to Defendants the accounting records required under Paragraph 8.1 above.  Defendants shall be responsible for the payment of any unpaid taxes (including any interest or penalties) on said Settlement Fund income for any period for which tax

returns are not due at the time of the return of the Settlement Fund to Defendants and for all taxes (including any interest or penalties) on income accrued or paid into the Settlement Fund from the beginning of the calendar year during which the Settlement Fund is returned to Defendants.

**14.    MISCELLANEOUS**

14.1    Plaintiffs will join Defendants in seeking an immediate stay of any further consideration or determinations of Sanctions against DairyAmerica subject both to an order finally approving the settlement as described herein and following the timely receipt of the entire Settlement Amount.   Subject to the foregoing, but not later than fifteen (15) days following receipt of the Second Payment-Installment, Plaintiffs will move to dismiss, or withdraw, as appropriate, the pending motion for sanctions as part of the final dismissal of the *Carlin* Action.

14.2    The Parties and Class Counsel shall use their best efforts to effectuate this Agreement, including cooperating in promptly seeking the Court's approval of procedures (including the giving of class notice under Rule 23(e) of the Federal Rules of Civil Procedure) to secure the prompt, complete, and final dismissal with prejudice of the Action as to Defendants.

14.3    The United States District Court for the Eastern District of California shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by the Parties, including Class Counsel as appropriate.

14.4    This Agreement, which includes the Confidential Side Letter referenced in Paragraph 10.3 herein, constitutes the entire agreement among the Parties and Class Counsel pertaining to the settlement of the Action against Defendants only and supersedes any and all prior and contemporaneous undertakings among the Parties and Class Counsel in connection therewith. This Agreement may be modified or amended only by a writing executed by the Parties, including Class Counsel as appropriate.

14.5    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties. Without limiting the generality of

the foregoing and subject to the Effective Date occurring: (a) each and every covenant and agreement made herein by Class Counsel and the Plaintiffs shall be binding upon all Settlement Class Members and Releasing Parties, and (b) each and every covenant and agreement made herein by Defendants shall be binding upon all Released Parties.

14.6    This Agreement may be executed in counterparts by Class Counsel, Defendants, and the Class Representatives, and an emailed signature shall be deemed an original signature for purposes of executing this Agreement.

14.7    Neither Defendants nor the Class Representatives or Settlement Class, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

14.8    Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasing Parties, and Released Parties any right or remedy under or by reason of this Agreement.

14.9    This Agreement represents the settlement of disputed claims and does not constitute, nor shall it be construed as, an admission of the correctness of any position asserted by any party, nor an admission of liability or of any wrongdoing by any Party, or as an admission of any strengths or weaknesses of Plaintiffs' claims or Defendants' defenses.

14.10   Other than in a proceeding to enforce or modify its terms, this Agreement shall not be used or admitted in any other action or proceeding for any purpose and shall not be deemed an admission of any fact in any proceeding.

14.11   Where this Agreement requires any Party to provide notice or any other communication or document to any other Party, such notice, communication, or document shall be provided by electronic mail, or letter by overnight delivery, to counsel for that Party, and in the case of notice to members of the Settlement Class, notice to Class Counsel shall be sufficient.

14.12   All court orders and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties and their counsel remain bound

1    to comply with all Protective Orders.

2         14.13   The recitals set forth above are incorporated herein and thereby made a part hereof.

3         14.14   California law shall apply to any dispute arising from or relating to this

4    Agreement.

5    **15.    RETENTION OF JURISDICTION**

6         15.1   The District Court in this case shall retain continuing jurisdiction to enforce the

7    terms of the Agreement, including retaining continuing jurisdiction over the undersigned Parties

8    and Class Counsel as applicable.

9    DATED: July 13, 2018                    Respectfully submitted,

10

11

12   DATED: July 13, 2018                    Gerald Carlin

13                                           By: _Gerald Carlin_____

14

15   DATED: July ___, 2018                   John Rahm

16                                           By: _____

17

18   DATED: July ___, 2018                   Paul Rozwadowski

19                                           By: _____

20

21   DATED: July ___, 2018                   H. Diana Wolfe

22                                           By: _____

23                                           **COHEN MILSTEIN SELLERS & TOLL, PLLC**

24

25                                           By: _____
                                                 Benjamin D. Brown

26
                                             Benjamin D. Brown (SBN 202545)
27                                           1100 New York Avenue, N.W., Suite 500
                                             Washington D.C. 20005

28

[1:09 CV 00430-AWI (EPG)] Settlement Agreement                                          25

14660108.1

1    to comply with all Protective Orders.

2        14.13   The recitals set forth above are incorporated herein and thereby made a part hereof.

3        14.14   California law shall apply to any dispute arising from or relating to this

4    Agreement.

5    **15.   RETENTION OF JURISDICTION**

6        15.1   The District Court in this case shall retain continuing jurisdiction to enforce the

7    terms of the Agreement, including retaining continuing jurisdiction over the undersigned Parties

8    and Class Counsel as applicable.

9    DATED: July __, 2018                Respectfully submitted,

12   DATED: July __, 2018                Gerald Carlin

13                            By: _____

15   DATED: July 13, 2018                John Rahm

16                            By: _____

18   DATED: July __, 2018                Paul Rozwadowski

19                            By: _____

21   DATED: July __, 2018                H. Diana Wolfe

22                            By: _____

23                            **COHEN MILSTEIN SELLERS & TOLL, PLLC**

25                            By: _____
                                   Benjamin D. Brown

27                            Benjamin D. Brown (SBN 202545)
                              1100 New York Avenue, N.W., Suite 500
                              Washington D.C. 20005

14660108.1

14.13   The recitals set forth above are incorporated herein and thereby made a part hereof.

14.14   California law shall apply to any dispute arising from or relating to this Agreement.

**15.    RETENTION OF JURISDICTION**

15.1   The District Court in this case shall retain continuing jurisdiction to enforce the terms of the Agreement, including retaining continuing jurisdiction over the undersigned Parties and Class Counsel as applicable.

DATED: July __, 2018                     Respectfully submitted,


DATED: July __, 2018                     Gerald Carlin

                                         By: _____


DATED: July __, 2018                     John Rahm

                                         By: _____


DATED: July _13_, 2018                   Paul Rozwadowski

                                         By: _Paul Rozwadowski_


DATED: July __, 2018                     H. Diana Wolfe

                                         By: _____


**COHEN MILSTEIN SELLERS & TOLL, PLLC**


By: _____
        Benjamin D. Brown

Benjamin D. Brown (SBN 202545)
1100 New York Avenue, N.W., Suite 500
Washington D.C. 20005

1 | to comply with all Protective Orders.

2 |     14.13 The recitals set forth above are incorporated herein and thereby made a part hereof.

3 |     14.14 California law shall apply to any dispute arising from or relating to this

4 | Agreement.

5 | **15.   RETENTION OF JURISDICTION**

6 |     15.1   The District Court in this case shall retain continuing jurisdiction to enforce the

7 | terms of the Agreement, including retaining continuing jurisdiction over the undersigned Parties

8 | and Class Counsel as applicable.

9 | DATED: July __, 2018           Respectfully submitted,

10

11

12 | DATED: July __, 2018           Gerald Carlin

13 |                                By:

14

15 | DATED: July __, 2018           John Rahm

16 |                                By:

17

18 | DATED: July __, 2018           Paul Rozwadowski

19 |                                By:

20

21 | DATED: July /4 2018        H. Diana Wolfe

22 |                                By: H. Diana Wolfe

23

24 |                                **COHEN MILSTEIN SELLERS & TOLL, PLLC**

25 |                                By:

26 |                                      Benjamin D. Brown

27 |                                Benjamin D. Brown (SBN 202545)

28 |                                1100 New York Avenue, N.W., Suite 500
                               Washington D.C. 20005

1    to comply with all Protective Orders.

2        14.13   The recitals set forth above are incorporated herein and thereby made a part hereof.

3        14.14   California law shall apply to any dispute arising from or relating to this

4    Agreement.

5    **15.**    **RETENTION OF JURISDICTION**

6        15.1   The District Court in this case shall retain continuing jurisdiction to enforce the

7    terms of the Agreement, including retaining continuing jurisdiction over the undersigned Parties

8    and Class Counsel as applicable.

9    DATED: July __, 2018          Respectfully submitted,

10

11

12    DATED: July __, 2018          Gerald Carlin

13                              By: _____

14

15    DATED: July __, 2018          John Rahm

16                              By: _____

17

18    DATED: July __, 2018          Paul Rozwadowski

19                              By: _____

20

21    DATED: July 16, 2018          H. Diana Wolfe

22                              By: _____

23                              **COHEN MILSTEIN SELLERS & TOLL, PLLC**

24

25                              By: _____
                                     Benjamin D. Brown

26

27                            Benjamin D. Brown (SBN 202545)
                              1100 New York Avenue, N.W., Suite 500
                              Washington D.C. 20005

28

Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: bbrown@cohenmilstein.com
-and-

George Farah *(Pro Hac Vice)*
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: gfarah@cohenmilstein.com

**KELLER ROHRBACK L.L.P.**
Lynn L. Sarko *(Pro Hac Vice)*
Mark A. Griffin *(Pro Hac Vice)*
Cari C. Laufenberg *(Pro Hac Vice)*
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206)-623-1900
Facsimile: (206)-623-3384
Email: lsarko@kellerrohrback.com
         mgriffin@kellerrohrback.com
         claufenberg@kellerrohrback.com

         -and-

Ron Kilgard *(Pro Hac Vice)*
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012
Telephone: (602)-248-0088
Facsimile: (602)-248-2822
Email: rkilgard@kellerrohrback.com

**BERMAN TABACCO**
Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
A. Chowning Poppler (SBN 272870)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermantabacco.com
         cheffelfinger@bermantabacco.com
         cpoppler@bermantabacco.com

*Counsel for Plaintiffs and the Proposed Class*

1    DATED: July 16, 2018

2

3

4

5

6

7    DATED: July 16, 2018

8

9

10

11

12

13

14

15

16

17

18

19

20   DATED: July __, 2018

21

22

23

24

25

26

27

28

DairyAmerica, Inc.

By: _____

Its: **Chief Executive Officer**


Approved as to Form:

**DAVIS WRIGHT TREMAINE LLP**

By: _____
    Allison A. Davis (SBN 139203)

Sanjay M. Nangia (SBN 264986)
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: allisondavis@dwt.com
       sanjaynangia@dwt.com

**DAVIS WRIGHT TREMAINE LLP**
Charles M. English, Jr. *(Pro Hac Vice)*
1919 Pennsylvania Avenue, N.S., Suite 800
Washington, D.C. 20006-3401
Telephone: (202) 973-4272
Facsimile: (202) 973-4499
Email: chipenglish@dwt.com

*Counsel for Defendant DairyAmerica, Inc.*


California Dairies, Inc.

By: _____

Its: _____

---

[1:09 CV 00430-AWI (EPG)] SETTLEMENT AGREEMENT                                    27

14660108.1

1

2   Its: _____

3

4   Approved as to Form:

5   DATED: July __, 2018           **DAVIS WRIGHT TREMAINE LLP**

6

7   By: _____
                Allison A. Davis (SBN 139203)

8   Sanjay M. Nangia (SBN 264986)
    505 Montgomery Street, Suite 800
9   San Francisco, CA 94111-6533
    Telephone: (415) 276-6500
10  Facsimile: (415) 276-6599
    Email: allisondavis@dwt.com
11          sanjaynangia@dwt.com

12  **DAVIS WRIGHT TREMAINE LLP**
    Charles M. English, Jr. *(Pro Hac Vice)*
13  1919 Pennsylvania Avenue, N.S., Suite 800
    Washington, D.C. 20006-3401
14  Telephone: (202) 973-4272
    Facsimile: (202) 973-4499
15  Email: chipenglish@dwt.com

16  *Counsel for Defendant DairyAmerica, Inc.*

17

18  DATED: July 16, 2018           California Dairies, Inc.

19                                 By: _____

20                                 Its: _____

21

22

23

24

25

26

27

28

14660108.1

1

2                                          Approved as to Form:

3   DATED: July 17, 2018                    **HANSON BRIDGETT LLP**

4                                           By: _Megan Oliver Thompson_

5                                               Megan Oliver Thompson (SBN 256654)

6                                           Lawrence M. Cirelli (SBN 114710)
                                            Shannon M. Nessier (SBN 267644)
7                                           425 Market Street, Suite 2600
                                            San Francisco, CA 94105
8                                           Telephone: (415) 777-3200
                                            Facsimile: (415) 541-9366
9                                           Email: lcirelli@hansonbridgett.com
                                                   moliverthompson@hansonbridgett.com
10                                                 snessier@hansonbridgett.com

11                                          *Counsel for Defendant California Dairies, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B
# Filed Under Seal

# EXHIBIT C

THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

# If Your Farm Produced or Pooled Grade A Milk In A Federal Milk Marketing Order During the Period January 2002 Through April 2007

---

## You Could Get Money from a Class Action Settlement.
*A court authorized this notice.  You are not being sued.*

- A $40 million Settlement with DairyAmerica, Inc. ("DairyAmerica") and California Dairies, Inc. ("California Dairies") has been reached.  The Settlement provides financial payment to certain dairy farmers in the United States.

- This Settlement resolves all claims against DairyAmerica and California Dairies in a lawsuit alleging they misreported nonfat dry milk sales data to the United States Department of Agriculture ("USDA"). If this Settlement is approved, you will not be able to sue DairyAmerica or California Dairies, as well as their successors, subsidiaries, insurers, members and certain related entities, for the claims in this suit or related claims.

- If you received this notice in the mail, records indicate that you produced milk that was pooled on a Federal Milk Marketing Order during the period January 2002 through April 2007 and may be eligible to receive a payment from the Settlement.

- Your legal rights are affected whether you act or do not act.  Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive a cash payment. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Get no payment.  This is the only option that allows you to ever be part of any other lawsuit against DairyAmerica or California Dairies about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment from the settlement. |

- The Court still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

**For More Information:     Call 1-800-000-0000 or Visit www.[   ].com**

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**……………………………………………..……………………………… **Page 3**

1. Why was this notice issued?
2. Who are the Defendants?
3. What is this lawsuit about?
4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT CLASS**........................................................................... **Page 4**

5. How do I know if I'm part of the Settlement?
6. Are there any exceptions to being included?

**SETTLEMENT BENEFITS**……………………………………………………………………… **Page 4**

7. What does the Settlement provide?
8. How much money can I get from the Settlement?

**HOW TO GET A PAYMENT**………………………………………………………………… **Page 5**

9. How can I get a payment?
10. When will I get my payment?
11. Can I submit a claim even if I oppose the Settlement?

**EXCLUDING YOURSELF FROM THE CLASS** ………..…………………………………………… **Page 5**

12. Can I get out of the Settlement Class?
13. How do I exclude myself from the Settlement Class?
14. If I exclude myself from the Settlement Class, can I still get a payment?
15. If I don't exclude myself, can I sue DairyAmerica or California Dairies for the same thing later?

**THE LAWYERS REPRESENTING YOU**……………………………………………………… **Page 6**

16. Do I have a lawyer in the case?
17. How will the Plaintiffs' lawyers be paid?

**OBJECTING TO THE SETTLEMENT**……………....……………………………………… **Page 7**

18. How do I tell the Court that I don't like the Settlement?
19. Can I receive a payment even if I object?
20. What's the difference between objecting to the Settlement and excluding myself from the Settlement Class?

**THE COURT'S FAIRNESS HEARING**……………....……………………………………… **Page 8**

21. How will the Court decide whether to approve the Settlement?
22. When and where will the Court decide whether to approve the Settlement?
23. Do I have to come to the hearing?
24. May I speak at the hearing?

**IF YOU DO NOTHING**……………………………....………………………………………… **Page 9**

25. What happens if I do nothing at all?

**GETTING MORE INFORMATION**……………………………………………………………… **Page 9**

26. How do I get more information?

**For More Information:  Call 1-800-000-0000 or Visit www.[   ].com**

2

## BASIC INFORMATION

| 1.  Why was this notice issued? |
| --- |

A $40 million Settlement with California Dairies and DairyAmerica has been reached in a class action alleging that the price of raw Grade A milk calculated by the USDA was unlawfully depressed during the period January 2002 through April 2007.  As a member of the class, you have a right to know about the proposed Settlement and about your options before the Court decides whether to approve the Settlement.

A Court authorized this Notice.  This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for those benefits, and how to get them.

Judge Anthony Ishii, of the United States District Court for the Eastern District of California, is currently overseeing this case.  The case is known as *Gerald Carlin, et al. v. DairyAmerica, Inc., et al.,* No. 1:09 CV 00430.  The dairy farmers who sued are called the Plaintiffs and the cooperatives they sued are called the Defendants (*see* Question 2 below).

This Notice summarizes the Settlement. To view the complete Settlement Agreement, visit www.MilkPowderCase.com.

| 2.  Who are the Defendants? |
| --- |

This litigation is proceeding against two Defendants: California Dairies and DairyAmerica. California Dairies is a cooperative in California that produces dairy products, including nonfat dry milk.  DairyAmerica is a marketing association that markets and sells nonfat dry milk on behalf of California Dairies and other members.

| 3.  What is this lawsuit about? |
| --- |

The lawsuit claims that California Dairies and DairyAmerica unlawfully conspired to misreport data regarding sales of nonfat dry milk to the USDA during the period January 2002 through April 2007. The USDA used the figures misreported by Defendants to calculate minimum raw Grade A milk prices, which were paid to dairy farmers whose raw Grade A milk was pooled on a Federal Milk Marketing Order.   The lawsuit claims that California Dairies and DairyAmerica intentionally misreported the nonfat dry milk sales data in order to depress raw milk prices that were paid to dairy farmers.  The lawsuit seeks to recover damages incurred by dairy farmers as a result of the unlawful suppression of prices of raw Grade A milk during the period January 2002 through April 2007.

The Defendants deny that they did anything wrong or that they acted in a manner that harmed dairy farmers.  There has not yet been a determination as to whether Plaintiffs' claims are correct or whether Defendants have done anything wrong.

| 4.  Why is there a Settlement? |
| --- |

The Court has not decided in favor of Plaintiffs or California Dairies and DairyAmerica. The Plaintiffs believe they would win against California Dairies and DairyAmerica at a trial. California Dairies and DairyAmerica believe the Plaintiffs would not win. Rather than continuing to litigate

**For More Information:  Call 1-800-000-0000 or Visit www.[   ].com**

3

this case to trial, Plaintiffs and California Dairies and DairyAmerica agreed to a settlement. They avoid the cost and risks of a trial, and Class Members will get the benefits of this Settlement.

The attorneys for the Class were appointed by the Court.  Those attorneys have litigated this case for more than nine years and have conducted an extensive investigation of the facts and the law relevant to the lawsuit.  Those attorneys think the Settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT CLASS

### 5.  How do I know if I'm part of the Settlement?

You are part of the Settlement if you are a member of the Settlement Class that was certified by the Court. The Court certified the following Settlement Class: "All dairy farmers located in the United States who sold raw milk that was priced according to a Federal Milk Marketing Order during the period January 1, 2002 through April 30, 2007."

If there are multiple owners of your farm, please forward this Notice to all the owners.  If this Notice reached you at an address other than the one on the mailing label, or if your address changes, please send your correct address to the Claims Administrator at the address in Question 9.

### 6.  Are there any exceptions to being included?

You are **not** part of the Settlement if you are an entity in which California Dairies or DairyAmerica has a controlling interest, if you are a legal representative, heir, or successor to California Dairies or DairyAmerica, or if you exclude yourself from the Settlement.

## SETTLEMENT BENEFITS

### 7.  What does the Settlement provide?

California Dairies and DairyAmerica have agreed to pay $40 million into a Settlement Fund.  After deducting attorneys' fees, expenses, and service awards for the Class Representatives and former plaintiffs (*see* Question 17), the net Settlement Fund will be distributed to members of the Class who file valid claims.

### 8.  How much money can I get from the Settlement?

The amount of money you may receive cannot be calculated at this time.  Your share will depend on three factors: (1) the amount of raw Grade A milk you produced that was pooled on a Federal Milk Marketing Order from January 1, 2002 to April 30, 2007; (2) the number of valid claims that are received; and (3) the amount of the attorneys' fees, reimbursement of expenses and service awards for Class Representatives approved by the Court.

## HOW TO GET A PAYMENT

### 9.  How can I get a payment?

To ask for a payment, you must complete and submit a Claim Form. A Claim Form is enclosed with this Notice.  Claim Forms are also available at www.MilkPowderCase.com or by calling 1-[  ].

**For More Information:  Call 1-800-000-0000 or Visit www.[   ].com**

4

The enclosed Claim Form includes the volume of raw Grade A milk that you produced and that was pooled on a Federal Milk Marketing Order during the period January 2002 through April 2007 (according to the records of Federal Milk Marketing Orders).  Review and complete the enclosed Claim Form, correcting any inaccurate information and supplying the requested documentation if you dispute the stated volume of raw Grade A milk that you produced and that was pooled on a Federal Milk Marketing Order during the period January 2002 through April 2007.

Mail the Claim Form postmarked no later than **[   ], 2018**, to:

MILK POWDER SETTLEMENT
C/O RUST CONSULTING, INC. - 6217
P.O. BOX ####
MINNEAPOLIS, MN 55440-####

If you fail to submit a timely Claim Form, you will not receive any money from the Settlement.

---

### 10.  When will I get my payment?

Payments will be mailed to Class Members who send in valid Claim Forms on time, after the Court grants "final approval" of the Settlement and after any appeals are resolved. This may take time.

---

### 11.  Can I submit a claim even if I oppose the Settlement?

Yes.  You have the right to oppose the Settlement or any part of the Settlement even if you submit a claim.  To learn more about your right to object to the Settlement, see Questions 18, 19 and 20.

## EXCLUDING YOURSELF FROM THE CLASS

### 12.  Can I get out of the Settlement Class?

Yes.  You have the right to exclude yourself from the Settlement Class.  If you do not want to be part of the Settlement, or if you want to preserve the right to sue DairyAmerica or California Dairies on your own regarding the legal issues in this case, then you must take steps to remove yourself from the Settlement Class.  This is called "excluding yourself" or "opting out" of the Class.

---

### 13.  How do I exclude myself from the Settlement Class?

To exclude yourself from the Settlement Class, you must send a letter stating that you want to be excluded from the Settlement Class.  You must also include the following sentence in the letter: "I provide authorization to the Market Administrator to provide the total amount of raw milk that I produced and that was pooled on the Federal Milk Marketing Order during the Settlement Class Period to Rust Consulting and Class Counsel."  Be sure to include your name, address, telephone number, and signature.  You must mail your exclusion request letter, postmarked no later than **Month 00, 2018**, to:

**For More Information:  Call 1-800-000-0000 or Visit www.[   ].com**

5

MILK POWDER SETTLEMENT
C/O RUST CONSULTING, INC. - 6217
P.O. BOX ####
MINNEAPOLIS, MN 55440-####

**14.  If I exclude myself from the Settlement Class, can I still get a payment?**

No.  If you exclude yourself from the Settlement Class, you will not receive any money from the Settlement.  If you exclude yourself from the Settlement Class, do not send in a Claim Form.

**15.  If I don't exclude myself, can I sue DairyAmerica or California Dairies for the same thing later?**

No.  If you remain in the Settlement Class, you can't sue DairyAmerica or California Dairies, or be part of any other lawsuit against DairyAmerica or California Dairies regarding the legal claims in this case.  It also means that all the decisions by the Court will bind you.

The Settlement Agreement contains a release of all claims against DairyAmerica and California Dairies that members of the Settlement Class have asserted or could have asserted arising out of any act or omission that is the subject matter of the lawsuit.  If you do not exclude yourself from the Settlement Class, you will be deemed to have entered into this Release if the Settlement is approved by the Court.

The Release is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you remain in the Settlement Class.  The Settlement Agreement is available at www.[MilkPowderCase].com.

## THE LAWYERS REPRESENTING YOU

**16.  Do I have a lawyer in the case?**

Yes.  The Court has appointed the following three firms as Counsel for the Settlement Class:

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Telephone: (202) 408-4600

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206)-623-1900

BERMAN TABACCO
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200

You will not be charged for these lawyers.  If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

**For More Information:  Call 1-800-000-0000 or Visit www.[   ].com**

**17.  How will Plaintiffs' lawyers for the Class be paid?**

The Court will decide how much the lawyers for the Class will be paid.  Counsel for the Class will ask the Court for attorneys' fees of no more than one-third of the Settlement Fund, plus the reimbursement of expenses incurred in connection with the case.  Class Counsel's applications for attorneys' fees and reimbursement of expenses will be filed with the Court by [   ], and posted on the settlement website.

Class Counsel will also request payment of service awards to the Class Representatives and the former named plaintiffs, who sued on behalf of the whole Class and assisted with the prosecution of the litigation.  Class Counsel will specifically request payments of $90,000 for each of the four Class Representatives and payments of $10,000 for each of the four former named plaintiffs.

The Court may award less than the amounts request by Class Counsel for payment of attorneys' fee, reimbursement of expenses, and service awards for Class Representatives and former named plaintiffs. It is within the Court's discretion to determine whether the amounts requested, or smaller amounts, are reasonable and should be awarded. Payments approved by the Court will be made from the Settlement Fund and will reduce the amount available for Class Members.

## OBJECTING TO THE SETTLEMENT

**18.  How do I tell the Court that I don't like the Settlement?**

If you are a Class Member, you can object to the Settlement.  You can also object to Class Counsel's requests for attorneys' fees, reimbursement of expenses, and service awards for the Class Representatives and former named plaintiffs. To object, you must send a letter saying that you object. Your letter must also include the following:

- Your name, address, and telephone number,
- The name of the case (*Gerald Carlin, et al. v. DairyAmerica, Inc., et al.,* No. 1:09 CV 00430),
- The specific reasons you object to the Settlement, and
- Your signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than [  ], 2018, to the following four addresses:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| Judge Anthony W. Ishii United States Courthouse 2500 Tulare Street Eighth Floor, Courtroom 2 Fresno, CA 93721 | Benjamin D. Brown, Esq. Cohen Milstein Sellers & Toll PLLC 1100 New York Avenue, NW Suite 500, West Tower Washington, DC 20005 | Megan Oliver Thompson Hanson Bridgett LLP 425 Market St., 26th Floor San Francisco, CA 94105  Charles M. English, Jr. Davis Wright Tremaine LLP 1919 Pennsylvania Ave., N.W., Suite 800 Washington, D.C. 20006 |

Error! Unknown document property name.

**19.  Can I receive a payment even if I object?**

Yes.  You can submit a claim and receive your share of the Proposed Settlement even if you oppose the Settlement.  If you want to receive your share of the Proposed Settlement you must submit a claim by **[  ] 2018**.

**20.  What's the difference between objecting to the Settlement and excluding myself from the Settlement Class?**

Objecting is telling the Court that you don't like something about the Settlement.  You can object only if you stay in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class or the Settlement.  If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## THE COURT'S FAIRNESS HEARING

**21.  How will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing to decide whether to approve the Settlement and any requests for attorneys' fees, reimbursement of expenses, and payment of service awards to the Class Representatives and former named plaintiffs. You may attend the hearing and you may ask to speak, but it is not required.

At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them.  The Court may listen to people who asked to speak at the hearing. The Court may also decide how much to pay the lawyers for Plaintiffs and the Class.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

**22.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing beginning at 1:30 p.m. on Monday, [   ], 2018, at the United States District Court for the Eastern District of California, 2500 Tulare Street, in Fresno, California 93721, in Courtroom 2, located on the 8th Floor.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.MilkPowderCase.com.

**23.  Do I have to come to the hearing?**

No.  Lawyers for the Class will answer any questions Judge Ishii may have.  But you are welcome to attend the Fairness Hearing at your own expense.  If you send a written objection, you do not have to come to the Court to discuss it.  As long as you mailed your written objection on time, following the instructions in this Notice, the Court will consider it. You may also pay your own lawyer to attend, if you wish, but it is not necessary.

**24.  May I speak at the hearing?**

Yes.  You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must

8

submit a written objection, as described in the response to Question 18, and include in your objection a "Notice of Intention to Appear at the Fairness Hearing."  You must mail your written objection and Notice of Intention to Appear, postmarked no later than [  ], to the three addresses in Question 18.

## IF YOU DO NOTHING

| 25.  What happens if I do nothing at all? |
|---|

If you do nothing, you will not get a payment from the Settlement.

In addition, your rights will be affected.   Under the terms of the Settlement, all Class Members— regardless of whether you submit a claim, object, or do nothing—give up the right to sue DairyAmerica and California Dairies, as well as their successors, subsidiaries, insurers, members and certain related entities, for the claims in this suit and related claims.

## GETTING MORE INFORMATION

| 26.  How do I get more information? |
|---|

This notice summarizes the proposed Settlement.  You can get more information and important court documents, including a copy of the Settlement Agreement, at www.MilkPowderCase.com or by calling 1-[  ].  You may also write with questions to:

MILK POWDER SETTLEMENT
C/O RUST CONSULTING, INC. - 6217
P.O. BOX ####
MINNEAPOLIS, MN 55440-####

9

Error! Unknown document property name.

CARLIN V DAIRYAMERICA SETTLEMENT
C/O RUST CONSULTING INC 6217
P.O. BOX ####
MINNEAPOLIS, MN 55440-####

IMPORTANT LEGAL MATERIALS

BAR CODE
CLAIMANT ID

NAME1
NAME2
NAME3
ADDRESS1
ADDRESS2
CITY, STATE ZIP10

| | If the pre-printed information to the left is not correct or if there is no pre-printed information, please check the box and complete the information below: |
| --- | --- |

Name: _____

Address: _____

City: _____

State: ___ ___   Zip Code: ___ ___ ___ ___ ___

Mail Date

# CLAIMS MUST BE POSTMARKED BY <DATE>

*Carlin v. DairyAmerica, Inc.*
No. 1:09 CV 00430 (AWI) (EPG)

You may be eligible to receive a payment from a settlement reached with DairyAmerica, Inc. ("DairyAmerica") and California Dairies, Inc. ("California Dairies") if your farm is located in the United States and you produced and sold raw milk that was priced according to a Federal Milk Marketing Order during the period January 1, 2002 through April 30, 2007.

If you are a Settlement Class Member and wish to receive a payment from this Settlement, you must complete and return this Claim Form and the enclosed W-9 Form **postmarked by <Date>** to the following address:

MILK POWDER SETTLEMENT
C/O RUST CONSULTING, INC. - 6217
P.O. BOX ####
MINNEAPOLIS, MN 55440-####

For more information or help completing your Claim Form, please visit the website at www.[URL].com or call 1-8##-###-####. The Claims Administrator, Rust Consulting, Inc., will help you complete your Claim Form if you have any questions. You do not need to retain and pay for your own attorney or a third party company to file your claim and receive a settlement payment. If you are contacted by anyone other than the Claims Administrator to help you complete your Claim Form, please call 1-8##-###-#### for assistance.

**Records provided by USDA indicate that your farm pooled a total of <####> pounds of raw milk on one or more Federal Milk Marketing Orders during the period January 1, 2002 through April 30, 2007.**

Please check the box next to your chosen response:

☐  I **AGREE** that my farm located in the United States pooled  <####> **pounds** of raw milk on one or more Federal Milk Marketing Orders during the period January 1, 2002 through April 30, 2007. By agreeing with the pounds of milk pre-printed on this Claim Form, I authorize my portion of the Settlement to be calculated using the total pounds of raw milk provided above.

☐  My farm pooled a different amount of raw milk on one or more Federal Milk Marketing Orders during the period January 1, 2002 through April 30, 2007, and I can support that assertion with documents.

I believe my farm pooled  ☐☐☐ , ☐☐☐ , ☐☐☐ , ☐☐☐  pounds of raw milk on one or more Federal Milk Marketing Orders during the period January 1, 2002 through April 30, 2007.  I attach documents to support that claim, including copies of any of the following that support my claim: (1) letters received from my handlers, cooperatives, processors, or the Market Administrator; (2) year-end statements; or (3) milk checks.

Please review your Claim Form and sign the certification below, regardless of which box you checked above:

I certify under penalty of perjury that the information above is true and correct and the submission of false information may subject me to civil and/or criminal penalties.

_____          _____

Claimant Signature                                                                    Date

_____          _____

Print Name                                                                           Position of Person Signing

You must complete and return this Claim Form and the enclosed W-9 Form **postmarked by <Date>** to the following address if you wish to receive a payment from this Settlement:

MILK POWDER SETTLEMENT
C/O RUST CONSULTING, INC. - 6217
P.O. BOX ####
MINNEAPOLIS, MN 55440-####

For more information, please visit the website at www.[URL].com or call 1-8##-###-####.

# EXHIBIT D

THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

# If Your Farm Produced and Pooled Grade A Milk In A Federal Milk Marketing Order During the Period January 2002 Through April 2007

## You Could Get Money from a Class Action Settlement.

A proposed $40 million Settlement has been reached in a class action lawsuit on behalf of dairy farmers against Defendants DairyAmerica, Inc. and California Dairies, Inc.  The lawsuit claims that the Defendants unlawfully conspired to misreport nonfat dry milk sales data to the United States Department of Agriculture for the purpose of lowering raw milk prices paid to dairy farmers.  Defendants deny any wrongdoing.

### Who is included in the Settlement?

You are part of the Settlement if you are: a dairy farmer located in the United States who sold raw milk that was priced according to any of the ten Federal Milk Marketing Orders during the period January 1, 2002 through April 30, 2007.

### What does the settlement provide?

The Settlement provides financial payment to dairy farmers who are part of the Settlement.

Defendants have agreed to pay $40 million into a Settlement Fund to settle all claims in the lawsuit.  Class Counsel will ask the Court to award attorneys' fees in an amount not to exceed one-third of the Settlement Fund, plus litigation expenses and service awards to the Class Representatives and former named plaintiffs. After these deductions, the remainder of the Settlement Fund will be distributed *pro rata* to dairy farmers who are part of the Settlement and who file a valid Claim Form.

### How do I get a payment?

You must submit a Claim Form by [  ] to be eligible for a payment from the Settlement. If you are part of the Settlement, a Claim Form was mailed to your address on record.  To obtain a Claim Form, you can also visit www.MilkPowderCase.com or call [  ].

The amount of money you are eligible to receive will depend on (1) the amount of raw Grade A milk you produced and that was pooled on a Federal Milk Marketing Order from January 1, 2002 to April 30, 2007; and (2) the number of dairy farmers that submit valid Claim Forms.

### What are my other rights?

If you do not want to be legally bound by the Settlement, you must exclude yourself. The exclusions deadline is [  ]. If you exclude yourself, you will not receive a payment from the Settlement.  If you stay in the Settlement, you will not be able to sue the Defendants

for any claim relating to the lawsuit. However, if you stay in the Settlement, you may object to the terms of the Settlement by [   ].

The Court will hold a hearing on [   ] at 1:30 p.m. (Pacific Time) at the United States District Court for the Eastern District of California, 2500 Tulare Street, in Fresno, California 93721, in Courtroom 2, located on the 8th Floor.  At the hearing, the Court will consider whether to approve the Settlement, a request for attorneys' fees, expenses and service awards. The Court has appointed attorneys to represent the Class, and you are not required to appear. You or your own lawyer may ask to appear and speak at the hearing at your own expense.

To learn more about your rights, including how to submit a Claim Form, how to exclude yourself from the Settlement, and how to object to the Settlement, check the website below or call the telephone number below.

**For more information and a Claim Form: Visit**
**www.MilkPowderCase.com or call 1-800-[   ].**