# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GERALD CARLIN, JOHN RAHM, PAUL ROZWADOWSKI and DIANA WOLFE, individually and on behalf of themselves and all other similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**DAIRYAMERICA, INC., and CALIFORNIA DAIRIES, INC.**<br><br>**Defendants** | **CASE NO. 1:09-CV-0430 AWI-EPG**<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>(Doc. No. 555) |

Plaintiffs, as purported class representatives, have alleged various claims against Dairy America and California Dairies concerning the misreporting of milk prices. The class has not yet been certified.

The parties have notified the Court of their intent to settle all claims. Doc. No. 552. Plaintiffs now move for conditional certification of the proposed class under Rule 23[1] and for preliminary approval of the class action settlement. Doc. No. 555. Defendants have not opposed. Doc. No. 552.

For the following reasons, Plaintiffs' motion will be granted.

---
[1] Citations to "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

1

# BACKGROUND

**A. Factual Background**

During the relevant period, Plaintiffs received a monthly check for selling their raw milk; the amounts paid to Plaintiffs were calculated by Federal Milk Marking Orders (FMMO's). Doc. No. 513 at p. 2 (Fourth Amended Complaint, the "4AC"). The FMMO rates were calculated by collecting market prices from large milk sellers via weekly surveys. *Id.* One of the organizations that provided data was Defendant DairyAmerica, a marketing association of nine cooperative members, including Defendant California Dairies. *Id.* Plaintiffs allege that between 2002-2007, DairyAmerica "shape[d] the raw milk prices paid to farmers by [fraudulently] modifying the data it reported to the USDA each week" through a variety of schemes and artifices. *Id.* at ¶ 6. Defendants' conduct allegedly "depress[ed] raw milk prices and protect[ed] their profits." *Id.* at ¶ 8. Defendants deny these contentions.

In 2009, Plaintiffs, as purported class representatives, filed suit against Defendants. Doc. No. 1. In the currently-operative 4AC, Plaintiffs have alleged claims for negligent misrepresentation, intentional misrepresentation, and conspiracy to violate RICO. See Doc. No. 513.[2]

**B. Settlement Agreement**

After nine years of litigation, the parties have reached a settlement agreement governing the following proposed class:

> All dairy farmers located in the United States who sold raw milk that was priced according to a Federal Milk Marketing Order during the period January 1, 2002 through April 30, 2007. Excluded from the Class are California Dairies and DairyAmerica, any entity in which California Dairies or DairyAmerica have a controlling interest, and their respective legal representatives, heirs, and successors.

Doc. No. 555, at p. 32 (Ex. A, § 1.4, the "Settlement Agreement"). This Settlement Class includes "tens of thousands of dairy farmers," who would each receive a portion of the $40,000,000 Settlement Fund. *Id.* at p. 12, 20. Class Counsel's attorney fees, costs, and any

---

[2] The procedural history for this case is long, and includes an appeal to the Ninth Circuit, the filing of four separate amended complaints, the dismissing and re-adding of Defendant California Dairies, the discovery of additional fact witnesses, multiple depositions, and numerous, numerous discovery disputes.

expenses related to the suit are to be reimbursed from this fund, and Defendants have agreed they will not oppose class counsel's fee requests. *Id*. at p. 48, § 1.11. The settlement provides that attorney fees are not to exceed 33.33% of the Fund. *Id*. The parties have also agreed to a service award of up to $90,000.00 for each of the named plaintiffs, up to $10,000.00 to each former named plaintiff, up to $300,000 for settlement administration costs, up to $20,000 for escrow agent costs, and "any amount [for] required taxes on income earned in the Settlement Fund." *Id*. at §§ 1.11 and 8.10. The remaining balance ("Net Settlement") is not specified in the settlement agreement, due in part to the number of unfixed sums. However, assuming full reimbursement of the above expenses, the Net Settlement amount would be approximately $26,000,000, to be distributed on a proportional basis to Class Members who submit valid claim forms ("Approved Claimants"). *Id*. at p. 45, §8.7(b). The amounts distributed to each Approved Claimant is to be determined by "dividing (i) the volume of the Claimant's total raw Grade A milk produced and pooled on a Federal Milk Marketing Order during the period January 1, 2002 to April 30, 2007, by (ii) the total volume of raw Grade A milk produced and pooled on Federal Milk Marketing Orders" during the same period. *Id*. Any residual amounts left in the Settlement Fund may be re-distributed, proportionally, to the Approved Claimants or, if not, then to a *cy pres* beneficiary selected by Plaintiffs' Counsel. *Id*. at p. 46, § 8.11.

      The Settlement Agreement also provides that notice of class settlement is to be given by the claims administrator after the court preliminarily approves the settlement agreement. *Id*. at p. 36, § 2. The claims administrator will attempt to identify—and individually notify—each member of the Settlement Class "reasonably ascertainable" via the FMMO's; or if not, then by "other sources." *Id*. at p. 37, § 3.2. The notice will also appear in two dairy publications and on a dedicated website. *Id*. Class members will be afforded an opportunity to opt-out of the settlement entirely, or to object to the Settlement at a forthcoming Final Approval Hearing. *Id*. at p. 38, § 4.2. Approved Claimants who submit a valid claim and receive a portion of the settlement will, upon the Effective Date of the agreement, "release, relinquish, and discharge . . . all Released Claims against the Released Parties," will agree not to sue them on these claims, and will be "permanently barred and enjoined" from bringing these claims. *Id*. at p. 40, § 6.1.

**DISCUSSION**

Class action settlements are permitted "only with the court's approval . . . after a hearing and on a finding that [the agreement] is fair, reasonable, and adequate." Rule 23(e). Courts certify proposed class-settlement actions in two phases. First, the court holds a preliminary fairness hearing to determine whether provisional class certification is appropriate and whether the proposed settlement is fair. Then, after all absent class members are notified about the litigation and given a chance to object or opt-out, the court holds a final fairness hearing. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). This Order takes up the first of these phases.

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [I] the propriety of the certification and [II] the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "This independent judicial review protects the due process rights of absent class members who have not yet appeared" especially where, as here, "the settlement agreement is negotiated in their absence." *Acosta v. Evergreen Moneysource Mortgage Company*, 2018 WL 3831004 at *2 (E.D. Cal. Aug 13, 2018) (citing *Bluetooth*, 654 F.3d at 946).

**I.      Certification of the class is appropriate**

Before the court may evaluate the propriety of the settlement agreement, the Court must determine whether the settlement class meets Rule 23(a) and (b). Rule 23(e)(2). Federal courts must pay "undiluted, even heightened, attention" to class certification requirements in a settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled," and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement. *Berry v. Baca*, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005).

///

**A.    The class satisfies the requirements of Rule 23(a)**

The following four criteria "must be met to certify a class action: (1) numerosity; (2) commonality of law or fact; (4) typicality of the representative plaintiff's claims; and (4) adequacy of representation." *Gripenstraw v. Blazin' Wings, Inc.*, 2013 WL 6798926, at *3 (E.D. Cal. Dec. 20, 2013); Rule 23(a).  A class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982).  The burden is on the party seeking class certification to show that these elements have been met. *Doninger v. Pac. N.W. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977).

*1.    "Tens of Thousands of Farmers" satisfies numerosity*

The class must be so numerous that joinder of all members individually is "impracticable." Rule 23(a)(1). This requirement "does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964)). No specific numerical threshold is required; instead, the law "requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980).

Here, Plaintiffs claim that the proposed class would be composed of "tens of thousands of dairy farmers." Doc. No. 555 at p. 14. Joinder of all putative class members would be impracticable. Numerosity is satisfied.

*2.    The questions of law and fact are common to the class*

Questions of law or fact must be "common to the class." Rule 23(a)(2). This does not mean all questions of fact and law need be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Instead, a plaintiff only need demonstrate "the class members have suffered the same injury . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011). "Their claims must depend upon a common contention" that, when determined, would resolve an issue "central to the validity of each one of the claims in one stroke." *Id.* at 350.

Here, all putative class members appear to have been subject to the same injury—suppressed compensation for their Grade A milk produced and pooled on the FMMO's. Doc. No. 555, at p. 14. These individual injuries allegedly were sustained by the same alleged unlawful conduct—Defendants' misrepresentations and conspiracy to misreport data to the USDA "in order to reduce payments to dairy farmers." *Id*. A determination on this issue would resolve Plaintiffs' contentions for the class. Commonality is satisfied.

### *3. Plaintiffs' claims are typical of the class*

The requirement of typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). Typicality requires that a class representative "possess the same interest and suffer the same injury" as the putative class. *Falcon,* 457 U.S. at 156. Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. The typicality requirement ensures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157, n.13.

Plaintiffs claim they "pooled their raw milk on a [FMMO] similar to every other settlement class member[,]" and this pooling plus Defendants' alleged manipulation of the FMMO's caused them to lose revenue. Doc. No. 555, at p. 15. Plaintiffs' claims are coextensive of those of the absent potential class members. The typicality requirement is met.

### *4. Plaintiffs and Counsel are adequate representatives for the class*

The requirement of adequate representation asks whether the representative "will fairly and adequately protect the interests of the class." *See* Rule 23(a)(4). Courts are to inquire (1) whether the named plaintiffs and counsel have any conflicts of interest with the rest of the potential class members and (2) whether the named plaintiff and counsel will prosecute the action vigorously for the class as a whole. *See Hanlon,* 150 F.3d at 1020.

Neither Plaintiffs nor their attorneys appear to have any conflicts of interest with the rest of the class. Further, Plaintiffs' attorneys have prosecuted this action vigorously over the past nine years. The named Plaintiffs and class counsel are adequate representatives of the class.

**B.      The class satisfies Rule 23(b)(3)'s requirements**

The putative class must also fulfill one of the requirements of Rule 23(b). *Amchem*, 521 U.S. at 614. Plaintiffs seek certification under Rule 23(b)(3), which requires a showing that: (1) questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Id.* at 615. The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

*1.      Plaintiffs' claims predominate*

Common questions of law and fact predominate over individual questions, satisfying the first component of the Rule 23(b)(3) inquiry, where "the issues in the class action subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Ortega v. J.B. Hunt Transport, Inc*., 258 F.R.D. 361, 366 (C.D. Cal. 2009) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 280 F.3d 124, 136 (2nd Cir. 2001)). In evaluating predominance, courts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members. *Id.* "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc., v. Halliburton Co*., 563 U.S. 804, 809 (2011)). The requirement is satisfied if a plaintiff establishes that a "common nucleus of facts and potential legal remedies dominates the litigation." *Hanlon*, 150 F.3d at 1022.

Here, Plaintiffs' causes of action are tied to Defendants' alleged misrepresentations (and related conspiratorial acts) in misreporting milk prices to the USDA. To prove their case, Plaintiffs would rely on common proof concerning Defendants' actions in reporting these prices, and would argue the purported class members were uniformly affected due to Defendants' alleged manipulation of the formulas. Resolution of the legality of Defendants' actions is the primary issue in this litigation. The predominance requirement is met.

///

## 2. *Class action is the superior mechanism for Plaintiffs' claims*

Courts are also to consider "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." Rule 23(b)(3). Where the parties have agreed to pre-certification settlement (d) and perhaps (c) are irrelevant. *Amchem*, 521 U.S. at 620; *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010).

Despite an individual claimant's potential to achieve a slightly higher recovery than in this settlement (see Section II.B.3, *infra*), it is unlikely that such a sum would drive interest in controlling the prosecution of a separate action, since "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Plaintiffs contend no competing cases exist, nor is the Court aware of any.[3] A class action appears to be the superior method of adjudicating Plaintiffs' claims.

### *Conclusion – Preliminary Class Certification is Appropriate*

Since (A) the requirements of numerosity, commonality, typicality, and adequacy have been met, and since (B) the Court has concluded that common questions predominate and class litigation is the superior method of resolving the claims at issue, the Court will certify the class for settlement purposes as:

> All dairy farmers located in the United States who sold raw milk that was priced according to a Federal Milk Marketing Order during the period January 1, 2002 through April 30, 2007. Excluded from the Class are California Dairies and DairyAmerica, any entity in which California Dairies or DairyAmerica have a controlling interest, and their respective legal representatives, heirs, and successors.

The Court now turns to the terms of the Settlement Agreement.

/ / /

---

[3] The Court will again consider this factor prior to final approval and after conducting a fairness hearing.

8

## II. The settlement terms are fair, adequate, and reasonable

Class action settlements are permitted "only with the court's approval . . . after a hearing and on a finding that [the agreement] is fair, reasonable, and adequate." *See* Rule 23(e); *Hanlon*, 150 F.3d at 1026. The principal purpose of the Court's supervision of class action settlements is to ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ." *Id*. at 1027. This "ensure[s] that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Before finally approving a settlement, a court is to balance several factors, including: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation [and] the risk of maintaining class action status throughout the trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel . . . ." *Hanlon*, 150 F.3d at 1026. However, scant authority exists regarding the standard a court is to use in reviewing the settlement at the preliminary stage. *See O'Connor v. Uber Technologies, Inc.*, 201 F.Supp.3d 1110, 1122 (C.D. Cal. Aug. 18, 2016). Some courts save the *Hanlon* factors for the final-approval stage, focusing at the preliminary stage on whether the settlement "falls within the range of possible approval." *Id*. This includes an examination of whether the settlement is the product of non-collusive negotiations, has no obvious deficiencies, and does not otherwise improperly grant preferential treatment to class representatives or segments of the class. *See In re High-Tech Employee Antitrust Litig.*, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014). Conversely, other courts will examine the Hanlon factors in addition to the range-of-reasonableness, reasoning it is better to closely scrutinize the settlement terms at the preliminary stage so that if a fatal flaw exists, it can be fixed before the parties "waste a great deal of time and money in the notice and opt-out process." *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593 (E.D. Cal. 2015). The Court agrees with the latter approach, finding it the best way to dissect the agreement and to inform absent class members about the state of the case, and so will apply *Hanlon* (sections 1-5) and the range-of-reasonableness (section 6) tests.

*1.     The Strength of Plaintiffs' Case*

Here, the court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 975 (E.D. Cal. 2012) (citation omitted). That in mind, the court need "not reach 'any conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation.'" *Brewer v. Salyer*, 2012 WL 2813178, *3 (E.D. Cal. June 29, 2017).

Plaintiffs do not speak directly to this factor in their motion for preliminary approval. However, after nine years of litigation, the Court is well aware of the strength of Plaintiffs' case. Weighing in Plaintiffs' favor are, *inter alia*: a) Plaintiffs' claim for negligent misrepresentation was revived by the Ninth Circuit, b) Plaintiffs were permitted to add new conspiracy and intentional misrepresentation claims—supported by testimony of several of DairyAmerica's former employees; and c) the determination by the USDA in a 2008 report that DairyAmerica had failed to comply with reporting instructions—depriving farmers of $50 million in income over a one-year period. Weighing against are, *inter alia*: a) the reliability and potential bias of these witnesses; b) the potential unavailability of reporting data currently tied up in discover disputes. While Plaintiffs' case has a solid foundation, much is still left open.

            *2.     The Risk, Expense, Complexity, and likely Duration of Further Litigation and
                    The Risk of Maintaining Class Action Status throughout Trial*

"Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'" *Munoz v. Giumarra Vineyards Corp.*, 2017 WL 26605075, *9 (E.D. Cal. June 21, 2017); *accord In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong policy that favors settlements, particularly where complex class action litigation is concerned.").

The Court recognizes the complexity of this suit. Plaintiffs contend Defendants colluded to intentionally misreport data to the USDA using five separate schemes, each of which would require the support of expert testimony in order for the jury to understand the alleged conspiracy. Further, to make out the intentional and collusive aspects of their claims, Plaintiffs would be

required to present reliable evidence demonstrating Defendants' intent to misreport and deprive the class of deserved payments. The case has been in litigation since 2009, covers conduct between 2002-2007, and given the parties' litigious positions, it is possible this case would not reach a jury until twenty years after the alleged misreporting began. Further, after any appeal (which would surely occur, no matter who won at trial), it is possible any funds would not be distributed to the class until years later (assuming Plaintiffs ultimately prevail). The risks and costs of further litigation weigh highly in favor of approval of the settlement agreement.

>	*3.	The Amount Offered in Settlement*

The amount offered in settlement is generally considered to be the most important considerations of any class settlement. *See Bayat v. Bank of the West*, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing, *inter alia*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013). To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated. *Litty v. Merrill Lynch & Co.*, Inc., 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)); *see also Officers for Justice v. Civil Service Com'n of City and Cty. Of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) ("[A] cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."). Courts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *10 (C.D. Cal. Feb.16, 2017) (approving a settlement where net recovery to class members was approximately 7.5% of the projected maximum recovery amount); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal 2015) (approving a settlement where the gross recovery to the class was approximately 8.5% of the maximum recovery amount).

Here, Defendants contend the amount offered in settlement is 80% of what they believe their exposure is: $50 million. *See* Doc. No. 555, at p. 17, fn. 6. Defendants extrapolate this number from an estimate made by the USDA for the April 2006-07 period, which the motion states is representative of "the timeframe during which the majority of damages occurred." *Id*.

11

Plaintiffs, on the other hand, value their case at approximately $83.5 million, based in large part on the advice given by two economic experts. *Id.* at p. 16. Thus, using Plaintiffs calculations, a $40 million settlement represents a 48% recovery, well within the acceptable range. *See In re Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 94485, *211-212 (C.D. Cal. June 17, 2013 (describing a 42% recovery in settlement as "exceptional"). However, the Court notes that these expert opinions do not appear to be in the Court's records. For the Court to be able to evaluate the soundness of the parties' assertions, they should be ready to present evidence of these numbers prior to final approval.[4] For purposes of the preliminary approval, the Court assumes the experts' figures are sound, this factor weighs in favor of settlement.

### 4. *The Extent of Discovery Completed*

The Court should lean in favor of a settlement where evidence is presented that a considerable amount of discovery has been conducted "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Adoma*, 913 F.Supp.2d at 977 (citation omitted).

The parties have litigated this action for over nine years, have engaged in numerous discovery disputes, and deposed many witnesses (on both sides). The Magistrate Judge has approved additional depositions, and a dispute over Defendants' database is currently before this Court on a motion for reconsideration. The parties have engaged in enough discovery to have a solid understanding of the legal and factual issues underlying this action, and though more discovery is potentially eminent, the Court's understanding is that it is merely to strengthen Plaintiffs' case in preparation for trial. The factor weighs in favor of approving the settlement.

### 5. *The Experience and Views of Counsel*

The previous Magistrate Judge determined that appointed Class counsel are more than adept at spearheading this litigation. See Doc. No. 44, at p. 3-4.[5] Defense Counsel are equally

---

[4] Setting aside Class counsels' representations that the bulk of the damages occurred between April 2006-2007, and instead treating the $50 million calculation from the USDA as representative of only one year of damages, the Court calculates a much-higher potential recovery than what either party proffers—$50 million per year times 5.25 years (January 1, 2002-April 30, 2007). The experts' assessments will be critical to final approval.

[5] From the appointment order: "[T]here is no dispute that Cohen Milstein has 'adequate experience in class actions and complex litigation, adequate knowledge of the applicable law and abundant resources' and that Berman Tabacco

1 experienced. The recommendation that the settlement be approved is entitled to significant
2 weight and supports approval of the agreement. *See Nat'l Rural Telecomms.*, 221 F.R.D. 523,
3 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are
4 most closely acquainted with the facts of the underlying litigation.").

      *6.     Range-of-Reasonableness: Collusion, Deficiencies, Preferential Treatment*

The Court now turns to whether any collusion, deficiencies, or preferential treatment exists. *See High-Tech Employee Antitrust Litig.*, 2014 WL 3917126, at *3. The goal is to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819. To that end, the Ninth Circuit in *Bluetooth* identified three "subtle signs that class counsel have allowed pursuit of their own self-interests … infect the negotiations": "when counsel receive a disproportionate distribution of the settlement;" "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and when the parties create a possible reversion of unclaimed fees to the defendant. *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (quoting *Bluetooth*, 654 F.3d at 947); *see also Staton*, 327 F.3d at 960 (stating the collusion inquiry addresses "overt misconduct by the negotiators" or improper incentives of some class members at the expense of others). However, as recently discussed by the Ninth Circuit: "[f]or all these factors, considerations, 'subtle signs,' and red flags, . . . the underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

First, class counsel seeks an amount up to 33% of the gross fund—approximately $13.3 million. Doc. No. 555 at. p. 48, § 1.11. The parties have also agreed to a service award of up to $90,000.00 for each of the named plaintiffs, up to $10,000.00 to each former named plaintiff who was deposed in the past nine years, and set aside up to $300,000 for settlement

---

and Keller Rohrback 'are equally experienced and knowledgeable.'" "Cohen Milstein 'has done a majority of the preparation work leading to the filing of these actions, including investigation into the alleged misconduct and identification of the legal theory of the case.'" "Cohen Milstein has continued to act as lead counsel throughout the litigation and worked cooperatively and efficiently with the firms named to the executive committee."

administration costs, up to $20,000 for escrow agent costs, and "any amount [for] required taxes on income earned in the Settlement Fund." *Id.* at §§ 1.11 and 8.10. The remaining balance ("Net Settlement") is not specified in the settlement agreement, due in part to the plethora of unfixed sums. However, assuming full reimbursement of the above expenses, the amount remaining for distribution would be approximately $26,000,000. *Id.* at p. 45, §8.7(b). This $26 million is to be distributed proportionally to the Approved-Claimant farmers based on the amount of milk provided (as demonstrated by the FMMO's) in those five-and-a-quarter years, and any amounts left unclaimed are to be re-distributed to the Approved Claimants or, if not, then to a *cy pres* beneficiary—hence, no reversion to Defendants exists. *Id.* at p. 46, § 8.11.

On one hand, a few aspects of the agreement might appear at first to be red flags. The attorney fee amount is above the benchmark for this Circuit, *see Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same). Additionally, the enhancement award for each named plaintiff is high, as is the administration fee. *See Ross v. Bar None Enterp. Inc.*, 2014 WL 4109592, at *10 (E.D. Cal. Aug. 19, 2014); C*astillo v. Cox Commc'ns, Inc.*, 2013 WL 12205193, at *7 (S.D. Cal. Jan. 7, 2013); *Martinez v. Realogy Corp.*, 2013 WL 5883618, at *7 (D. Nev. Oct. 30, 2013). The inclusion of Defendants' agreement to not oppose Plaintiffs' motion for attorney's fees raises concern. *See Bluetooth*, 654 F.3d at 942, 947.

However, the parties have been litigating for over nine years, a history that includes an appeal to the Ninth Circuit, multiple motions to amend (and dismiss) the complaint, and multiple discovery disputes; this may justify a higher attorneys fee award. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) (finding appropriate an award of attorney fees of 33 percent of settlement fund, where results achieved were good, case did not lend itself to easy proof of liability or damages, case required special skills to litigate legal theories, and the award was consistent with amount of time attorneys spent on the case). Representative plaintiffs have dedicating significant time and effort to the case. *See In re High-Tech Emp. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118052, at *17 (N.D. Cal. Sep. 2, 2015) (approving service awards of $100,000 for each named plaintiff). The notice plan calls for individual contact of the "tens of

14

thousands of farmers" by mail based on information contained in the FMMO's, as well as publication in two magazines and the creation and maintenance of a website, which (if properly accounted for) could require more funds be dedicated to administration costs. *See Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) (awarding $250,000 in administration costs where 68,487 notices were sent). The lack of a reversion provision—and the redistribution plan directly to injured farmers—is highly commendable and weighs heavily in favor of settlement. The Court also recognizes that this settlement agreement is the product of a months-long negotiation conducted before a neutral mediator. The use of mediators, though not dispositive, supports a finding that the settlement agreement is not the product of collusion. *In re Bluetooth,* 654 F.3d at 948; *Placios v. Penny Newman Grain, Inc.*, 2015 WL 4078135 (E.D. Cal. July 6, 2015) (citation omitted); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). Ultimately, the Court is assuaged by the parties' agreement concerning the fees, as they are listed as "up to" amounts subject to Court approval at a later date. See *Wert v. U.S. Bancorp*, 2017 WL 5167397, at *4 (S.D. Cal. Nov. 7, 2017) (noting court may uphold agreement while lowering excessive fees). "Before approving any final request for attorneys' fees, the court must have enough information to determine if the requested fee is reasonable." *Acosta v. Evergreen Moneysource Mortgage Co.*, 2018 WL 3831004 at *7 (E.D. Cal. Aug. 13, 2018).

Beyond this, the Court notes no other obvious deficiencies in the settlement agreement.

At this preliminary stage, the Court finds the subtle signs of collusion identified by the Ninth Circuit to be absent here. This consideration does not weight against approval of the settlement.

*Conclusion – The Settlement is fair, adequate, and reasonable*

The Court is convinced that the above factors, considerations, and lack of subtle signs weigh in favor of settlement for the preliminary stage. In essence, the agreement appears to grant all class members a fair shake. *See In re Volkswagen*, 895 F.3d at 611.

/ / /

/ / /

15

**III. Notice and Release**

*A. The notice plan is adequate*

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances." Rule 23(c)(2)(B), 23(e)(1). The absent class members must be provided with notice, an opportunity to be heard, and a right to opt-out of the class. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011). "The notice must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B). "Adequate notice is critical to court approval of a class action settlement under Rule 23(c)(2)(B). *Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 452 (E.D. Cal. 2013).

Plaintiffs' proposed notice meets the requirements of Rule 23(c)(2)(B). The parties intend to "collaborate with the Market Administrators for each of the ten FMMO's" to provide direct mail notice to "each farmer . . . whose raw Grade A milk was pooled on a FMMO" during the class period. See Doc. No. 555, at p. 19. The parties also intend to publish notice of the settlement in "two publications that are widely read by dairy farmers," and to provide notice on a dedicated website.[6] The proposed notice is in plain language, and is adequate.

*B. The release is adequately tailored to Plaintiffs' claims*

Class action settlement agreements cannot release claims of absent class members that are unrelated to the factual allegations of the class complaint. *Hesse v. Sprint Corp*., 598 F.3d 581, 590 (9th Cir. 2010). Class action settlements may, and often do, commonly release concealed or hidden claims related to the facts alleged. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig*., 2017 WL 2212780, *11 (N.D. Cal. May 17, 2017) (collecting cases).

---

[6] The Court notes that Ex. C lists the web address as www.MilkPowderCase.com, but as www.MilkPowderLawsuit.com in the memo for preliminary approval. The Court trusts the parties will list the correct web address in the actual notice.

In this action, the release is permissible. The long-form notice states that class members who elect to remain in the settlement class "can't sue [Defendants], or be part of any other lawsuit against [them] regarding the legal claims in this case." Doc. No. 555, at p. 71 (Exhibit C). The release is adequately tailored to release only those claims covered by the lawsuit.

    C.    *Plaintiffs' notice and procedural schedule is appropriate*

The Court has reviewed Plaintiffs' proposed notice schedule. Doc. 555 at 26. The Court agrees that the proposed notice schedule is appropriate. It will be implemented as follows:

| | |
|---|---:|
| Settlement agreement preliminarily approved | September 14, 2018 |
| Defendants to wire first half of the total settlement amount into escrow by | September 28, 2018 |
| Deadline for all notices to be mailed, published, and posted on the internet | November 13, 2018 |
| Motion for attorneys' fees, costs, and service awards due by | December 14, 2018 |
| Class Members' objections, exclusions, and submission of all claim forms due by | January 14, 2019 |
| Administrator to file affidavit certifying compliance with notice requirements by | February 4, 2019 |
| Parties to file motion for final approval, and to respond to any objections from class members, by | February 4, 2019 |
| Final approval hearing ("Fairness Hearing") | March 4, 2019, 1:30 p.m. |
| Effective Date | Reserved for decision in Order regarding Final Approval Hearing |
| Defendants to wire second half of the Total Settlement Amount by | As per § 7.1 of the Settlement Agreement |

*Conclusion – The notice and release provisions are acceptable*

The Court finds that the mailing and publication of the Long Notice and Summary Notice, in the manner set forth herein, constitute the best notice practicable under the circumstances, are sufficient notice, and comply fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States.

/ / /

/ / /

/ / /

17

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for conditional class action certification and preliminary approval of class action settlement is GRANTED;

2. The class is conditionally certified and defined as follows:

   All dairy farmers located in the United States who sold raw milk that was priced according to a Federal Milk Marketing Order during the period January 1, 2002 through April 30, 2007. Excluded from the Class are California Dairies and DairyAmerica, any entity in which California Dairies or DairyAmerica have a controlling interest, and their respective legal representatives, heirs, and successors;

3. Gerald Carlin, Paul Rozwadowski, John Rahm, and H. Diana Wolfe are designated as the Class Representatives for the Settlement Class;

4. Cohen Milstein Sellers & Toll PLLC, Keller Rohrback L.L.P., and Berman Tabacco are designated as Class Counsel for the Settlement Class;

5. The Court approves the establishment of an escrow account, as set forth in the Settlement Agreement, as a Qualified Settlement Fund pursuant to Treas. Reg. § 1.468B-1. The Court retains continuing jurisdiction over any issues regarding the formation or administration of the escrow account. Class Counsel and their designees are authorized to expend funds from the escrow account to pay Taxes, Tax Expenses and Notice and Administration Costs, as set forth in the Settlement Agreement.

6. The parties may retain Rust Consulting, Inc. as Settlement Administrator, with reasonable administration costs (upon proper proof) estimated not to exceed $300,000.00;

7. The Court APPROVES the Class Notice Package, Doc. 555 at Exhibits C and D;

8. The parties SHALL implement the notice schedule as set forth in Section III.C, above;

9. Class counsel SHALL file a motion for attorneys' fees, costs, and service awards by December 14, 2018;

10. Class counsel SHALL file a motion for Final Approval of the Settlement, with the appropriate declarations, supporting evidence, any objections, and any requests for exclusion by February 4, 2019;

11. The parties SHALL appear on March 4, 2019, 1:30 p.m. in Courtroom 2 of the United States District Court, Eastern District, Fresno Division, before the undersigned for a final settlement approval hearing, which may include consideration of the following:

   a. Objections to the proposed settlement by class members mailed to the Claims Administrator with a postmark prior to the deadline in Section III.C.;
   b. Responses by class counsel and counsel for Defendants to any objections timely filed by the class members
   c. Responses by either party to provide appropriate information bearing on whether the settlement should be approved;
   d. Responses by class counsel to any questions regarding its request for fees and costs, as well as the application for class representative service award.

IT IS SO ORDERED.

Dated:   September 14, 2018                    _____
                                                SENIOR DISTRICT JUDGE